**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| CONCEPTS NREC, LLC | Case No. 5:20-cv-00133-gwc |
| *Plaintiff,* | |
| v. | |
| XUWEN QIU and TURBOTIDES, INC. | |
| *Defendants.* | |

**DEFENDANTS XUWEN QIU AND TURBOTIDES, INC.'S *PARTIAL* MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

I.    **CERTAIN OF PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF COMPLETE PREEMPTION............11**

    A.    Plaintiff's Conversion Claim is Preempted by the Copyright Act........................12

    B.    Plaintiff's Unjust Enrichment Claim is Preempted by the Copyright Act............14

    C.    Plaintiff's Unfair and Deceptive Trade Practices Claim is Preempted by the Copyright Act.........................................................................................................15

    D.    Plaintiff's Tortious Interference Claim is Preempted by the Copyright Act .........16

II.    **PLAINTIFF FAILS TO SUFFICIENTLY PLEAD ITS CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS AND THE ALLEGED COPYRIGHT TRADE SECRETS ARE AVAILABLE TO THE PUBLIC, THEREFORE, THE MISAPPROPRIATION CLAIM FAILS AS A MATTER OF LAW ...............................................................................................................17**

    A.    Plaintiff Fails to Plead a Claim for Misappropriation of Non-Copyright Trade Secrets Sufficient to Survive a Motion to Dismiss ...............................................17

    B.    Plaintiff's Misappropriation of Trade Secrets Claim Fails To The Extent Plaintiff Seeks Redress for Copyrighted Trade Secrets, Since Such Information is Not Secret........................................................................................19

III.    **PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE IS INSUFFICIENTLY PLED AND FAILS AS A MATTER OF LAW .........................20**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A Slice of Pie Prods., LLC v. Wayans Bros. Entm't,*
    392 F.Supp.2d 297 (D.Conn.2005) .......................................................................14

*Alexander Interactive, Inc. v. Leisure Pro Ltd.,*
    No. 14-CV-2796, 2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014) ...........................15

*American Movie Classics Co. v. Turner Entertainment Co.,*
    922 F.Supp. 926 (S.D.N.Y.1996) .........................................................................17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................9, 10, 19

*Baiul v. NBC Sports, a division of NBCUniversal Media LLC,*
    708 F. App'x 710 (2d Cir. 2017) .....................................................................12, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...............................................................................................9

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004) .........................................................................12, 13, 15

*Burke v. Vermont Dep't of Corrections,*
    No. 5:14-cv-00272, 2015 WL 1954268 (D.Vt. Apr. 29, 2015) ... ..........................10

*Center v. Mad River Corp.,*
    151 Vt. 408, 561 A.2d 90 (1989) .........................................................................15

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ................................................................................11

*Couture v. Blair,*
    No. 5:14-CV-00220, 2015 WL 1931548 (D. Vt. Apr. 28, 2015) ...........................10

*Dicks v. Jensen,*
    172 Vt. 43, 768 A.2d 1279 (2001) .......................................................................18

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Cir. 2010) ................................................................................11

*Ernst v. Kauffman,*
    No. 5:14-CV-59, 2016 WL 1610608 (D. Vt. Apr. 20, 2016) ................................17

*Ernst v. Kauffman*,
    50 F. Supp. 3d 553 (D. Vt. 2014).................................................................17

*Faulkner v. Beer*,
    463, F.3d 130 (2d Cir. 2006)................................................................11

*Frontier Group, Inc. v. Northwest Drafting & Design, Inc.*,
    493 F.Supp.2d 291 (D.Conn.2007)................................................................12

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
    713 F.Supp.2d 215 (S.D.N.Y. 2010)................................................................14

*Harper & Row, Publs. v. Nation Enters.*,
    723 F.2d (2d Cir.1983)................................................................13, 14, 17

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009).................................................................10

*J.A. Morrissey, Inc. v. Smejkal*,
    2010 VT 66, 188 Vt. 245, 6 A.3d 701 (2010).................................................17, 21

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974).................................................................20

*Kregos v. Associated Press*,
    3 F.3d 656 (2d Cir.1993).................................................................16

*Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*,
    No. 2:16-CV-28, 2017 WL 3393819 (D. Vt. Aug. 4, 2017)....................................10

*Miller v. Holtzbrinck Publishers, L.L.C.*,
    377 F. App'x 72 (2d Cir. 2010) .................................................................13, 14

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997).................................................................12

*Omega Optical, Inc. v. Chroma Tech. Corp.*,
    174 Vt. 10, 800 A.2d 1064 (2002).................................................................20

*Reed v. Zurn*,
    2010 VT 14, 187 Vt. 613 (2010).................................................................15

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007).................................................................10

*Saltis v. NuVasive, Inc.*,
    No. 2:19-CV-89, 2020 WL 4689787 (D. Vt. Mar. 13, 2020)................................10

*Skaskiw v. Vermont Agency of Agric.*,
   2014 VT 133, 198 Vt. 187, 112 A.3d 1277 (2014)...............................................21

*Stone v. Town of Irasburg*,
   2014 VT 43, 196 Vt. 356, 98 A.3d 769 (2014).....................................................21

*Synventive Molding Sols., Inc. v. Injection Molding Sys., Inc.*,
   No. 2:08-CV-136, 2009 WL 10678880 (D. Vt. Dec. 7, 2009) ...............................19

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir. 2006)................................................................................13

*Titan Sports, Inc. v. Turner Broad. Sys., Inc.*,
   981 F. Supp. 65 (D. Conn. 1997).........................................................................18

*Young-Wolff v. McGraw-Hill Sch. Educ. Holdings, LLC*,
   No. 13-CV-4372, 2015 WL 1399702 (S.D.N.Y. Mar. 27, 2015) ...........................15

**Statutes**

17 U.S.C. § 102 .......................................................................................................12

17 U.S.C. § 103 .......................................................................................................12

17 U.S.C. § 106 .......................................................................................................12

28 U.S.C. § 1338(a) .................................................................................................12

9 Vt. Stat. Ann. § 2453 ...........................................................................................16

9 Vt. Stat. Ann. § 4601(3)...................................................................................18, 20

**Other Authorities**

1 Milgrim on Trade Secrets §1.03 (2007)................................................................20

1 Nimmer on Copyright § 1.01 ...............................................................................15

*Copyright Registration of Computer Programs*, U.S. Copyright Office Circular 61
   (rev. May, 2020) ..........................................................................................19, 20

Fed. R. Civ. P. 8(a)(2)...........................................................................................11, 20

Fed. R. Civ P. 12(b)(6).................................................................................1, 6, 9, 10

Restatement (Second) of Torts § 766 (1979) ...........................................................21

Defendants Xuwen Qiu ("Qiu") and TurboTides, Inc. ("TurboTides") (together, "Defendants") respectfully submit this Partial Motion to Dismiss the Complaint filed by Plaintiff Concepts NREC, LLC ("Plaintiff" or "Concepts") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Incorporated Memorandum of Law in Support.

### INTRODUCTION

This case concerns a straight-forward employment dispute between Concepts, its former employee, Qiu, and his new business venture, TurboTides, which Concepts is attempting to characterize as a case of international copyright infringement because Plaintiff cannot avoid the fact that it does not have an enforceable non-competition restriction against Qiu.  As a result, Plaintiff has brought a vaguely plead copyright infringement action which barely meets the notice pleading standard, alleging that Qiu unlawfully copied and used Concept's proprietary turbomachinery software products, but which fails to identify the allegedly derivative works beyond a general allegation against all of the "Turbotides Software". In addition to Plaintiff's threadbare copyright claim, however, Plaintiff has presented a host of dubious, pre-empted, insufficiently pled, and/or legally implausible state law claims seeking recovery for the same alleged wrongs covered by the weak copyright claims in the hope that redundancy may strengthen their inherent weakness. It doesn't. What is more, most of those claims fail as a matter of law.

Defendants now move to partially dismiss this action, as Counts IV through VIII of the Complaint[1]—misappropriation of trade secrets, conversion, unjust enrichment, unfair and deceptive trade practices in violation of Vermont's consumer protection statute, and tortious interference with business relations and prospective economic advantage, respectively—because

---

[1] Along with Count III for alleged Copyright Infringement, also not included in the instant Motion are Counts I (Breach of Employment Contract) and II (Breach of Software Terms and Conditions) of the Complaint, accordingly, Defendants' have framed this filing as one for only partial dismissal of the Complaint.

each fails as a matter of law based on the face of the Complaint. As is discussed below: (1) certain of Plaintiff's state law claims fail because they are predicated on rights governed exclusively by the federal Copyright Act and are thus preempted as a matter of law; (2) another is implausible as a matter of law; and (3) others are pled with insufficient detail.

## FACTS AS STATED IN THE COMPLAINT

Concepts claims to be a vertically-integrated turbomachinery company that operates an Agile Engineering Design System, which it alleges to be a suite of proprietary "Computer-Aided Engineering" and "Computer-Aided Manufacturing" software for turbomachinery, referred to in the Complaint as the "Concepts Software." Complaint ("Compl.") ¶ 6. The Concepts Software, which is the claimed copyrighted material at issue in this action, allegedly covers the entirety of a turbomachinery design process from "preliminary sizing through final design." Compl. ¶¶ 7, 8; Exhibits A-S. Concepts alleges that the code, information, designs, and processes that are not known to or readily available to authorized users of the Concepts Software, while encompassed as part of the copyrighted material, also constitute Concepts' trade secrets (the "Concepts Software Trade Secrets"). Compl. ¶¶ 11-12. Third-parties who agree to the Concepts Software Terms and Conditions are permitted to use the Concepts Software, which includes the Concepts Software Trade Secrets. Compl. ¶ 12. In addition, Concepts claims that employees with whom Concepts enters employment agreements are privy to Concepts' alleged confidential information "about its business, its customers, its pricing models, its long term objectives, its operations, and its pricing," which are referred to in the Complaint as "Non-Software Trade Secrets." Compl. ¶ 14, 15

Defendant Qiu was employed by Concepts from 2011 through 2015 and, most recently, held the position of Director of Corporate Technology. In that capacity Qiu developed numerous software products for Concepts that included the creation of new models for turbomachinery

components. Compl. ¶ 17. In July 2011, Qiu entered into an Employee Confidentiality and Nondisclosure Agreement with Concepts ETI, Inc., which is a different corporate entity than Plaintiff Concepts. Compl. ¶ 18, Ex. U.

The Complaint alleges that Qiu founded TurboTides during the time he was working for concepts for the purpose of developing and did develop turbomachinery software (dubbed the "TurboTides Software" in the Complaint). Compl. ¶ 21. The Complaint does not contain additional factual details regarding what TurboTides software or other product offerings are alleged to have been copied besides the broad statement that TurboTides was formed to "develop turbomachinery software." *Id.*

The Complaint generally alleges, and only upon information and belief, that Qiu wrongfully obtained portions of the Concepts Software, Concepts Trade Secrets and/or Non-Software Trade Secrets for Defendants' use. However, the Complaint contains no factual allegations about how the purported copyright-protected and trade secret information was allegedly obtained or used beyond the broad allegation that Qiu "Wrongfully Obtained" such information. Compl. ¶¶ 22-23. In short, there is no recitation of upon what information Plaintiff forms the basis for its alleged "belief". Additionally, the Complaint alleges that, upon Plaintiff's information and belief, a computer in China was used, presumably by Qiu and TurboTides, to access a pirated copy of the Concepts Software. Compl. ¶¶ 34-37.

The Complaint further alleges that using the wrongfully obtained copyrighted and trade secret material, Defendants "wrongfully conceived of and/or developed one or more derivative works" that TurboTides has sold to compete with Concepts. Compl. ¶ 29. But such alleged derivative works are not identified or named in the Complaint. In fact, although Concepts has attached 19 copyright registrations of the Concepts Software to its Complaint, the Complaint does

not include identification of even one of TurboTides' products or software programs that allegedly copied any of those works, beyond simply accusing *all* of TurboTides' software as being derivative. Compl. ¶¶ 29, 65-67.

In addition to the vague allegations that Defendants somehow copied and developed derivate works of the Concepts Software (apparently only by virtue of the fact that TurboTides also does business in the turbomachinery industry), the Complaint alleges that upon information and belief, Defendants obtained or purchased an "illegally pirated copy" of the Concepts Software that was located in use at a computer in Hefei City, China that Plaintiff believes (based apparently only on speculation) may have been registered to and/or owned by TurboTides. Compl. ¶¶ 33-36. Plaintiff further speculates that Defendants used this pirated copy of the Concepts Software to "reverse engineer" the Concepts Software, Concepts Software Trade Secrets and other trade secret information to wrongfully compete with Concepts. Compl. ¶ 37.  Yet, once again, there is no allegation as to what product or software among TurboTides' suite of software is alleged to have been derived from the allegedly pirated software. With respect to the alleged non-copyright trade secret materials, Concepts merely provides a generic list of categories of potentially confidential items without identifying with any specificity what items belonging to any of those categories Qiu or TurboTides is alleged to have misappropriated or by what means such misappropriation is alleged to have occurred.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To determine whether a complaint states a plausible claim for relief, the court

must apply a "plausibility standard, which is guided by two working principles." *Saltis v. NuVasive, Inc.,* No. 2:19-CV-89, 2020 WL 4689787, at *1 (D. Vt. Mar. 13, 2020) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and alterations omitted).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burke v. Vermont Dep't of Corrections*, No. 5:14-CV-00272, 2015 WL 1954268, at *2 (D. Vt. Apr. 29, 2015). However, if a plaintiff "has failed to nudge his claims across the line from conceivable to plausible, they must be dismissed" *Id.* (internal quotation marks and citations omitted); *see also Couture v. Blair,* No. 5:14-CV-00220, 2015 WL 1931548, at *2 (D. Vt. Apr. 28, 2015).

## **ARGUMENT**

Although they will ultimately be unable to muster the evidence to prove them, Plaintiffs have likely met the minimal notice pleading standard for <u>Counts I and II</u> for breach of an employment contract and breach of software terms and conditions, and have also likely barely met that standard for <u>Count III</u> asserting copyright infringement, each of <u>Counts IV through VIII</u> fails as a matter of law or is insufficiently pled and so must be dismissed. Many of Plaintiff's claims, including <u>Counts V – VIII</u> seek redress for the same harm as is covered by the claim for copyright

infringement in violation of the Copyright Act.  As such, those claims are pre-empted and fail as a matter of law. Count IV, such that Plaintiff seeks redress for misappropriation of copyright trade secrets, also fails to the extent Plaintiff has deposited its software with the United States Copyright Office ("Copyright Office") because Plaintiff's public filing of the software with the Copyright Office defeats any potential trade secret status for the software. Finally, Count IV, to the extent it seeks redress for misappropriation of non-copyright trade secrets, as well as Count VIII for tortious interference also fail because they have been insufficiently pled.

## I.   CERTAIN OF PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF COMPLETE PREEMPTION

Counts V – VIII of the Complaint assert state law claims premised upon copyright and which seek redress for the harm caused by the alleged copyright infringement. As such, each is preempted by the Copyright Act such that it pertains to the Concepts Software and Plaintiff's other alleged copyright trade secrets.  Pursuant to 28 U.S.C. § 1338(a); *see Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). Complete preemption occurs when (1) the particular work to which the state law claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106. *Id.* "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'" *Frontier Group, Inc. v. Northwest Drafting & Design, Inc.,* 493 F.Supp.2d 291, 297 (D.Conn.2007).

The subject matter requirement of the preemption analysis is satisfied "if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Briarpatch*, 373 F.3d at 305 (citing *Nat'l Basketball*

*Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848-49 (2d Cir. 1997)). It is not necessary that a work consist *entirely* of copyrightable material in order to meet the subject matter requirement; rather, the work "need only fit into one of the copyrightable categories in a broad sense." *Id*. (emphasis added). "The general scope requirement is satisfied when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law," namely, "acts of reproduction, adaptation, performance, distribution or display." *Id*.

A state law claim regarding a work of the type protected by the Copyright Act may proceed only if the claim contains "extra elements that make it qualitatively different from a copyright infringement claim." *Baiul v. NBC Sports, a division of NBCUniversal Media LLC*, 708 F. App'x 710, 712 (2d Cir. 2017) (quoting *Briarpatch,* 373 F.3d at 305). This Circuit takes "a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim," saving a claim from preemption only where its extra elements alter the "fundamental nature" of the protected right. *Briarpatch*, 373 F.3d at 306.

As explained below, each of Plaintiff's state law claims for conversion, unjust enrichment, unfair and deceptive trade practices, and tortious interference with business relations and prospective economic advantage, are preempted to the extent the claims (1) apply to the Concepts Software or Concepts' other copyright works, which are encompassed by the Copyright Act and thus meetsthe "subject matter requirement"; and (2) seek to vindicate legal or equitable rights protected by the Copyright Act, meeting the "general scope" requirement. Accordingly, they should be dismissed.

### A.     Plaintiff's Conversion Claim is Preempted by the Copyright Act

Count V of the Complaint asserting a state law conversion claim alleges that Defendants unlawfully obtained access to, copied and/or made use of the Concepts Software to obtain information for Defendants' own economic benefit, which constitutes alleged conversion of

Plaintiff's property. Compl. ¶¶ 84-86. "Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (internal quotation omitted). Only a conversion claim based upon the wrongful ***possession of physical property*** contains the "extra element" sufficient to render it qualitatively different from a copyright claim. *See Harper & Row, Publs. v. Nation Enters.*, 723 F.2d at 200-01 (2d Cir.1983); *Miller v. Holtzbrinck Publishers, L.L.C.*, 377 F. App'x 72, 74 (2d Cir. 2010) (summary order) (preempting conversion claim). Conversely, a conversion claim predicated merely on the wrongful use of copyrighted material plainly falls within the general scope of the copyright law and is preempted. *See id*.

In Concepts' conversion claim, Concepts alleges Defendants "[w]rongfully [o]btained access to, copied and/or made use of" a version of the Concepts Software to obtain information for Defendants' own economic benefit. Compl. ¶ 85.  The conversion claim satisfies the subject matter requirement of preemption as it only pertains to the Concepts Software (*see* Compl. ¶¶ 84-86) and satisfies the general scope requirement because it seeks recovery for the wrongful access, copying and use of the Concepts Software, which falls within the scope of rights protected by the Copyright Act.   Moreover, Plaintiff's conversion claim does not contain an "extra element" of Defendants having wrongfully physically possessed the Concepts Software in such a manner that Concepts was deprived of its use that could save this claim from preemption.  *See, e.g., Baiul,* 708 F. App'x at 712 (2d Cir. 2017); *see also Harper & Row, Publishers,* 723 F.2d at 200-201 (holding plaintiff's conversion claim, to the extent based on the "unauthorized publication" of excerpts from a manuscript, preempted because "the right [plaintiffs] seek to protect is coextensive with an exclusive right already safeguarded by the Act—namely, control over reproduction and derivative

use of copyrighted material")); *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F.Supp.2d 215, 230-31 (S.D.N.Y. 2010) (finding conversion claim preempted by the Copyright Act); *A Slice of Pie Prods., LLC v. Wayans Bros. Entm't,* 392 F.Supp.2d 297, 317 (D.Conn.2005) ("a viable conversion claim would be preempted by the Copyright Act [if] it is based solely on copying, i.e. wrongful use, not wrongful possession").  Accordingly, Count V must be dismissed.

### B.    Plaintiff's Unjust Enrichment Claim is Preempted by the Copyright Act

Count VI of the Complaint asserts a claim for unjust enrichment, alleging vaguely that "by its unlawful actions, Defendants knowingly obtained business-related benefits acquired at the expense of Concepts….that render it inequitable for Defendants to retain the benefits without paying for their value."  Compl. ¶¶ 91-92. An unjust enrichment claim requires proof that "(1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value." *Reed v. Zurn,* 2010 VT 14, ¶ 11, 187 Vt. 613, 992 A.2d 1061 (2010) (quoting *Center v. Mad River Corp.,* 151 Vt. 408, 412, 561 A.2d 90, 93 (1989)).

 "[U]njust enrichment claims premised on unauthorized use of material protected by copyright are preempted by the Copyright Act which provides an exclusive remedy." *Alexander Interactive, Inc. v. Leisure Pro Ltd.*, No. 14-CV-2796, 2014 WL 4651942, *6 (S.D.N.Y. Sept. 16, 2014) (holding unjust enrichment claim preempted where it sought to vindicate rights protected by copyright law) (citing *Briarpatch Ltd,* 373 F.3d at 305-06); *see also Young-Wolff v. McGraw-Hill Sch. Educ. Holdings, LLC*, No. 13-CV-4372, 2015 WL 1399702, *4-5 (S.D.N.Y. Mar. 27, 2015) (dismissing unjust enrichment claim on preemption ground, even when it was plead in the alternative, as it was premised upon the same actions underlying the copyright claim); 1 Nimmer on Copyright § 1.01(B)(1)(g) ("[A] state law cause of action for unjust enrichment or *quasi*

contract should be regarded as an 'equivalent right' [to rights under the Copyright Act] and hence, pre-empted as it applies to copyright subject matter.").

In its unjust enrichment claim, which simply tracks the elements for unjust enrichment under Vermont law without additional factual support, Concepts alleges that through Defendants "unlawful actions," meaning at least in part the alleged unlawful accessing, copying, and pirating of the Concepts Software, Defendants acquired certain benefits without paying for their value. Compl. ¶¶ 91-92; *see also* Compl. ¶¶ 23, 24, 29, 30, 36, 37 (paragraphs alleging wrongful actions of Defendants).  Accordingly, although <u>Count VI</u> does not specifically allege the unlawful actions that form the basis of the unjust enrichment claim, to the extent such claim is premised on the same actions (*i.e.*, accessing, copying and pirating of the Concepts Software and other copyrighted materials) that are protected by the Copyright Act, the general scope requirement of preemption is met.   Additionally, although, again, Concepts fails to allege the underlying subject matter of its unjust enrichment claim in <u>Count VI</u>, to the extent that Concepts seeks redress for use of copyright material, the subject matter prong of the preemption analysis is met and <u>Count VI</u> must be dismissed as it relates to such copyrighted works.

C.   **Plaintiff's Unfair and Deceptive Trade Practice Claim is Preempted by the Copyright Act**

<u>Count VII</u> asserting a claim for violation of the Vermont Consumer Protection Act ("VCPA") should be analyzed under the same preemption principles and, to the extent that Plaintiff is attempting to recover for unfair and deceptive trade practices premised upon the Concepts Software or other copyright works (thus satisfying the subject matter requirement of preemption), Plaintiff's claim is subject to dismissal.

The VCPA provides that "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." 9 V.S.A. § 2453.   This

Circuit has held that the Copyright Act "preempts unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression." *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir. 1993). Here, <u>Count VII</u> of the Complaint states that Defendants "wrongful access to and use" of the Concepts Software and Concepts Software Trade Secrets to compete with Plaintiff constitutes a violation of the VCPA. Compl. ¶ 95. Such actions are precisely the conduct that Plaintiff seeks redress for in its copyright infringement claim. *See* Compl. ¶¶ 63-67 (<u>Count III</u> for Copyright Infringement alleging accessing the Concepts Software and the unauthorized copying and use of the same constitutes a violation of the Copyright Act). Accordingly, to the extent the subject matter of this claim is Concepts' copyright software or other copyright works, the unfair and deceptive trade practices claim, must be dismissed based on preemption.

### D.    Plaintiff's Tortious Interference Claim is Preempted by the Copyright Act

Similarly, <u>Count VIII</u> of the Complaint asserting a claim of tortious interference claim under state law is also preempted by the Copyright Act and should be dismissed. "In the Second Circuit, it is well settled that claims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted." *American Movie Classics Co. v. Turner Entertainment Co.,* 922 F.Supp. 926, 932 (S.D.N.Y.1996). To state a claim for interference with a prospective business relationship, a plaintiff must allege facts showing: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference on the part of the interferer; (4) damage to the party whose relationship or expectancy was disrupted; and (5) proof that the interference caused the harm sustained. *Ernst v. Kauffman*, 50 F. Supp. 3d 553, 569 (D. Vt. 2014), on reconsideration, No. 5:14-CV-59, 2016 WL 1610608 (D. Vt. Apr. 20, 2016); *J.A. Morrissey, Inc. v. Smejkal,* 2010 VT 66, ¶ 21, 188 Vt. 245, 255, 6 A.3d 701, 708–09 (2010).

That fact that a tortious interference claim requires the plaintiff to plead the additional elements of awareness and intentional interference, which are not elements of a copyright infringement claim, "goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated" to avoid dismissal on preemption grounds. *Harper & Row Publishers,* 723 F.2d at 201. Here, the gravamen of Plaintiff's tortious interference claim is an alleged violation of Plaintiff's exclusive rights under the Copyright Act—to use its Concepts Software to further the beneficial relationships of its customers and prospective customers and to gain an economic advantage of such relationships. Compl. ¶ 101. While Plaintiff's tortious interference claim is so vaguely pled that it is difficult to even parse out the subject matter or wrongful acts of the claim, there are no facts stated in the Complaint, even reading it broadly, which bring Plaintiff's tortious interference claim outside of the rights it is seeking to protect through its Copyright Act claim.  Accordingly, this claim must be dismissed. *See Titan Sports, Inc. v. Turner Broad. Sys., Inc.*, 981 F. Supp. 65, 70 (D. Conn. 1997) (holding it "well settled" in Second Circuit that claims for tortious interference based on rights equivalent to those protected under copyright laws preempted).

II.   **PLAINTIFF FAILS TO SUFFICIENTLY PLEAD ITS CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS AND THE ALLEGED COPYRIGHT TRADE SECRETS ARE AVAILABLE TO THE PUBLIC, THEREFORE, THE MISAPPROPRIATION CLAIM FAILS AS A MATTER OF LAW**

A.   **Plaintiff Fails to Plead a Claim for Misappropriation of Non-Copyright Trade Secrets Sufficient to Survive a Motion to Dismiss**

Count IV of the Complaint, misappropriation of trade secrets in violation of the Vermont Trade Secrets Act ("VTSA"), fails to state a claim as a matter of law as the Complaint does not identify trade secrets separate and apart from the copyrighted Concepts Software or Concepts

Software Trade Secrets with requisite specificity.  It is axiomatic that in order to establish a claim for misappropriation of trade secrets under the VTSA, a plaintiff is required to plead sufficient factual allegations to present a plausible claim that the information at issue is actually protectable as *a trade secret. See Dicks v. Jensen,* 172 Vt. 43, 48-50, 768 A.2d 1279 (2001)(discussing analysis of determining what material is a protectable trade secret underlying a claim under the VTSA)*.*  A "trade secret" is defined under the VTSA as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

9 V.S.A. § 4601(3); *see also Dicks,* 172 Vt. at 46. Here, the allegations in the Complaint are insufficient to identify Plaintiff's purported trade secrets with any degree of particularity to plausibly establish Plaintiff had any trade secrets apart from the Concepts Software or Concepts Software Trade Secrets, claiming broadly that its' "business, its customers, its pricing models, its long term objectives, its operations, and its pricing"  constitute trade secrets.  Compl. ¶ 14. Importantly, pleadings, like the Complaint here, that merely recite the elements of a cause of action are not entitled to a presumption of truth. *Iqbal*, 1556 U.S. at 678-679.

This District has granted a motion to dismiss where, similar to the instant matter, a plaintiff's misappropriation claim simply "tracks the elements of a claim for trade secret misappropriation under Vermont law without supplying any factual allegations that would allow the Court to assume their truth for purposes of a motion to dismiss." *Synventive Molding Sols., Inc. v. Injection Molding Sys., Inc.,* No. 2:08-CV-136, 2009 WL 10678880, at *2 (D. Vt. Dec. 7, 2009).  It is not possible to tell from the recitations in the Complaint what information Defendants

purportedly misappropriated that meets the statutory definition of a trade secret under the VTSA.

Accordingly, Plaintiff's claim fails as a matter of law and must be dismissed.

> **B.    Plaintiff's Misappropriation of Trade Secrets Claim Fails To The Extent Plaintiff Seeks Redress for Copyrighted Trade Secrets, Since Such Information is Not Secret**

Trade secrets are entitled to protection as long as they remain secret, *i.e.,* until they are

publicly disclosed.   Count IV of the Complaint, to the extent it seeks redress for alleged

misappropriation of copyright trade secrets also fails to the extent that the alleged "copyright trade

secrets" were deposited with the Copyright Office and, therefore, became part of the public record.

In order to obtain a copyright registration for software, an applicant is required to deposit all—or

at least a representative portion—of the source code for each specific version of the computer

program for which registration is sought.[2]  *Copyright Registration of Computer Programs*, Circ.

61, at p. 2, U.S. Copyright Office, available at *https://www.copyright.gov/circs/*.  To the extent that

the purported trade secrets have been deposited with the Copyright Office, they are available to

the public, meaning they are not confidential, and any claim for trade secret protection is legally

not only implausible, but impossible.

The VTSA expressly includes in its definition of "trade secret" a requirement that the

information be the subject of reasonable efforts to maintain its secrecy.  9 V.S.A. § 4601(3)(B);

---

[2] If Plaintiff failed to identify its software as a trade secret at the time of registration, it would have had to submit the entire source code. Copyright Registration of Computer Programs, Circ. 61, at p 2, U.S. Copyright Office, available at *https://www.copyright.gov/circs/* (rev. 05/2020).  Even if the Plaintiff did assert trade secret protection when it sought registration, it would still have had to at least deposit at least one of the following: (a) one copy of the first ten pages and last ten pages, blocking none of the code; (b) one copy of the first twenty-five pages and last twenty-five pages, blocking out portions of the code allegedly containing trade secret material, provided the blocked out portions are less than 50% of the deposit; (c) one copy of the first twenty-five pages and last twenty-five pages of the object code for the program, together with ten or more consecutive pages of the source code, blocking out none of the source code; (d) if the source code for the entire program is fewer than fifty pages, one copy of the entire code, blocking out the portions of the code containing trade secret material, provided the blocked out portions represent less than fifty percent of the deposit; or (e) If the source code does not have a precise beginning, middle, or end, the applicant may submit an appropriate number of pages (using one of the options described above). *Id.*  at p. 3-4.  It is not clear whether the Plaintiff claimed any trade secret protection and, if it did, which of these methods of deposit it chose.

*see Omega Optical, Inc. v. Chroma Tech. Corp.,* 174 Vt. 10, 15, 800 A.2d 1064, 1067 (2002) (discussing difference between definition of "trade secret" under the VTSA and Restatement of Torts).  Indeed, the Complaint specifically alleges that Concepts undertook "reasonable efforts" to "maintain the secrecy of the Concepts Software Trade Secrets."  Compl. ¶¶ 12.  It is therefore completely contradictory that publicly filed information contained in the copyrights of the Concepts Software and Software Trade Secrets (*see* Compl. ¶ 72, Exhibits A-S) may form the basis of Concepts' claim for misappropriation of trade secrets since such information is not secret. The disclosure of a trade secret, even if accidental or inadvertent, destroys the "secrecy" and removes protection. *See generally* 1 Milgrim on Trade Secrets §1.03 (2007); *see also Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475-76 (1974).  Accordingly, information contained in the published copyrights is publicly available and cannot support Plaintiff's misappropriation claim.

Count VI suffers fatal pleading errors that warrant dismissal: (1) Plaintiff fails to plead the existence of non-copyrighted trade secrets with requisite factual particularity to clear even the low bar of the Rule 8(a) pleading standard; and (2) the purported trade secrets that are alleged with specificity are all copyrighted and related to the Concepts Software, such that the information is publicly available and cannot support a trade secret misappropriation claim. Accordingly, Count VI must be dismissed since Plaintiff has failed to establish the existence of a viable trade secret under the statutory requirements of the VTSA.

## III. PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE IS INSUFFICIENTLY PLED AND FAILS AS A MATTER OF LAW

If the Court does not dismiss Plaintiff's Count VIII for tortious interference with business relationships and prospective economic advantage on the basis that this claim is preempted, Count VIII has failed to plead the elements of this claim and must be dismissed nevertheless. To bring a valid claim of tortious interference with a prospective economic advantage, a plaintiff must plead:

(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference on the part of the interferer; (4) damage to the party whose relationship or expectancy was disrupted; and (5) proof that the interference caused the harm sustained. *Skaskiw v. Vermont Agency of Agric.,* 2014 VT 133, ¶ 24, 198 Vt. 187, 199, 112 A.3d 1277, 1287–88 (2014) (citing *J.A. Morrissey, Inc. v. Smejkal,* 2010 VT 66, ¶ 21, 188 Vt. 245, 6 A.3d 701 (2010)). A valid claim of tortious interference must also involve three distinct parties—a plaintiff, a defendant, and a third party with whom the plaintiff wishes to deal. *Skaskiw,* 2014 VT 133 at ¶ 24 (citing *Stone v. Town of Irasburg,* 2014 VT 43, ¶ 66, 196 Vt. 356, 98 A.3d 769 (2014)); *see also*  Restatement (Second) of Torts § 766B (1979) ("One who intentionally and improperly interferes with the performance of a contract ... between another and a *third person* by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.") (emphasis added).

Here, Plaintiff has made only the barebones recitations of the elements of the cause of action without *any* supporting factual allegations that could form a plausible claim. Critically, the Complaint does not allege any facts that identify even a single business relationship or expectancy that was purportedly interfered with by Defendants and which Defendants were aware of prior to such conduct.  In other words, the necessary distinct "third party" is fatally missing from Plaintiff's claim. Additionally, the Complaint also does not contain facts establishing the conduct that Defendants purportedly undertook that interfered with such relationships or identify any damage (*i.e.,* disruption in a customer or business relationship) that Plaintiff purportedly suffered. Finally, the Complaint also does not contain any factual support to establish causation – that Defendants' wrongful actions of interference caused the harm to Plaintiff's business relationships – which is

unsurprising given that the Complaint fails to plead the other elements of a tortious interference

claim that must be brought together by such a causal connect.  Therefore, not only is Plaintiff's

tortious interference claim completely preempted by the Copyright Act, but even if the Court finds

it is not, Plaintiff has failed to plead a plausible claim for tortious interference and the claim should

be dismissed as a matter of law.

### **CONCLUSION**

For the forgoing reasons, Defendants respectfully request that this Court grant Defendants'

motion to dismiss Counts III through VIII of Plaintiff's Complaint with prejudice.

Date:  November 5, 2020

Respectfully submitted,

Defendants,

XUWEN QIU and TURBOTIDES, INC.
By their attorneys,

*/s/ Matthew B. Byrne*
Matthew B. Byrne
  *mbyrne@gravelshea.com*
GRAVEL & SHEA PC
76 St. Paul Street
P.O. Box 369
Burlington, VT 05402

- and-

Lawrence K. DeMeo (*pro hac vice*)
  *ldemeo@huntonak.com*
*Christopher M. Pardo, (pro hac vice)*
  *cpardo@huntonak.com*
*Anna L. Rothschild (pro hac vice)*
  *arothschild@huntonak.com*
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Phone:  (617) 648-2800
Fax:  (617) 433-5022

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew B, Byrne, hereby certify that I served the foregoing on all counsel of record, through the Court's CM/ECF e-filing system on November 5, 2020.

*/s/ Matthew B. Byrne*

123610.0000001 EMF_US 82558580