UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Concepts NREC, LLC,

    Plaintiff,

    v.            Civil Action No. 5:20-cv-00133-gwc-kjd

Xuwen Qiu; TurboTides, Inc.; and
Hong Ying Zhang,

    Defendants.

## REPORT AND RECOMMENDATION
## AND ORDER
(Docs. 201, 212)

Plaintiff Concepts NREC, LLC (Concepts) sues its former employee Xuwen Qiu, Qiu's wife Hong Ying Zhang, and TurboTides, Inc. (TurboTides), alleging that Qiu founded TurboTides to compete with Concepts in the business of software for turbomachinery. Concepts served two Rule 45 subpoenas—a document subpoena and a deposition subpoena—through Defendant Qiu on Third-Party Hefei Taize Turbine Technology Company Ltd. (Hefei Taize), a Chinese software company. After protracted litigation, the Court ordered Hefei Taize to comply with the subpoenas by June 2, 2023. Concepts alleges that Hefei Taize has not complied with the Court's order with respect to the document subpoena (hereinafter "Subpoena").

Presently before the Court is Concepts' Motion to Hold Third-Party Hefei Taize in Contempt and to Preclude Defendants Xuwen Qiu and TurboTides, Inc. From Relying on Subpoenaed Evidence. (Doc. 201.) Concepts asks the Court to find Hefei Taize in contempt and levy sanctions for its failure to comply with the Subpoena. Due to Hefei Taize's noncompliance with the Subpoena, Concepts further asserts that Defendants TurboTides and Qiu, as alter egos of

Hefei Taize for purposes of enforcement of the Subpoena, should be precluded from relying on evidence that Hefei Taize has not produced in response to the Subpoena.  (*Id.* at 1.)  Also pending is Concepts' Motion to Strike Defendants' Sur-Reply in response to Concepts' Reply to Defendants' Response to the Motion for Sanctions.  (Doc. 212.)

For the reasons set forth below, I recommend that Concepts' Motion to Hold Third-Party Hefei Taize in Contempt and Preclude Defendants Xuwen Qiu and TurboTides, Inc. from Relying on Subpoenaed Evidence (Doc. 201) be GRANTED in part.  I recommend that, after a hearing and development of the factual record, the Court hold Hefei Taize in contempt and order Hefei to pay Concepts' reasonable attorneys' fees and costs in bringing this contempt action.  I further recommend that the Court enter an order precluding Defendants' use of evidence that neither Defendants nor Hefei has produced in response to the Rule 45 Subpoena and in violation of the Court's previous Orders.  (*See* Docs. 87, 183, 197.)

Concepts' Motion to Strike Defendants' Sur-Reply (Doc. 212) is DENIED.

## Magistrate Judge's Civil Contempt Authority

In a case other than one in which the magistrate judge presides with the consent of the parties, a magistrate judge may not issue a final contempt order.  Accordingly, "[w]hile district courts have wide discretion in imposing sanctions for failure to comply with discovery orders, . . . United States magistrate judges have limited civil contempt authority."  *Funnekotter v. Republic of Zimbabwe*, No. 09 Civ. 08168(CM)(THK), 2011 WL 5517860, at *2 (S.D.N.Y. Nov. 10, 2011) (internal citation omitted).  The magistrate judge's role "in a 'non-consent' case is to certify facts relevant to the issue of civil contempt to the district court."  *NXIVM Corp. v. Bouchey*, Civ. Action No. 1:11-MC-0058 (GLS/DEP), 2011 WL 5080322, at *3 (N.D.N.Y. Oct. 24, 2011); 28 U.S.C. § 636(e)(6)(B)(iii).  The magistrate judge may conduct a hearing to assist in certifying the facts of

the alleged contempt.  *NXIVM Corp.*, 2011 WL 5080322, at *4; *Hunter TBA, Inc. v. Triple V Sales*, 250 F.R.D. 116, 118 (E.D.N.Y. 2008).

 "The certification of facts under section 636(e) serves to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt."  *Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999).  Once the magistrate judge "certifies the facts," the district judge "is then required to conduct a de novo hearing at which issues of fact and credibility determinations are to be made."  *Hunter TBA, Inc.*, 250 F.R.D. at 118.  Because "[o]nly a district court may resolve issues of credibility and fact[,] . . . [w]hether the conduct of a party constitutes contempt and any sanctions therefor[e] are committed to the discretion of the district court."  *Church*, 35 F. Supp. 2d at 217.  "However, upon certification a magistrate judge may recommend that certain sanctions be imposed by the district court upon a finding of contempt."  *Id.*  Accordingly, "[o]nce the facts have been certified by the magistrate judge, the determination of whether the conduct constitutes contempt and, if so, what sanctions are appropriate are left to the discretion of the district court."  *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 16-CV-1318 (GBD) (BCM), 2017 WL 5067500, at *10 (S.D.N.Y. Sept. 27, 2017) (internal quotation marks and alteration omitted), *report and recommendation adopted*, 2020 WL 1480465 (S.D.N.Y. Mar. 26, 2020).

## Certification of Facts

 Pursuant to 28 U.S.C. § 636, I certify the following facts, including those developed in the Analysis section of this Report and Recommendation.  The Court has considered the affidavits submitted by the parties in the light most favorable to the plaintiff as the moving party.  *See Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods, Inc.*, No. 01 CV 8378 LFB CLP, 2006 WL 2792756, at *2 (E.D.N.Y. Sept. 27, 2006); *Church*, 35 F. Supp. 2d at 217.  The certified facts do not constitute findings of fact; they are only facts derived from the parties' submissions to

determine "whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." *Church*, 35 F. Supp. 2d at 217.  I conclude that Concepts has adduced sufficient evidence to establish a prima facie case of contempt.  Accordingly, I certify the following facts to Chief Judge Crawford pursuant to 28 U.S.C. § 636(e)(6)(B)(iii):

1. On July 27, 2021, Concepts served two Rule 45 Subpoenas on non-party Hefei Taize through Defendant Xuwen Qiu.  (Doc. 61 at 1; Doc. 73 at 1.)  On July 30, 2021, Defendants filed a Motion to Quash [the Subpoenas] and Motion For Protective Order.  (Doc. 61.)  Concepts filed a Motion for Contempt and Coercive Sanctions against Hefei Taize on August 17, 2021.  (Doc. 73.)  Concepts asserted that Hefei had not complied with the Subpoenas and thus the Court should order Hefei to comply within 30 days and be fined $10,000 per day thereafter if Hefei did not comply.  (*Id.* at 5.)  On September 20, 2021, the Court denied Defendants' Motion to Quash and Motion For Protective Order (Doc. 61) and granted Concepts' Motion for Contempt and Coercive Sanctions (Doc. 73), ordering Hefei to comply with the Subpoenas within 30 days (Doc. 87).

2. On October 20, 2021, Hefei Taize entered a "special appearance" in this litigation and filed a Motion to Modify Subpoenas, asserting that compliance with the Subpoenas exposed it to legal liability under China's 2021 Data Security Law.  (Doc. 92.)  On October 28, 2021, Concepts filed a Response in Opposition to the Motion to Modify Subpoenas (Doc. 93), a Cross-Motion to Find Hefei and Defendant Qiu in Contempt (Doc. 102), and a Cross-Motion to Impose Discovery Sanctions (*Id.*).  Concepts alleged that Hefei did not comply with the Subpoenas within 30 days as previously ordered by the Court.  (*Id.* at 2.)

3. On February 15, 2022, the Court denied Plaintiff's Motion to Compel Qiu to Respond to Certain of Plaintiff's First Set of Interrogatories (Doc. 70), granted in part Plaintiff's Motion to Compel TurboTides to Respond to Plaintiff's First Set of Interrogatories (Doc. 71), and granted Plaintiff's Motion to Compel Defendants to Respond to Plaintiff's Second Set of Requests to Produce (Doc. 72).  (Doc. 140.)   The Court also ordered Defendants to respond to 18 new requests to produce within 30 days.  (*Id.* at 11.)  These 18 requests to produce align nearly verbatim with categories 1, 3, 4, 5, 14, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27 of the Subpoena served on Hefei Taize at the center of this litigation.  (*See* Docs. 72, 73-1.)  On June 16, 2022, Hefei Taize filed a Motion to Quash [the Subpoena] for Lack of Personal Jurisdiction.  (Doc. 156.)

4. On January 18, 2023, the undersigned denied Concepts' Cross-Motions to Find Hefei and Defendant Qiu in Contempt (Doc. 102) and Hefei Taize's Motion to Quash for Lack of Personal Jurisdiction (Doc. 156).  (Doc. 183.)  The Court "permit[ted] Hefei Taize 30 days to produce the information requested in the Subpoena," warning that "[f]ailure to comply with this Order may warrant contempt proceedings."  (*Id.* at 53.)  Hefei Taize objected to the Court's Order, challenging the Court's recommended finding that Hefei Taize and TurboTides were alter egos of one another and that the Court had personal jurisdiction over Hefei Taize.  (Doc. 189.)  On

March 22, 2023, Chief Judge Crawford overruled Hefei Taize's objection, affirming the undersigned's Order.  (Doc. 197.)  The Court then issued a stipulated discovery schedule requiring Hefei to comply with the Subpoena no later than June 2, 2023.  (Doc. 200.)

5.  On June 2, 2023, Hefei released 2,195 pages in response to the Subpoena.  (Doc. 201 at 3.)  Hefei has represented to Concepts that it will not supplement its production.   (Doc. 201-1 at 5.)

6.  On June 14, 2023, Concepts filed a Motion to Hold Third-Party Hefei Taize in Contempt and Motion to Preclude Defendants Xuwen Qiu and TurboTides[1] from Relying on Subpoenaed Evidence.  (Doc. 201.)  Concepts asserts that Hefei Taize's production in response to the Subpoena "falls far short of the requirements of the Subpoena and many key and critical materials are missing."  (*Id.* at 3.)  As sanctions, Concepts requests that Hefei be prohibited from doing business in the United States, that Defendants be precluded from using "the non-produced information in their defense in this case," and that Defendants "should not be permitted to submit or contest evidence that should have been produced by Hefei Taize."  (*Id.* at 11, 12.)  Hefei Taize and Defendants oppose Concepts' Motion.  (Docs. 202, 204.)  The Court conducted a hearing regarding the pending motions on August 28, 2023.  (Minute Entry, ECF No. 219.)

7.  Attached to Concepts' Motion (Doc. 201) is an affidavit of Attorney Fawley in which he describes the alleged deficiencies in Hefei's production.  Attorney Fawley included a "Compliance Chart" listing each requested category of information and Hefei's respective responses.  At the hearing on August 28, Hefei acknowledged that Concepts' characterization of its production is accurate, with the exception of communication between the parties regarding their efforts to schedule a showing of the software per the terms of the Protective Order.  (Doc. 235 at 45.)  Accordingly, the Court relies on the Compliance Chart to assess the extent of Hefei's production.

8.  In the Compliance Chart, Concepts organizes the information based on Requested Production (the language from the Subpoena), Actual Production (Concepts' assessment of Hefei's production as it compares to the requested production), and "Hefei's Claimed Compliant Production" ("the Bates numbered pages Hefei Taize identified as falling within the numbered Subpoena Requested Production category").  (Doc. 201-1 at 2.)  Concepts notes that "[f]or some of the categories, Hefei Taize supplied no Bates numbers, which [Concepts] understood to indicate that [Hefei] was not producing any documents within that category."  (*Id.*)  Additionally, "[i]n an overabundance of caution, on June 2, 2023, Dr. Qiu, on his own behalf, served [Concepts] with responses to Concepts' subpoenas on Hefei."  (Doc. 202 at 1.)  Defendants included with their Opposition to Concepts' Motion Qiu's responses to the Subpoena.  (Docs. 202-1, 202-2.) The Court incorporates Qiu's responses to the Subpoena in its analysis.

---

[1] Defendant Hong Ying Zhang is not party to these Motions, and any reference to Defendants throughout this Report and Recommendation is only to TurboTides, Inc. and Xuwen Qiu.

9.  Hefei produced documents responsive to categories 5, 25, and 31 of the Subpoena, and Concepts does not contest the adequacy of Hefei's responses to these categories. (Doc. 201-1 at 7, 12, 14.)

10. Hefei produced no documents—in other words, supplied no bates numbers—in response to the following categories: 12, 13, 19, 20, 21, 24, 26, 30, 32, 35, 36, 37, 38, and 39. (*Id.* at 9–15.) Concepts asserts that Hefei's production as to these categories is insufficient and not compliant with the Subpoena. (*See id.* at 3.) The Court addresses the categories in which Hefei's alleged failure to respond is most apparent, particularly in light of Concepts' assertion that documents responsive to these categories exist and that Hefei is in possession or control of them:

   a.  Category 12 requested "[d]ocuments comprising the Hefei business strategy, pricing, and sales strategy for the TurboTides software." (Doc. 201-1 at 9.) Hefei did not produce documents responsive to this request.

      Concepts asserts Hefei has documents in its possession responsive to this request because "Hefei Taize has sold the software to numerous customers in China and pursuant to the alleged 'Cooperation Agreement' with TurboTides, China was Hefei Taize's exclusive market for the Software." (*Id.*)

   b.  Category 13 requested "[d]ocuments comprising the solicitation of, and communications with, Concepts/CETI customers." (*Id.*) Hefei did not produce documents responsive to this request.

      Concepts asserts Hefei has documents in its possession responsive to this request because "Hefei Taize has competed with Concepts for sales of the Software in China." (*Id.*)

   c.  Category 19 requested "[a]ll versions of the 'original design blueprint' that contained 'all core functions' for the TurboTides' software." (*Id.* at 11.) Hefei did not produce documents responsive to this request.

      Concepts asserts Hefei has documents in its possession responsive to this request because "the quoted words come from Hefei Taize's website." (*Id.*)

   d.  Category 20 requested "[a] copy of any document authored by Hefei, Qiu, TTI or TTLC at any time before December 8, 2015 that concerned [a variety of] subject matters as they relate to turbomachinery software." (*Id.*) The "subject matters" requested include the following: "meanline modeling"; "1D Meanline Performance Prediction, Design, and Data Reduction"; "Geometry definition / Passage Profile and Blade Shaping"; "2D blade-to-blade and full-stage/multistage throughflow"; "3D CFD with turbomachinery-specific postprocessing for detailed flow evaluation"; "3D FEA with turbomachinery-specific postprocessing for stress, frequency, and thermal evaluation"; "Multidisciplinary Optimization"; "Purpose-Built Knowledgebase for

6

Turbomachinery"; and "Design optimization module." (*Id.*) Hefei did not produce documents responsive to this request.

Concepts asserts Hefei has documents in its possession responsive to this request because "several published papers by Dr. Qiu on some of these topics exist." (*Id.*)

e. Category 21 requested "[a]ny documents, drafts, applications, e-mail, correspondence or awards concerning any competition or programs sponsored by the Chinese Ministry or any Chinese local or regional entity, including but not limited to documents concerning the '1000 Person Plan' and any correspondence with Yu Qing and Pinhua Xie regarding such programs." (*Id.*) Hefei did not produce documents responsive to this request.

Concepts asserts Hefei possesses documents responsive to this request because "Hefei Taize previously produced several certificates awarding Hefei Taize such awards, the Hefei Taize website touts the fact it received such awards, and Dr. Qiu's email correspondence with Mr. Qing and Xie discusses applying for such awards." (*Id.*)

f. Category 26 requested "[a]ll documents attached to or referenced in a February 10, 2020 Stock Purchase Agreement between TurboTides, Inc, Mr. Qiu and Mr. Hui Li . . . ." (*Id.* at 12.) Concepts specified that this list includes but is not limited to: "[t]he 'Business Plan' referenced in Section 4.2"; "[t]he 'Stockholder Agreement or equivalent documents of the Hefei TurboTides Turbomachinery Technology Co., Ltd.' as referenced in Section 2.2"; "[a] copy of any documents evidencing all 'Intellectual Property Rights' including 'tangible embodiments' 'owed or used by the Company in the conduct of the Company's business as now conducted and as presently proposed to be conducted' as referenced at page 2"; "[a]ll 'Transaction Documents' as referenced on page 3; "[a]ll documents comprising the 'transfer from Founder to the Company of all of the Founder's intellectual property reasonably related to the Company's business' as referenced on page 3"; "[a]ll documents comprising the assignment of Intellectual Property rights to TurboTides, Inc. as referenced in Section 4.10"; "[d]ocuments evidencing the acquisition of Intellectual Property rights by TurboTides, Inc. as referenced in Section 4.10(b)"; "[a]ll 'Financial Statements' as referenced in Section 4.15"; "[t]he 'Confidential Information Agreements' referenced in Section 4.16(a)"; "[a]ll export control filings and licenses as referenced in Section 4.22"; and "[a]ny amendments to the Agreement as referenced in Section 9.6." (*Id.* at 12–13.) Hefei did not produce documents responsive to this request.

Concepts asserts Hefei possesses documents responsive to this request because "the [Stock Purchase Agreement] references Hefei Taize documents and concerns the transfer of Hefei Taize stock to Mr. Li." (*Id.* at 13.)

g. Category 32 requested "[a]ny valuation of Hefei." (*Id.* at 14.) Hefei did not produce documents responsive to this request.

Concepts asserts Hefei possesses documents responsive to this request because "it seems inconceivable that a company in business since at least 2016 has never had a valuation performed." (*Id.*)

11. Hefei produced some documents responsive to the following categories: 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 22, 23, 27, 28, 29, 33, and 34. (*Id.* at 6–14.) Concepts asserts that Hefei's production as to these categories is insufficient and not compliant with the Subpoena. (*See id.* at 3.) Concepts describes how Hefei's production for some of the more essential categories is not meaningfully responsive:

a. Category 4 requested "[a]ny materials prepared, made available, distributed or presented by Hefei or Qiu or TTI or TTLLC at the October 26, 2017 'TurboTides Turbine Machinery CAE R&D Platform World Premier and Turbine Machinery Design Technology Seminar' at the He[fei] Shangri-la Hotel." (*Id.* at 7.) Hefei produced "[a] paper by Dr. Thong Dang from Syracuse University that may have been presented at the referenced Seminar," but "[n]o other materials from any other presenter, including Dr. Q[iu] who was the primary presenter." (*Id.*)

Concepts asserts this production is not responsive to the request.

b. Categories 6 and 7 requested "[d]ocuments concerning the origination, founding, and formation of Hefei, TTI, and TTLLC" (*id.*), and "[d]ocuments concerning the initial investment and funding for any business in China founded by Qiu and for Hefei" (*id.* at 8.) For category 6, Hefei produced "documents concerning the business registration for Hefei Taize" and "some corporate resolutions and shareholder resolutions." (*Id.* at 7.) For Category 7, Hefei produced "two pages showing an allocation of shares." (*Id.* at 8.)

Concepts asserts this production is insufficient because, despite Hefei's claim that it was formally incorporated on April 22, 2016, "no communications including email, letters, plans or contracts or agreements between the founders leading up to the origination, founding and formation of Hefei Taize were produced." (*Id.* at 7.) Hefei's production did not include "pre-April 22, 2016 communications between Qiu and other originating shareholders, plans for investing, pursuit of funding." (*Id.*)

c. Category 8 requested "[t]he copyright application and registration of the TurboTides Software in China." (*Id.* at 8.) Hefei's production consisted of "five Patent Applications" and did not include any "copyright applications for any of the purported 26 versions of the TurboTides software . . . despite the production of several Certificates issued by the Chinese Government showing that such copyrights were granted." (*Id.*) Concepts believes this production is insufficient because "Patent Applications . . . are irrelevant to the grant of Copyrights or content of Copyright applications and does not show the copyrighted code for the software at issue in this case." (*Id.*) Hefei attached to its Response to Concepts' Motion a Declaration from Hongbing Zhang, Hefei Taize's General Manager, stating that "[t]he earliest version of the TurboTides software currently in Hefei's possession is 3.3.22." (Doc. 204-2 at 2, ¶ 6.) The Declaration further attests that

Hefei currently possesses version 3.3.22 and version 4.7X, but that "[a]ll earlier versions of the TurboTides software were not archived." (*Id.* at 2–3, ¶ 8.)

In response, Concepts submitted a Declaration from Erica Liu, an intellectual property partner at the Chinese law firm Hylands. (*See* Doc. 207-2.) Ms. Liu states that she is "familiar with the procedures for application of copyrights in effect from 2016 to the present," and she has "reviewed the 28 Certificates issued by the Copyright Protection Center of China ("CPCC") to [Hefei Taize] granting copyrights to 28 different versions of software." (*Id.* at 2, ¶¶ 7–8.) Ms. Liu notes that to obtain a software copyright in China, the application must include basic information about the software, identification documents from the applicant, documents proving the ownership of the software, the software manual, and the software program source code. (*Id.* at 2–3, ¶ 9.) Ms. Liu further states that "[i]t would be highly unusual for a software company or its counsel to not retain a complete copy of the entire application, including the code, for a software copyright because the applicant would need to have the precise code it submitted for registration in the event it wished to challenge an infringer or to defend itself against a claim of infringement." (*Id.* at 3, ¶ 11.)

d.   Category 9 requested "[d]ocuments showing the methods, timing, and individuals involved in the development of the TurboTides software." (Doc. 201-1 at 3.) Hefei's production consisted of a "paper about a 'HYSYS' process modeling tool for use in oilfield engineering; an email from Dr. Qiu dated 1/12/2017 listing books he would like to purchase for Hefei's engineering staff; some mass flow data; a list of definitions; and two or three emails from Dr. Qiu in the last half of 2017; a 2017 TurboTides Software Manual/Instructions/Tutorial for Version 2.7.13, Build July 13, 2017, 'Copyright TurboTides'; 7/7/2017 and 7/21/2017 TurboTides Q/A/ Weekly Reports from Zhang Yue at pp.1301-1302, reporting bugs and fixes and plans for improvement in the next week; a 2017 Year Summary of Quality Assurance dated 1/18/2018 from Zhang Rui, Engineer from R & D Department reporting what he has done over the past year to work on the software and fix bugs." (*Id.* at 8–9.)

Concepts asserts this production is inadequate because "[n]ot a single document predating or post-dating 2017 was produced despite the fact that Dr. Qiu testified that development of the TurboTides Software began in April[] 2016 and application for and a grant of a copyright registration was issued between that date and May 25, 2016 for V.1." (*Id.* at 8.) The documents that Hefei did produce "only concern a narrow and limited aspect of development" and do not contain "email or communications between developers," "software architecture," or "documents showing the organization and management of the alleged 38 software developers." (*Id.*) Concepts explains "this key development information . . . would disclose when work on the TurboTides software actually began." (*Id.*)

9

e.  Category 10 requested "[a]ll versions of the TurboTides Software." (*Id.* at 9.) Hefei produced "a single page listing three steps for installation of executable software."

Concepts asserts this production is not responsive to the request.

f.  Category 14 requested "[a]ll documents concerning or relating in any way to TurboTides LLC including, but not limited to, any documents related to Hongying Zhang's 'own putative software development business' and Zhang's 'own putative software' including such 'putative software.'" (*Id.* at 10.) Hefei's production as to this request consisted of "Hefei Taize bates Numbered Docs. 1314-1348 that listed on each page that the Hefei document had 'All Rights Reserved 2017 © TurboTides LLC.'" (*Id.*)

Concepts explains that this production is insufficient because "as the Court knows, Dr. Qiu wrote a letter of recommendation for an intern who spent time at the TurboTides LLC offices in China and signed the letter as an officer of TurboTides LLC." (*Id.*) Concepts asserts that Hefei should possess documents responsive to this request, presumably based on the connection between Dr. Qiu, TurboTides LLC, and Hefei.

g.  Categories 15 and 16 requested "[a]ll annual financial statements of Hefei" and "Hefei's tax returns." (*Id.*) Hefei produced "some financial spreadsheets for the years 2016 and 2017." (*Id.*)

Concepts asserts this production is inadequate because Hefei did not produce documents for "2018 to present, despite the fact that financial statements were produced to Dr. Qiu's US accountant upon request for purposes of preparing his and his wife's tax returns." (*Id.*) Concepts also notes that "[e]ven if the two spreadsheets produced for 2017 consisted of tax returns, no tax returns were produced for 2016, 2018, 2019, 2020, 2021, or 2022." (*Id.*)

h.  Category 17 requested "[a]ll materials comprising video presentations, tips, and training sessions for the TurboTides Software." (*Id.*)

Concepts asserts this production is inadequate because Hefei only produced "a 5/26/2017 PowerPoint prepared by Dr. Qiu and copyrighted to TurboTides LLC describing the TurboTides Software." (*Id.*)

i.  Category 18 requested "[c]opies of any drafts, the original and all subsequent versions of the TurboTides' Software User's Guides." (*Id.*) Hefei produced "one User's Guide for version V3.1.10." (*Id.* at 11.)

Concepts asserts Hefei's production is inadequate because Hefei did not provide drafts, originals, or the User's Guides for other versions of the TurboTides software, "despite the production of some such User's Guides by TurboTides, Inc." (*Id.*)

j.   Category 22 requested "[a]ny documents concerning or relating to the conception, formation, registration, incorporation or establishment of any business in China by Qiu and/or investors he approaches or who approached him, including but not limited to communications with Yu Qing and Pinhua Xie." (*Id.* at 12.) Hefei's production consisted only of "public records of Hefei Taize's registration and changes in stock ownership records." (*Id.*)

Concepts asserts this production to be inadequate because Hefei did not produce any "documents, emails, contracts, proposals, business plans concerning the conception of Hefei Taize or communications with anyone about setting up the business in China." (*Id.*)

k.   Category 23 requested "[a]ny documents concerning or relating to the corporate structure, ownership, incorporation, registration or application to do business of Hefei Taize Toping Technology Co. Ltd., TurboTides Technology Co., Ltd., Taize Turbine Technology Co, Ltd., Hefei TurboTides Turbomachinery Technology Co. Ltd and/or Hefei Taize Turbine Technology, Co., Ltd." (*Id.*) Hefei's production consisted only of "public records of Hefei Taize's registration and changes in stock ownership records." (*Id.*)

Concepts asserts this production is inadequate because Hefei did not produce any "email, letters, business plans or outlines concerning any of the requested topics." (*Id.*)

l.   Category 28 requested "[a]ll Hefei employee[]s employment agreements." (*Id.* at 13.) Hefei produced "some employee contracts only from 2017." (*Id.*)

Concepts asserts this production is inadequate because Hefei did not provide documents from any other year besides 2017 and because the documents produced are employment contracts for "far less than the 38 employees Hefei [c]laimed to have at one point." (*Id.*)

m.   Category 29 requested "[a]ll corporate minute books of Hefei." (*Id.*)

Concepts asserts Hefei's production as to this request is not sufficient because Hefei only produced six pages of information responsive to this request. (*Id.*)

n.   Category 33 requested "[a]ny reports, correspondence, written communications, or filings with the Chinese Government concerning any turbomachinery software claimed to be authored or owned by Hefei, TTI, TTLC or Qiu." (*Id.* at 14.) Hefei produced "Patent Applications and one TurboTides Manual dating from 2018 for Version 3.1.7." (*Id.*)

Concepts asserts this production is inadequate because Hefei "allegedly copyrighted" twenty-six versions of software. (*Id.*)

11

12. Collectively, Hefei's responses constitute only partial compliance. Apart from categories 5, 25, and 31, every other requested category appears to remain outstanding. The documents Hefei has produced are only a small portion of the documents requested in the Subpoena and ordered to be produced by the Court. Moreover, many of Hefei's responses are not substantially responsive to the specific requests, as described above.

13. Hefei has not explained the steps it took to locate documents responsive to the outstanding categories of requests. Hefei's arguments regarding compliance relate to its efforts to schedule a demonstration of the TurboTides software per the terms of the Protective Order (Doc. 25). Hefei has not provided any other justification for its failure to comply with the vast majority of the Subpoena requests.[2]

14. To the extent that Hefei claims lack of possession of documents responsive to Concepts' requests, Hefei only provides an explanation for its lack of possession of responsive documents as it relates to Concepts' request for "[a]ll versions of the TurboTides Software" (Doc. 201-1 at 9) and "[t]he copyright application and registration of the TurboTides Software in China." (*Id.* at 8.) Hongbing Zhang attests that earlier versions of the TurboTides software were not archived. (Doc. 204-2 at 2–3, ¶ 8.) Concepts' competing Declaration from Ms. Liu casts doubt on Hefei's claimed lack of possession. While this Court must defer to the District Court on

issues of fact and credibility,[3] Hefei does not rebut Concepts' assertion that Hefei can obtain copies of its copyright applications from the Chinese Government. A "copyright applicant is entitled to file a request before the Copyright Protection Center of China ("CPCC") to obtain the application documents as filed for copyright registration including the source program." (Doc. 207-2 at 3, ¶ 12.) Even if Hefei is not currently in possession of all versions of the TurboTides software, it appears that, at a minimum, Hefei could have requested copies of its copyright applications for the TurboTides software from the CPCC. As to all other categories of requests to which Hefei did not provide responses, Hefei does not offer an explanation for any claimed lack of possession.

## Analysis

## I.    Civil Contempt Standards

Federal Rule of Civil Procedure 45(e) governs a third party's duties when responding to a subpoena. The Rule authorizes "[t]he court for the district where compliance is required . . . [to]

---

[2] The parties' dispute concerning Concepts' adherence to the Protective Order (Doc. 25) and Hefei's efforts to schedule a showing of the software is relevant to whether Hefei diligently complied with the Court's Order and the Subpoena. The Court discusses this issue further in Part I.C. of the Analysis.

[3] "Only a district court may resolve issues of credibility and fact." *Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999); *see also Universitas Educ., LLC v. Benistar*, 3:20 CV 738 (JAM), 2021 WL 8202406, at *2 (D. Conn. Dec. 22, 2021) ("[U]pon certification of the facts supporting a finding of contempt, [the district court] is then required to conduct a *de novo* hearing at which issues of fact and credibility determinations are to be made.").

hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "[T]here is substantial precedent within the Second Circuit for non-parties to be held in contempt where they fail to comply with subpoenas." *Universitas Educ., LLC v. Benistar*, 3:20 CV 738 (JAM), 2021 WL 8202406, at *5 (D. Conn. Dec. 22, 2021). However, "courts have generally been reluctant to invoke contempt powers for failure to comply with a subpoena without the prior issuance of a court order compelling that compliance, particularly with respect to non-parties." *NXIVM Corp.*, 2011 WL 5080322, at *3.

"It is well established that the power to punish for contempt is inherent in all courts." *Hunter TBA, Inc.*, 250 F.R.D. at 118 (internal quotation marks and alteration omitted). "[A]n individual who fails to obey a valid order of the court may be subject to both civil and criminal penalties for his actions" and "[t]he primary difference between orders of civil and criminal contempt is their purpose." *Id.* at 119. "Criminal contempt is used to punish the contemnor or vindicate the court's authority; civil contempt seeks to coerce the contemnor into compliance with the court's order or to compensate the complaining party for losses incurred as a result of the contemnor's conduct." *Id.*

"A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). "More specifically, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Id.* While a contemnor's conduct need not be willful, the movant must prove the contemnor "has not been reasonably diligent and energetic in attempting to comply." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008). "All three elements must be met

before contempt sanctions may be imposed." *Citibank, N.A. v. McPartland*, 20-CV-8673 (ALC)
(BCM), 2023 WL 4424352, at *3 (S.D.N.Y. July 7, 2023).

"In the context of civil contempt, the clear and convincing standard requires a quantum of
proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin v. Tiber
Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (citation omitted). While "[t]he failure to meet the
strict requirements of an order does not necessarily subject a party to a holding of contempt," *Dunn
v. N.Y. State Dep't of Lab.*, 47 F.3d 485, 490 (2d Cir. 1995), civil contempt "includes failures in
meaningful respects to achieve substantial and diligent compliance," *Aspira of N.Y., Inc. v. Board of
Educ.*, 423 F. Supp. 647, 649 (S.D.N.Y. 1976). To that end, "[r]easonable diligence, at the very
least, requires a party to develop reasonably effective methods of compliance." *Zino Davidoff SA v.
CVS Corp.*, No. 06 Civ. 15332(RJS), 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008).
Accordingly, "[r]easonably energetic compliance, at a minimum, requires a party to energetically
police the effectiveness of its compliance measures and, when advised that such measures have
fallen short, to modify them accordingly." *Id.* (internal quotation marks omitted). A party is not
required to "exhaust all means available . . . to comply," *Chao*, 514 F.3d at 293, but it must do more
than "a grudging, half-hearted, or foot dragging attempt at compliance," *Chere Amie, Inc. v.
Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2021) (internal quotation marks
omitted).

A.     **The Court's Order requiring Hefei's compliance with the Subpoena was clear
       and unambiguous.**

The Court's Order requiring Hefei Taize to comply with the Subpoena is clear and
unambiguous. As outlined in the Order, the Court "permit[ted] Hefei Taize 30 days to produce the
information requested in the Subpoena," and advised that "[f]ailure to comply with this Order may
warrant contempt proceedings." (Doc. 183 at 53.) Chief Judge Crawford overruled Hefei's
objection to the Order, affirming the conclusion that TurboTides and Hefei are alter egos for

14

purposes of enforcing the Rule 45 Subpoena as to Hefei.  (Doc. 197 at 15 ("The Order therefore properly attributes TurboTides' contacts to Hefei for jurisdictional purposes and asserts personal jurisdiction over Hefei to compel compliance with the Subpoenas.").)  The Court issued a stipulated discovery order on April 14, 2023, which provided that "Hefei Taize shall comply with [the Subpoena] with production on rolling basis, but no later than June 2, 2023."  (Doc. 200 at 1, ¶ 1.)  The Court's Order clearly identified its expectations, timeline, and targeted party.  *See King*, 65 F.3d at 1058.  Accordingly, the Court should conclude that its Order enforcing the Subpoena and the subsequent discovery order were clear and unambiguous.

### B.    The proof of Hefei's noncompliance is clear and convincing.

Based on the above-certified facts, I recommend that the Court find clear and convincing evidence of Hefei's noncompliance with the Court's Order to produce documents requested by the Subpoena.  The Court ordered Hefei to comply with the Subpoena by June 2, 2023.  (Doc. 200 at 1, ¶ 1.)  The Compliance Chart and counsel's representations at the hearing provide the necessary "quantum of proof adequate to demonstrate" such noncompliance with "reasonable certainty." *Levin*, 277 F.3d at 250.

Hefei does not dispute Concepts' characterization of its production and has informed Concepts that it does not intend to produce additional documents.[4]  (Doc. 204-3 at 5.)  Apart from one supplemental response that Hefei produced to Concepts after the hearing on August 28, 2023, Hefei has otherwise failed to produce outstanding records responsive to the Subpoena.  As described in the above-certified facts, Concepts provides factual bases for its belief that Hefei

---

[4]  Hefei's representations regarding whether it will produce additional responsive documents appear inconsistent.  While Hefei informed Concepts that it does not intend to produce additional documents (Doc. 204-3 at 5), Hefei represented at the hearing that its compliance was ongoing.  (Doc. 235 at 32–34.)  Hefei's claim of ongoing compliance appears to relate primarily to its efforts to schedule a demonstration of one version of the TurboTides software pursuant to the Protective Order.  However, Hefei has also represented to the Court that additional responsive documents may be produced, separate from the software demonstration.  (*Id.* at 34.)

possesses or controls documents responsive to numerous categories of the Subpoena.[5]  TurboTides' assertion earlier in the case that Hefei possesses and controls the documents at issue only confirms Hefei's likely possession of responsive documents.  (*See generally* Doc. 40.)  Indeed, TurboTides' purported inability to respond to Concepts' discovery requests was based on Hefei's possession and control over the requested documents and is the reason Concepts ultimately served the Subpoena on Hefei.  Hefei's Motion to Quash the Subpoena was not based on Hefei's lack of possession of the requested documents, further substantiating Concepts' reasonable belief that Hefei possesses responsive documents.

In responding to Concepts' claim of noncompliance, Hefei asserts that Concepts' complaint is with the adequacy of Hefei's production, not with Hefei's failure to produce documents.  (Doc. 204 at 3.)  This claim is unpersuasive.  Concepts challenges the adequacy of Hefei's production insofar as it can, as it appears Hefei has not produced documents in response to dozens of requested categories or otherwise provided an explanation for the non-existence or non-possession of responsive documents in those categories.  To the extent Hefei claims it does not possess the requested documents, as is the case regarding the earlier versions of the software code (*see* Doc. 204-2), Hefei has not detailed the steps it took to locate the requested documents or explained why it does not possess or control the documents.  Other than Hongbing Zhang's declaration explaining

---

[5]  If the responding party denies that it has possession, custody, or control of relevant documents, the discovering party must make an adequate showing to overcome this assertion.  *See Zevros v. S. S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978) ("[A] party's good-faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production . . . ."); *In re Reserve Fund Sec. & Derivative Litig.*, Nos. 09 MD.2011(PGG), 09 Civ. 4346(PGG), 2012 WL 12354219, at *5 (S.D.N.Y. Sept. 10, 2012).  In such cases, the discovering party must "cite to specific evidence to challenge [the nonmovant's] assertions that no additional responsive documents exist."  *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016).  Other than asserting that prior versions of the TurboTides software were not archived (*see* Doc. 204-2), Hefei has not denied that it possesses relevant documents.  It simply has not produced documents in response to certain categories of requests and has not explained the reason for its non-production.

that earlier versions of the software do not exist because they were not archived,[6] Hefei has not offered any explanation to the Court for the absence of responsive records in the other requested categories.  Evidence establishing the nonexistence of the requested documents or Hefei's lack of possession of them is highly relevant to the assessment of Hefei's satisfactory compliance with the Subpoena.  While Hefei cannot be faulted for failing to produce documents that are not in its possession, custody, or control, *see* Fed. R. Civ. P. 45(a)(1)(iii); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007), Hefei has not contested Concepts' Compliance Chart with evidence establishing that the requested documents are not in its possession or control, or otherwise do not exist.

Further, where Hefei claims to have complied and produced responsive documents, its production appears to be "a grudging, half-hearted or foot dragging attempt at compliance," *Chere Amie, Inc.*, 175 F. Supp. 2d at 565, rather than a good-faith effort to comply with the Subpoena.  As described in the above-certified facts, much of Hefei's production is unresponsive to the specific requests and, where documents are produced, they often do not cover the entire date range requested.  This is not an instance where contempt may be avoided because the responding party "fail[ed]to meet the strict requirements of an order." *Dunn*, 47 F.3d at 490.  While perhaps perfect compliance is not the standard, it is clear from the Compliance Chart and the attorneys' representations at the hearing that Hefei has "fail[ed] in meaningful respects to achieve substantial and diligent compliance." *Aspira of N.Y., Inc.*, 423 F. Supp. at 649.

At this late stage in the Rule 45 Subpoena litigation, Hefei's assertion that compliance remains "ongoing" is simply inadequate to fend off Concepts' claim of noncompliance.  Chief Judge Crawford first ordered Hefei to comply with the Subpoena on September 20, 2021.  (Doc.

---

[6] Chief Judge Crawford will assess the credibility of the Zhang Affidavit in light of all the evidence, including whether the requested software information may be obtained from Chinese copyright authorities, as explained in the Liu Declaration.  *See Church*, 35 F.Supp.2d at 217; *Universitas Educ., LLC*, 2021 WL 8202406, at *2.

87.)  After further litigation and evidentiary hearings, in January and March 2023 Hefei was again ordered to comply by June 2, 2023.  (Docs 183, 197.)  Hefei's "ongoing" compliance after June 2, 2023 is itself a violation of the Court's most recent Order.  That Hefei produced responsive materials after the date that compliance was due and after Concepts filed its Motion (Doc. 230-1 at 1, ¶ 3) demonstrates Hefei's noncompliance with the Court's Order.  *See, e.g.*, *Top Jet Enters., Ltd. v. Kulowiec*, 21-MC-789 (RA) (KHP), 2022 WL 280459, at *5 (S.D.N.Y. Jan. 31, 2022) ("An individual responding to a subpoena issued pursuant to Rule 45 has an obligation to conduct a reasonable search for documents.  Perfection is not required.  However, litigation is not a game, and parties cannot engage in halfhearted or ineffective efforts to identify and produce relevant documents." (citations omitted)).

Hefei asserts that there is not clear and convincing evidence of noncompliance with the Court's Order because it intends to provide the source code, and there have "'been discussion[s] between counsel about making' the appropriate arrangements for doing so."  (Doc. 204 at 4 (quoting Doc. 201 at 6 n.4).)  Defendants similarly respond that "[i]t appears that Concepts' fundamental issue with Hefei's production is that it did not include a copy of the software source code and the software," which "is an improper claim of non[]compliance."  (Doc. 202 at 2; s*ee* Doc. 204 at 4.)  Defendants and Hefei assert that Concepts' claim of noncompliance is improper given the procedural protocols specified in the February 2021 Protective Order (*see* Doc. 25).  (Doc. 202 at 2.)  The Protective Order requires that, before "[a]ccess to the secured computer shall be permitted," the producing party must be given "notice" and "an opportunity to object" to any experts the receiving party intends to use to inspect the software.  (Doc. 25 at 22, §10(c).)  Hefei contends that "the protective order does not require Hefei to produce the code; instead, it outlines a detailed process by which Hefei must make the code 'available for inspection on a secured computer . . . in a secured room' during business hours 'at an office of the Producing Party's

counsel' or at another mutually agreeable location or time." (Doc. 204 at 4 (quoting Doc. 25 at 22,

§ 10(c)).) According to Defendants, "in June and July of 2022, Defendants made multiple efforts to

make the software available for review by Plaintiff's counsel and its expert," but "Plaintiff declined

the offer, an offer that has remained open to this day." (Doc. 202 at 3.) Attached to Defendants'

sur-reply is a lengthy email chain from June and July 2022 regarding scheduling a demonstration of

the software for Concepts. (Docs. 209, 209-1.)

Defendants' offer to demonstrate the software code and Concepts' alleged refusal to

participate in that demonstration does not absolve Hefei of its obligation to comply with the Court's

Order. As Concepts notes, "[w]hether the single version [of the software] they dangle before

Concepts and the Court has been scrubbed, altered or modified since this litigation began is

impossible to begin to discern unless and until all other subpoenaed versions and their associated

development documents are produced." (Doc. 208 at 3.) The Court agrees with Concepts that a

demonstration of one version of the software without the benefit of receiving the various iterations

of the software is minimally useful:

> Since Hefei Taize and Defendants refuse to produce all versions, the development
> documents, the copyright applications, and all other subpoenaed materials they are
> withholding, "inspecting" the only version they have unilaterally selected to produce
> is of little, if any, value in getting to the truth of what occurred in TurboTides software
> development before and during the months after Mr. Qiu left Concepts and began
> working in China.

(*Id.*)

Hefei cites caselaw holding that complaints about the adequacy of a discovery production

are "not a sufficient basis to hold [a responding party] in contempt." (Doc. 204 at 3.) However, the

cited authority is distinguishable from the unique circumstances of this case in several important

respects. In *Kennedy v. Basil*, 18-CV-2501 (ALC) (KNF), 2019 WL 6117146 (S.D.N.Y. Nov. 18,

2019), for example, the court did not certify facts for a contempt finding because the alleged

contemnor provided adequate excuse for its deficient compliance with a subpoena.  *Id.* at *4.  By contrast, Hefei has not adequately explained its deficient production.[7]

Accordingly, I recommend a finding that there is clear and convincing evidence of Hefei's noncompliance with the Court's Order.

**C.    Hefei has not diligently attempted to comply in a reasonable manner.**

Concepts asserts that "the time for compliance has passed and only a small fraction of what was required to be produced was produced."  (Doc. 201 at 7.)  Hefei responds that "[s]ince the Court ordered Hefei to comply with the subpoenas in March 2023, Hefei has produced more than 2,000 pages of documents, had numerous discussions with Concepts about providing an opportunity to inspect the software, and cooperated with Concepts' data vendor."  (Doc. 204 at 5.)  Concepts replies that "[d]espite presentation of [a] road map of non[]compliance and a full opportunity to rebut it in its Opposition or supplement to supply all the missing information, Hefei did not."  (Doc. 207 at 3–4.)

It appears Hefei has not taken diligent steps to remedy its production deficiencies even after notification of the deficiencies.  Reasonably diligent compliance "requires a party to energetically police the effectiveness of its compliance measures and, when advised that such measures have fallen short, to modify them accordingly."  *Zino Davidoff SA*, 2008 WL 1775410, at *8 (internal quotation marks omitted).  Hefei also has not offered any explanation for its inadequate discovery

---

[7]  The other cases Hefei cites are readily distinguishable from this case.  In *Canter v. Zeigler*, Civil No. GJH-17-908, 2022 WL 6754646 (D. Md. Oct. 7, 2022), the court found a violation of its order to produce discovery, but declined to impose sanctions given the responding party's detailed explanation of the extensive efforts undertaken to comply with the subpoena notwithstanding its continuing production in response to some requests.  *Id.* at *4–5.  The court also found that the alleged insufficiency of the production did not warrant sanctions because the responding party agreed to produce the items missing from its production.  *Id.* at *5.  By contrast, this case involves instances of complete non-production, without explanation, and without express assurances of future production of the missing documents.  Further, *Da Silva v. New York City Transit Auth.*, 17 Civ. 4550 (FB) (VMS), 2022 WL 17572337 (E.D.N.Y. Sept. 9, 2022), addressed deficiencies in a non-party's *voluntary* production of documents.  *Id.* at *4.  In further contrast to the unique circumstances of this case, the court in *Da Silva* declined to hold the non-party in contempt because "[t]he Order did not compel production of specific documents, but instead merely set a deadline for [the non-party's] voluntary production."  *Id.*

production, beyond asserting that "many of the previous versions of the software . . . were not archived." (*See* Doc. 204 at 4.) Hefei provides a sworn declaration from Hongbing Zhang, Hefei Taize's General Manager, attesting that Hefei possesses only two versions of the software dating to 2018 and 2019. (Doc. 204-2 at 2.) However, it has not explained what it means for software not to be archived, why it retained no versions of its software prior to 2018, or any steps it took to retrieve the software, whether from its own systems or from other sources. Such information is highly relevant to the assessment of Hefei's effective compliance with the Subpoena. The lack of such basic evidence of efforts to comply support a finding of contempt. Hefei also has not addressed the other thirty-eight categories of requested production.

Erica Liu's Declaration attests that a copyright applicant in China "is entitled to file a request before the Copyright Protection Center of China ("CPCC") to obtain the application documents as filed for copyright registration including the source program (the codes)." (Doc 207-2 at 3, ¶ 12.) It appears that in this manner Hefei could acquire the requested documents, including "[t]he copyright application and registration of the TurboTides Software in China," "[a]ll versions of the TurboTides Software," or "[t]he code for all versions of the TurboTides Software," from CPCC. (Doc. 201-1 at 8, ¶ 8; *id.* at 9, ¶¶ 10, 11.) Even after Concepts filed this Motion for Sanctions, Hefei has not acknowledged any deficiency in its discovery, and has not identified or communicated to the court or to Concepts the ways in which it attempted to comply with the discovery order. Each of these examples of deficiency in Hefei's production demonstrates that Hefei has not developed or executed reasonably effective methods for substantial compliance. *See Yurman Studio, Inc. v. Castaneda*, Nos. 07 Civ. 1241(SAS), 07 Civ. 7862(SAS), 2009 WL 454275, at *2 (S.D.N.Y. Feb. 23, 2009) ("Although the Second Circuit has not been squarely confronted with the question of what constitutes reasonable diligence, it has noted that substantial compliance is the appropriate standard in evaluating noncompliance in a contempt case." (internal quotation

marks omitted)).  Accordingly, Concepts has demonstrated that Hefei has not diligently attempted to comply in a reasonable manner.

Based on the evidence before the Court and the above-certified facts, I conclude that Concepts has demonstrated a prima facie case of contempt against Hefei.[8]

## II.    Available Sanctions Under Rule 45

"Rule 45(g) is silent on what types of sanctions are available and instead relies on the Court's 'inherent authority.'" *Universitas Educ., LLC*, 2021 WL 8202406, at *10 (quoting *In re Dunne*, No. 3:17-cv-1399 (MPS), 2018 WL 4654698 (D. Conn. Sept. 27, 2018)).  "Once the facts have been certified by the magistrate judge, the determination of whether the conduct constitutes contempt and, if so, what sanctions are appropriate are left to the discretion of the district court." *McPartland*, 2023 WL 4424352, at *3 (internal quotation marks and alteration omitted).  However, "[a] magistrate judge may also recommend that certain contempt sanctions be imposed, where warranted by the record." *Benthos Master Fund, Ltd. v. Etra*, 1:20-cv-03384 (AJN) (KHP), 2022 WL 1527315, at *5 (S.D.N.Y. Mar. 14, 2022).

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004).  "When the purpose is compensatory, the order should be fashioned so as to reimburse the injured party for his actual damages.  When, however, the purpose is coercive, the district court has broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 56 (2d Cir. 1982) (internal citation omitted).  Civil contempt

---

[8] "When a magistrate judge has certified facts to the district court, the district court must make an independent determination of the facts certified and consider any additional evidence." *Universitas Educ., LLC v. Benistar*, 3:20 CV 738 (JAM), 2021 WL 8202406, at *2 (D. Conn. Dec. 22, 2021) (internal quotation marks omitted).  Should additional facts or evidence be presented to Chief Judge Crawford resulting in a finding that Hefei is not in contempt, I recommend that the Court address Concepts' Motion for Sanctions as a motion to compel regarding the adequacy of Hefei's responses to the Subpoena.

sanctions "may not be imposed as a purely punitive measure." *Paramedics*, 369 F. 3d at 657. "A contempt fine accordingly is considered civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) (alterations in original) (quoting *United States v. Mine Workers*, 330 U.S. 258, 303–04 (1947)). With regard to compensatory fines, "[t]he district court. . . may award appropriate attorney fees and costs to a victim of contempt." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). "[W]hile willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them." *Id.* (footnote omitted).

Concepts initially requested a sanction prohibiting Hefei from doing business in the United States (Doc. 201 at 7), but it does not appear to request this sanction any longer. (*See* Doc. 207.) Concepts presently requests:

> that the Magistrate Judge recommend that the district court issue a stiff coercive sanction comprised of first an award of Concepts' attorney's fees expended on the Hefei Taize subpoena over the past two years plus, at a minimum, a daily monetary sanction with the warning that if monetary sanctions are not paid and/or full compliance with the Subpoena is not achieved within a very short time period, a sanction for willful non[]compliance will follow that will include termination of Hefei Taize's business in the United States directly, or through its agents or alter ego.

(*Id.* at 10 (footnote omitted).) Hefei asserts that Concepts waived its request for monetary sanctions by not initially raising it in their Motion. (Doc. 235 at 47–48.) Hefei is correct that "arguments or requests for relief raised for the first time in reply briefs need not be considered." *Whittaker v. Univ. Surgical Assocs., LLP*, 5:19-cv-00227 (BKS/ATB), 2019 WL 4932829, at *2 (N.D.N.Y. Oct. 7, 2019) (quoting *Gonzales v. Agway Energy Servs., LLC*, 5:18-cv-235 (MAD/ATB), 2019 WL 910669, at *2 (N.D.N.Y. Feb. 25, 2019)); *see also ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007) ("[W]e decline to consider an argument raised for the first time in a reply brief."). "Generally, a court does not consider issues raised in a reply

brief for the first time because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it." *In re Various Grand Jury Subpoenas*, 235 F.Supp.3d 472, 485 (S.D.N.Y. 2017) (internal quotation marks omitted). However, "the Second Circuit has made it abundantly clear that a district court has discretion to consider a belatedly-raised argument." *See Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F.Supp.2d 373, 375 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 71 (2d Cir.2010). The Court considers Concepts' request for coercive and compensatory monetary sanctions because Hefei had an opportunity to respond—and Hefei did respond—to Concepts' request in its post-hearing memorandum.[9] (*See* Doc. 226.)

The Court has discretion to impose monetary fines to coerce Hefei to comply and compensate Concepts for its time spent in contempt litigation. *Bagwell*, 512 U.S. at 828. In determining whether a coercive sanction is appropriate, the Court considers "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987).

Regarding the first factor, Concepts has sought Hefei Taize's compliance with the Subpoena since July 2021. (Doc. 73.) It has engaged in three rounds of litigation in an effort to obtain Hefei's compliance with the Subpoena. (*See* Docs. 73, 102, 201.) The Court initially did not impose

---

[9] In its post-hearing memorandum, Hefei contends that Concepts waived its request for monetary sanctions and attorney's fees because its motion "only addressed the three-part test for holding a party in contempt." (Doc. 226 at 3.) According to Hefei, "in considering whether to award attorney's fees, courts also focus 'on the willfulness of the contemnor's misconduct.'" (*Id.* quoting *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996).) Because courts consider an additional "willfulness" factor before imposing attorney's fees in contempt cases, Hefei claims that Concepts "deprived the parties and the Court of an opportunity to frame and appropriately consider attorney's fees and monetary sanctions." (*Id.*) However, Hefei had ample opportunity at the contempt hearing and in its post-hearing memorandum to persuade the Court that its conduct was not willful. Ultimately, Hefei did not argue lack of willfulness, but instead argued that "Concepts cannot recover any fees incurred prior to June 2, 2023" because attorney's fees for civil contempt "should not cover 'all litigation' activity; it must be limited to fees incurred in 'obtaining a contempt citation.'" (*Id.* at 4 (quoting *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F. Supp. 2d 276, 298-300 (S.D.N.Y. 2009)).) Therefore, Hefei was not deprived of an opportunity to "frame and appropriately consider attorney's fees." (*Id.* at 3.)

sanctions in part because Hefei represented that "there is absolutely no evidence in the record suggesting that Hefei will not abide if the Court orders it to comply with the subpoena." (Doc. 183 at 50 (quoting Doc. 173 at 17).) The Court has now ordered Hefei to comply with the Subpoena on several occasions, and its production remains inadequate, incomplete, and in some cases nonexistent. Without a complete production of responsive documents, resolution of the disputed issues in the case will be frustrated. Many of the documents requested in the Subpoena go to the heart of Concepts' claims, and the significance of their non-production to the progress of this litigation is clear. Therefore, the first factor weighs in favor of imposing coercive monetary sanctions against Hefei.

The second and third factors, however, weigh against imposing coercive monetary sanctions against Hefei. It is unclear whether coercive monetary sanctions will be "effective[]. . . in bringing about compliance," *Dole*, 821 F.2d at 110, because Hefei has taken inconsistent positions with respect to whether its compliance with the Subpoena is ongoing. While Hefei has apparently taken the position that its production is complete and it does not intend to supplement its responses (Doc. 201 at 4), it has also represented to the Court that its compliance with the Subpoena remains ongoing. (Doc. 235 at 33, 34, 40, 45–46.) Hefei also appears to have supplemented its production since the August hearing. (Doc. 230 at 5.) Hefei's inconsistency regarding whether its compliance with the Subpoena remains ongoing has hindered the Court's ability to determine whether Hefei remains in possession of further responsive documents. It is not certain at this juncture whether coercive monetary sanctions will resolve Hefei's inconsistency and bring about compliance. Although it would not be equitable to permit Hefei to avoid coercive sanctions given its apparent recalcitrance in discovery, the evidence does not indicate that such sanctions will be effective in bringing about compliance. The Court also has no information regarding Hefei's "financial resources and the consequent seriousness of the burden of the sanction upon [it]." *Dole*, 821 F.2d at

110.  For these reasons, the Court does not recommend the imposition of coercive monetary sanctions against Hefei.[10]

Nevertheless, Concepts should be compensated for its attorney's fees and costs incurred in bringing its Motion for Contempt.  *See Weitzman*, 98 F.3d at 719; *Gucci America, Inc. v. Li*, No. 10-cv-4974 (RJS), 2015 WL 7758872, at *4 (S.D.N.Y. Nov. 30. 2015) (explaining that attorneys' fees may be awarded "where a party or a non-party willfully fails to comply with a subpoena" (emphasis omitted)).  Hefei's failure to comply with the Subpoena appears willful based on its failure to adequately justify its noncompliance.  Further, in denying Concepts' Emergency Motion for Writ of Attachment of Real Estate (Doc. 215) on September 7, 2023, Chief Judge Crawford specifically noted Hefei's longstanding resistance to discovery in this case, observing that "Dr. Qiu and Hefei have obstructed the discovery process for years. They have behaved like an individual and an organization with something to hide."  (Doc. 223 at 5.)

Accordingly, I recommend that Concepts' request be denied insofar as it seeks coercive monetary sanctions.  However, I recommend that the Court grant Concepts' request for compensatory monetary sanctions and order Hefei to pay Concepts' reasonable attorneys' fees and costs associated with Concepts' Motion for Contempt (Doc. 201).

## III.    Evidence Preclusion Sanctions

Regarding the Magistrate Judge's authority to impose evidentiary preclusion as a sanction, "[m]atters concerning discovery generally are considered non[-]dispositive" and thus "[m]onetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate [judge], reviewable by the district court under the clearly erroneous or

---

[10]  Given the history of this case—particularly Defendants' efforts to avoid cooperating with discovery by pointing to non-party Hefei's possession and control over relevant and responsive documents—a more effective coercive measure is to sanction Defendants for the persistent noncompliance of their alter-ego Hefei, as discussed in Part III.

contrary to law standard." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (internal quotation marks omitted); *see also Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018) ("Motions seeking Rule 37(b) sanctions for noncompliance with the Court's discovery orders 'are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), unless the sanction employed disposes of a claim.'" (quoting *Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15-CV-01095 (PKC)(BCM), 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016))).

"[H]owever, the imposition of certain sanctions under Rule 37, in some instances, may be considered 'case-dispositive,' requiring de novo review." *Thomas E. Hoar, Inc.*, 900 F.2d at 525. Accordingly, "[m]agistrate [j]udges may recommend—but do not have authority to impose— discovery sanctions that dismiss a claim, preclude an entire defense, or otherwise 'terminate' the action by striking a pleading entirely or entering a default judgment against a party." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 16-CV-1318 (GBD) (BCM), 2017 WL 3671036, at *17 (S.D.N.Y. July 18, 2017) (collecting cases). An order precluding the introduction of certain evidence or barring certain contentions "may . . . be properly characterized as non-dispositive . . . [a]s long as the order does not wholly dispose of a party's claim or defense." *Seena Int'l, Inc.*, 2016 WL 2865350, at *10. Consequently, "[w]hether preclusion of evidence as a discovery sanction is dispositive depends upon the nature of the evidence precluded." *Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*, No. 04-CV-1798 (CPS), 2009 WL 1617773, at *1 n.1 (E.D.N.Y. June 9, 2009). "A magistrate judge's authority to order (rather than recommend) a discovery sanction does not depend on the relief requested, but rather depends on the sanction the magistrate judge actually imposes." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 59 (S.D.N.Y. 2020) (internal quotation marks omitted); *see also Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 551 (S.D.N.Y. 2008) (noting that "preclusion

of evidence as a discovery sanction might normally be a non-dispositive matter for the [magistrate judge] to decide as part of its general pretrial supervision of a case," but issuing a Report and Recommendation because of the potentially dispositive nature of the proposed sanctions); *Steinman v. Spinal Concepts, Inc.*, No. 05CV774S, 2007 WL 4198186, at *6 (W.D.N.Y. Nov. 7, 2007) ("Preclusion of evidence . . . as a discovery sanction is severe, and, depending upon the evidence precluded . . . , possibly dispositive . . . ." (citation omitted)).

Although I recommend that evidentiary preclusion is warranted in this case, I do not recommend the precise terms of any such order given the limited purpose of this Report and Recommendation under the governing legal standard. The Court does not know the full scope of the unproduced information that Defendants may seek to introduce at summary judgment or trial, and therefore cannot determine at this time the precise contours of the evidentiary preclusion sanction. After development of the factual record at a hearing before Chief Judge Crawford, however, the Court will have a fuller understanding of the non-produced material and its relevance to the positions Defendants may take at trial. At that time, the Court will be in an informed position to determine the appropriate scope of an evidentiary preclusion order. As explained below, however, I find that the current record is sufficient to recommend an evidentiary preclusion order by the District Court.

Due to Hefei's noncompliance with the Subpoena, Concepts requests that Defendants—as alter egos of Hefei for discovery purposes—be precluded at summary judgment and/or trial from relying on evidence that Hefei has not provided to Concepts. Evidentiary preclusion is an available sanction against a party for that party's noncompliance with a discovery order. Fed. R. Civ. P. 37(b)(2)(A). *See Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 119 (S.D.N.Y. 2018) ("Sanctions available under Rule 37(b) include directing that certain facts be taken as established, precluding the party from supporting its claims or introducing certain matters in

evidence, striking the party's pleadings or portions of its pleadings, staying the action pending compliance, dismissing the party's claims in whole or in part, rendering a default judgment against the party, or holding the party in contempt."); *see also* Fed. R. Civ. P. 37(b)(2)(A) ("If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders."); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose 37(b) sanctions for noncompliance with that order.").

In this case, the non-compliant entity is non-party Hefei, not Defendants TurboTides and Qiu. In the ordinary course, sanctions for a non-party's failure to comply with a subpoena arise under Rule 45. The sanctions are levied against the recalcitrant non-party, not a party to the lawsuit. For the reasons explained below, however, evidentiary preclusion against Defendants is warranted for Hefei's longstanding failure to comply with the Subpoena and for Hefei's violation of the Court's Order enforcing compliance with the Subpoena.

A.    **The Court has inherent authority to impose evidence preclusion sanctions against Defendants TurboTides and Qiu.**

In addition to the authority granted under Rule 37(b) to address failures to comply with discovery orders, federal courts possess the inherent power "to impose respect for its lawful mandates." *LeGrande v. Adecco*, 233 F.R.D. 253, 257 (N.D.N.Y. 2005) (citing *United States v. Seltzer*, 227 F.3d 36, 39–42 (2d Cir. 2000)). Through its "inherent power to manage [its] own proceedings and to control the conduct of those who may appear before [it]," a court may impose sanctions "[e]ven in the absence of a discovery order." *Id.* at 257, 258. A court therefore retains discretion in imposing sanctions for discovery abuse "[w]hether exercising its inherent power, or acting pursuant to Rule 37." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999). "However, before a court can exercise this enormous power, it should do so with restraint and upon

the finding of bad faith and where abusive litigation practices are evident." *LeGrande*, 233 F.R.D. at 258.

The imposition of sanctions under Rule 37 is within the discretion of the court. *See Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994); *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 765 (2d Cir. 1990). Courts should conduct a cautious, fact-intensive, and case-by-case analysis when determining whether discovery sanctions are warranted. Such an approach ensures that courts have the flexibility to tailor sanctions "according to the facts and evidentiary posture of each case." *Reilly*, 181 F.3d at 267. In deciding whether to impose sanctions, courts may consider: (1) the non-complying party's history of failing to comply with court orders; (2) whether the non-complying party had ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the disobedient party received a meaningful warning; (5) the prejudice caused to the other party by the disobedient party's failure to comply; and (6) the degree of the party's personal responsibility for failing to comply. *LeGrande*, 233 F.R.D. at 257.

The history of this discovery dispute demonstrates that Defendants should be precluded from relying on evidence that Hefei has not produced. On June 1, 2021, Concepts filed its Motion to Compel Responses to Plaintiff's First Set of Requests to Produce.[11] (Doc. 40.) Concepts explained in its Motion that Defendants TurboTides and Qiu largely attributed their failure to produce to their lack of possession, custody, and control over Hefei Taize documents. (*See id.* at 8, 12, 13, 15, 16.) According to Concepts, Defendants claimed that "unidentified members of a Hefei Taize 'Board of Directors' have 'prohibited' Mr. Qiu from releasing any of the Hefei Taize documents that he has possession of, custody of and/or control over." (*Id.* at 8.) In their response to Concepts' Motion, Defendants generally asserted that they had produced all documents in their

---

[11] The content of Concepts' First Set of Requests to Produce significantly overlaps with the information and documents requested in the Subpoena served on Hefei. (Doc. 40.)

possession and under their control concerning Hefei Taize and that "Defendants do not possess or control the Hefei Taize documents." (Doc. 43 at 15.) Defendants maintained that "[i]f there are specific documents that Concepts is seeking that are in the possession of Hefei Taize, then Concepts should seek those documents directly from Hefei Taize." (*Id.* at 12.) Defendants also asserted that "[Mr. Qiu] was told he could not access the documents held by Hefei Taize." (*Id.*) Judge Crawford granted Concepts' Motion and ordered Defendants to "produce all documents . . . which they possess now or which they can obtain upon request." (Doc. 51 at 2.)

On July 27, 2021, Concepts served two subpoenas on non-party Hefei, presumably because Defendants represented that the discovery Concepts sought was in the possession of Hefei. The parties engaged in significant litigation over the subpoenas. Defendants filed a Motion for Protective Order and to Quash Subpoena (Doc. 61), which Judge Crawford denied (Doc. 87). Judge Crawford ordered Hefei to comply with the subpoenas within thirty days. (*Id.* at 11.) Hefei did not comply, and extended litigation ensued with respect to the subpoenas.

For example, Hefei moved to modify the subpoena to prevent disclosure of trade secrets and confidential business information and to avoid violating China's data security laws. (Doc. 92.) Concepts sought to hold Hefei and Qiu in contempt. (Doc. 102.) In denying Hefei's motion to modify the subpoena, the Court noted that "[t]he barrier to discovery created by Mr. Qiu's formation of two parallel companies—TurboTides in the United States and Hefei in China—cannot be overstated." (Doc. 140 at 13.) As Judge Crawford explained, Concepts was unable to seek relevant discovery from Defendants because "Mr. Qiu represent[ed] that he has turned over whatever documents are available in the United States through TurboTides." (*Id.*) Concepts' efforts were again frustrated because "Hefei refuse[d] to produce any information it holds about the development, marketing and instruction of the software at issue," and "[i]t refuse[d] even to produce a copy of the software as originally written." (*Id.*)

31

Hefei then moved to quash the subpoena for lack of personal jurisdiction.  (Doc. 156.)  In January 2023, the undersigned ordered Hefei to comply with the Subpoena, advising that "[f]ailure to comply . . . may warrant contempt proceedings."  (Doc. 183 at 53.)  While Hefei produced some responsive documents, a substantial amount of information has not been produced.  Hefei's production was not only inadequate, but Hefei did not produce responsive documents to categories of requests that, earlier in the litigation, *Defendants* claimed *Hefei* had prevented them from producing.  (*See* Docs. 40, 43; *see also* Doc. 183 at 30 ("Defendants have consistently argued that only Hefei Taize has the legal right to the TurboTides software and any related documentation, and even Qiu as Hefei Taize's co-founder and board chairman cannot provide them.").)  As Judge Crawford observed, "the answer . . . to our case can't be everything runs through Hefei, it's a black box, all employees, all documents, all contracts."  (Doc. 153 at 19:4–6.)  Discovery remains stalled, with Hefei at the center of the discovery impasse.

Concepts is correct that Defendants "engaged in significant motion practice to defend Hefei Taize's refusal to comply with the Subpoena and Defendant Qiu voluntarily served as the only live witness at the evidentiary hearing seeking sanctions against Hefei Taize, all in an effort to block Concepts' access to materials they claimed were only available from Hefei Taize."  (Doc. 201 at 2.)  Further, the Court agrees with Concepts that Defendants have already been ordered to produce the same documents that are the subject of the Subpoena.  (Doc. 208 at 6.)   Under the circumstances, Defendants should be precluded from using evidence that neither they nor alter ego Hefei has disclosed pursuant to the Subpoena and multiple orders of this Court.

**B.**    **Given the Court's previous finding that Defendants and Hefei are alter egos for purposes of enforcement of the Subpoenas, the consequences of Hefei's noncompliance should be borne by Defendants.**

"[C]ourts in this [Circuit] have held that a judgment may be enforced against an alter ego, even if the alter ego was not a party to the underlying suit, so long as the alter ego is a party to the

action determining the alter ego status." *Soros Fund Mgmt. LLC v. TradeWinds Holdings, Inc.*, No. 17 Civ. 3187 (JFK), 2018 WL 1276879, at *4 (S.D.N.Y. Mar. 12, 2018). However, "a judgment cannot be enforced against an alleged 'alter ego' who has not had a day in court to litigate whether or not there is such a relationship. . . . On the other hand, courts have enforced judgments against 'alter egos' where the court had jurisdiction over the alleged 'alter ego.'" *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 611 F. Supp. 281, 283–84 (S.D.N.Y. 1985), *rev'd in part on other grounds by Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131 (2d Cir. 1995). "When the alleged 'alter ego' is a party to the action where the 'alter ego' status is litigated, due process will be satisfied." *Id.* at 284. Accordingly, "if the court finds that there is an 'alter ego' relationship, the judgment, in essence, will be enforced against parties to the underlying action." *Id.* Such an outcome "is consistent with the notion that 'alter egos' are treated as one person so that the actions of one, including those that subject one of them to the jurisdiction of the court, may be attributed to the other." *Id.*

The Court's January 2023 Order determined that Defendants and Hefei are alter egos with respect to enforcement of the Subpoenas. (*See* Doc. 183 at 10.) The Court found that Defendants and Hefei disregarded corporate formalities based on evidence suggesting a "significant degree of integration between the two companies." (*Id.* at 15.) The Court also found overlap in ownership, officers, directors, personnel, and common office space, noting that: (1) Qiu "appears to have held a significant ownership stake in both TurboTides and Hefei Taize until recently"; (2) Qiu is the "founder, President, and majority stockholder of TurboTides and the Chairman of Hefei Taize's board of directors"; and (3) "there were TurboTides employees at both Hefei Taize's office and TurboTides' 'China Office,' which shares an address with Hefei Taize." (*Id.* at 16–17 (citations omitted).) The Court also determined that the evidence indicated "limited business discretion and the absence of arm's-length dealing between the two companies" (*id.* at 20), noting that

"TurboTides functioned for the benefit of Hefei Taize" (*id.* at 19) and that "Qiu was co-founder of both TurboTides and Hefei Taize" (*id.* at 20).

Because a "judgment may be enforced against an alter ego, even if the alter ego was not a party to the underlying suit, so long as the alter ego is a party to the action determining the alter ego status," *Soros Fund Mgmt. LLC*, 2018 WL 1276879, at *4, it follows that a defendant should be liable for its non-party alter ego's lack of compliance with a discovery order. Although Defendants are correct that "[t]here has been neither a summary judgment ruling nor a trial wherein the trier of fact has found that Hefei and TurboTides are alter egos" (Doc. 202 at 3), the Court's prior alter ego finding for discovery purposes is an adequate basis to sanction Defendants for Hefei's failure to comply with the Subpoena. *See Vista Food Exchange, Inc. v. Lawson Foods, LLC*, 17-CV-07454 (ALC)(SN), 2019 WL 5682632 (S.D.N.Y. Nov. 1, 2019) (reasoning that where a non-party failed to comply with a subpoena, defendants could be held in contempt for the noncompliance of the non-party because the non-party and defendants were alter egos). Hefei, TurboTides, and Qiu were parties to the action that determined the alter ego issue for purposes of subpoena enforcement. *Wm. Passalacqua Builders, Inc.*, 611 F. Supp. at 284 ("When the alleged 'alter ego' is a party to the action where the 'alter ego' status is litigated, due process will be satisfied."). Although Defendants maintain that there was no "finding regarding which entity controls the other" (Doc. 202 at 3), Defendants do not appear to request reconsideration of the Court's prior alter ego finding. Defendants suggest that discovery sanctions may not be imposed on them for Hefei's noncompliance until there has been an alter ego finding as a result of summary judgment or trial. (*Id.*) As noted, after two days of evidentiary hearings with the participation of Concepts, Defendants, and Hefei, the Court made extensive findings to substantiate its alter ego conclusion. This is sufficient for the sanctions recommended now. Given the history of this discovery dispute,

to conduct still further proceedings on the issue would be to again delay the necessary resolution of the dispute.

    **C.**    **Evidence preclusion sanctions are an appropriate exercise of the Court's discretion.**

"In 'evaluating a district court's exercise of discretion' to impose Rule 37 sanctions, [the Second Circuit] consider[s] a number of factors, including: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'" *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (quoting Ag*iwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).

"The discovery provisions of the Federal Rules of Civil Procedure are designed to achieve disclosure of all the evidence relevant to the merits of a controversy," and thus "[w]hen a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." *Daval Steel Prods.*, 951 F.2d at 1365 (internal quotation marks omitted). Therefore, although an order precluding evidence "is strong medicine, such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators." *Id.* at 1367; *Scantibodies Lab'y., Inc. v. Church & Dwight Co.*, 14CV02275 (JGK) (DF), 2016 WL 11271874, at *33 (S.D.N.Y. Nov. 4, 2016) ("[B]ecause of the harshness of the sanction of preclusion, such a sanction has been held to be justified only in 'rare situations' evincing culpable conduct by the party against whom the sanction is to be imposed." (quoting *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, No. 06 Civ. 1202(LGS)(HBP), 2013 WL 3718071, at *13 (S.D.N.Y. July 15, 2013)), *report and recommendation adopted*, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017). Accordingly, while "[s]trong sanctions should be imposed only for serious violations of discovery

orders," such sanctions "are justified . . . when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Daval Steel Prods.*, 951 F.2d at 1367.

It appears that Hefei's noncompliance with the Subpoena has been willful and not an inadvertent oversight. *World Wide Polymers, Inc.*, 694 F.3d at 159. Hefei's willful noncompliance is evidenced by its inconsistent representations regarding whether it will produce additional responsive documents. It is unlikely that lesser sanctions would be as effective, as the preclusion of non-produced evidence is commensurate with the disadvantage Hefei's noncompliance has on Concepts' ability to develop its claims. *World Wide Polymers, Inc.*, 694 F.3d at 159. This Court has already found Hefei in contempt without imposing sanctions. (Doc. 87.) In fact, the Court previously refrained from imposing sanctions on Hefei in part because Hefei assured the Court that it would abide by any order directing compliance with the Subpoena. (Doc. 183 at 48 (citing Doc. 173 at 17).) The Court's previous orders directing Hefei to comply with the Subpoena have been to no avail. At this point, sanctions are warranted and necessary. Finally, the parties have previously been warned of the consequences of noncompliance. *World Wide Polymers, Inc.*, 694 F.3d at 159. In the Court's last Order regarding these Subpoenas, the Court ordered compliance within thirty days and warned of the possibility of sanctions for noncompliance. (Doc. 183 at 53.)

Given the Court's inherent authority under Rule 37, the Court's previous Order finding Hefei and Defendants to be alter egos for purposes of enforcing the Subpoena against Hefei, and the Defendants' and Hefei's history of noncompliance in this case, it is appropriate to preclude Defendants from utilizing evidence Hefei did not produce in response to the Subpoena.

As noted above, this R&R does not specify the evidence that should be precluded because it does not know the undisclosed evidence upon which Defendants may attempt to rely in subsequent proceedings. Any such order, however, should preclude Defendants from introducing evidence related to software source code or software versions that have not been produced. It would simply

36

be inequitable for Hefei not to produce this information in discovery, but then permit Defendants to rely on it at trial or summary judgment, given that Concepts had no opportunity to examine such evidence and probe its relevance in discovery.  Defendants should not be precluded, however, from using evidence that they produced in response to the Subpoena.

## IV.    Motion to Strike Sur-Reply

Defendants filed a sur-reply in response to Concepts' Reply to Defendants' Response to the Motion for Sanctions.  (Doc. 209.)  Defendants state that they did so "because of a material false representation contained in plaintiff's reply regarding the examination of the software."  (*Id.* at 1.)  Defendants argue that Concepts "falsely denied that [Defendants] made [Hefei Taize]'s software available to Concepts and its expert for inspection." (*Id.*)  Counsel for Defendants attaches seventeen pages of emails between Attorneys Cutler and Fawley from summer 2022 for the Court's reference.  (*See* Doc. 209-1.)  Concepts asks that the sur-reply be stricken.  (Doc. 212.)  According to Concepts, Defendants "have made a material misrepresentation to the Court because Defendants have never made the 'software available to Concepts and its expert for inspection' as they claim," but rather "they have offered to have Dr. Qiu 'demonstrate' one cherry picked version they chose from the 26 or 28 versions of the software."  (*Id.* at 3.)

"The District of Vermont Local Rules of Procedure do not specifically contemplate sur-replies, nor do they bar their use."  *CFGAdvance, LLC v. AgileCap, LLC*, Case No. 2:20-cv-00043, 2021 WL 2336908, at *2 (D. Vt. June 7, 2021) (citing L.R. 7(a)).  This Court generally permits the filing of a sur-reply where the party has "requested leave of court [or] presented extraordinary circumstances justifying the filing in this case." *Chaney v. Stewart*, Civil Action No. 2:13-cv-246, 2015 WL 1538021, at *1 (D. Vt. Apr. 7, 2015); *Carthaginian Fin. Corp. v. Skinner, Inc.*, No. 2:05-CV-3, 2005 WL 1388689, at *2 (D. Vt. June 3, 2005) (granting motion to strike because "[a] sur-reply is not generally permitted, and [the plaintiff] did not seek leave of the Court before filing the

sur-reply"). However, "[d]istrict courts have discretion to decide whether to strike or permit a litigant's sur-reply." *Neary v. Weichert*, 489 F. Supp. 3d 55, 62 (E.D.N.Y. 2020). "To the extent sur-replies are permitted to allow a response to issues raised in the opposing party's filings, they function as a reply." *Riley v. Brook*, Case No. 2:15-cv-00150, 2015 WL 7572308, at *3 (D. Vt. Nov. 24, 2015). "The Second Circuit disfavors new issues raised in reply papers." *Id.* (citing *Keefe v. Shalala*, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995).

Defendants did not request leave to file the sur-reply and therefore it is unauthorized under the Local Rules. Defendants are advised to adhere to the Court's Local Rules regarding future filings. However, the Court declines to strike the sur-reply. The parties' differing positions on whether Defendants have satisfied their obligations to make the software available for inspection is not new information. If the District Court agrees with this Report and Recommendation, it will resolve this factual dispute in fashioning any evidentiary preclusion order. Accordingly, Concepts' Motion to Strike Defendants' Sur-Reply (Doc. 212) is DENIED.

## Conclusion

For the reasons set forth above, I recommend that Concepts' Motion to Hold Third-Party Hefei Taize in Contempt and Preclude Defendants Xuwen Qiu and TurboTides, Inc. from Relying on Subpoenaed Evidence (Doc. 201) be GRANTED in part. Based on the facts certified above and analyzed under the governing law, I find that Concepts has adduced sufficient evidence to establish a prima facie case of contempt. Therefore, I recommend that after a hearing and further development of the factual record, the Court hold Hefei Taize in contempt and order Hefei to pay Concepts' reasonable attorneys' fees and costs in bringing this contempt action. I further recommend that the Court enter an order precluding Defendants' use of evidence that neither Defendants nor Hefei produced in response to the Rule 45 Subpoena and in violation of the Court's previous Orders. (*See* Docs. 87, 183, 197.)

Concepts' Motion to Strike Defendants' Sur-Reply (Doc. 212) is DENIED.

Dated at Burlington, in the District of Vermont, this 22nd day of March 2024.

/s/ Kevin J. Doyle
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).