UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 MAY 24  PM 3: 11

CLERK

BY _____
DEPUTY CLERK

CONCEPTS NREC, LLC,                    )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )        Case No. 5:20-cv-133
                                       )
XUWEN QIU and TURBOTIDES, INC.,        )
and HONG YING ZHANG,                   )
                                       )
        Defendants.                    )

**OPINION AND ORDER**
**(Docs. 201, 245)**

In a prior order, the court noted that—although Plaintiff Concepts NREC, LLC

("Concepts") does not have much likelihood of success at trial—defendants Dr. Xuwen Qiu and

non-party Hefei Taize Turbine Technology Co., Ltd. ("Hefei") have obstructed the discovery

process in this case for years and have behaved as if they have "something to hide." (Doc. 223

at 5.) The court observed that the difficulties related to discovery would "soon be resolved in the

context of the pending contempt motion." (*Id.* (referencing Document 201).) After a hearing on

August 28, 2023 (Doc. 235 (transcript)) and considering post-hearing filings (Docs. 226, 230),

the United States Magistrate Judge issued a Report and Recommendation (R&R) regarding

Concepts' contempt motion on March 22, 2024. (Doc. 245.)

The 39-page R&R recommends that, after a hearing, the court should hold Hefei in

contempt, order it to pay Concepts' reasonable attorneys' fees and costs in bringing the contempt

motion, and preclude Defendants from using evidence that neither Defendants nor Hefei

produced in response to the Rule 45 Subpoena. (*Id.* at 38.) Defendants and Hefei have filed

objections to the R&R under Fed. R. Civ. P. 72. (Docs. 248, 249.) Concepts filed oppositions to

the objections on April 19, 2024. (Docs. 253, 254.) The court heard argument on the objections on April 22, 2024 and took the motion for sanctions under advisement.

**Standard of Review**

As the court explained in a prior order (Doc. 197), Federal Rule of Civil Procedure 72 specifies different standards of review depending on whether a magistrate judge's pretrial order concerns a nondispositive matter or a dispositive motion. In the case of nondispositive matters, the rule states that a district judge considering a timely objection must "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Where a magistrate judge enters a recommended disposition on a dispositive motion, a district judge must determine "de novo" any part of the recommendation to which a party properly objects. Fed. R. Civ. P. 72(b)(3).

Hefei advocates for de novo review of the R&R. (Doc. 248 at 1.) Concepts asserts that the more deferential "clearly erroneous or contrary to law" standard applies. (Doc. 253 at 1–2, 4–5.) The court agrees with Concepts that the latter standard applies here.

To determine whether the matter addressed in a magistrate judge's pretrial order is dispositive or nondispositive, courts analyze "the practical effect of the challenged action on the instant litigation." *Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008). The list of dispositive orders in 28 U.S.C. § 636(b)(1)(A) is not exhaustive. *Id.* "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

However, a variety of sanctions are available for discovery violations, the most potent of which can conclude a claim or even an entire case. *See* Fed. R. Civ. P. 37(b)(2). Thus, "the imposition of certain sanctions under Rule 37, in some instances, may be considered 'case-

2

dispositive,' requiring *de novo* review." *Thomas E. Hoar*, 900 F.2d at 525; *accord Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999) (motions for sanctions "ordinarily should be classified as nondispositive . . . [but] a departure from this general rule may be necessary in those instances in which a magistrate judge aspires to impose a sanction that fully disposes of a claim or defense"); *see also Steele v. Costco Wholesale Corp.*, No. 03 CV 0713, 2005 WL 1068137, at *2 (E.D.N.Y. May 6, 2005) (discussing standards and noting that Rule 72(a) applies except where "a magistrate judge finds that a dispositive sanction is appropriate").

Here, the R&R recommends an order requiring Hefei to pay reasonable attorneys' fees to Concepts and "precluding Defendants' use of evidence that neither Defendants nor Hefei produced in response to the Rule 45 Subpoena." (Doc. 248 at 38.) Neither of those sanctions is dispositive. *Cardell Financial Corp. v. Suchodolski Associates*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012)—cited by Hefei—is distinguishable because the magistrate judge in that case recommended sanctions that would dispose of the contempt questions. *Id.* at 324 n.3. That recommendation was potentially case-dispositive because the case had already proceeded to an amended judgment; the contempt questions were the only significant remaining issues.

The court therefore applies Rule 72(a)'s "clearly erroneous or contrary to law" standard. "An order is clearly erroneous if, based on all the evidence, a reviewing court is left with the definite and firm conviction that a mistake has been committed . . . and is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Galloway v. County of Nassau*, 589 F. Supp. 3d 271, 276–77 (E.D.N.Y. 2022) (internal quotation marks omitted). "This standard is highly deferential, imposes a heavy burden on the objecting party,

3

and only permits reversal where the magistrate judge abused [his or her] discretion." *Id.* (quoting *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015)).

## Background

The R&R includes nine pages of facts certified under 28 U.S.C. § 636(e)(6)(B)(iii) and organized into 14 single-spaced paragraphs. (Doc. 245 at 3–12.) There appears to be no dispute as to the certified facts that are recitations of procedural history in this case. The procedural history includes Concepts' service of two Rule 45 Subpoenas on Hefei through Defendant Xuwen Qiu on July 27, 2021. (Doc. 245 at 4, ¶ 1.) The subpoenas requested multiple categories of information, including "[a]ll versions of the TurboTides Software" and "[t]he code for all versions of the TurboTides Software." (Doc. 61-2 at 5, ¶¶ 10–11; *see also id.* at 14, ¶ 15.) After denying Hefei's motion to quash the subpoenas (*see* Docs. 183, 197), the court issued a stipulated discovery schedule requiring Hefei to comply with the document subpoena "no later than June 2, 2023." (Doc. 200 ¶ 1.)

Hefei produced 2,195 pages of documents on June 2, 2023. (Doc. 201 at 3.) Concepts filed its motion for contempt later that month asserting that Hefei's production was only "a tiny and selective fraction of the subpoenaed materials." (Doc. 201 at 1.) In support of its contempt motion, Concepts supplied a "Compliance Chart" listing the requested categories of information and Hefei's responses. (Doc. 201-1 at 6–15.) The chart indicates multiple alleged failures to produce, including no production responsive to the request for all versions of the TurboTides software or code. (*Id.* at 9.)

The objections to facts certified in the R&R appear to focus primarily on the final three paragraphs:

> 12.   Collectively, Hefei's responses constitute only partial compliance. Apart from categories 5, 25, and 31, every other requested category appears to remain

4

outstanding. The documents Hefei has produced are only a small portion of the documents requested in the Subpoena and ordered to be produced by the Court. Moreover, many of Hefei's responses are not substantially responsive to the specific requests, as described above.

13.     Hefei has not explained the steps it took to locate documents responsive to the outstanding categories of requests. Hefei's arguments regarding compliance relate to its efforts to schedule a demonstration of the TurboTides software per the terms of the Protective Order. Hefei has not provided any other justification for its failure to comply with the vast majority of the Subpoena requests.

14.     To the extent that Hefei claims lack of possession of documents responsive to Concepts' requests, Hefei only provides an explanation for its lack of possession of responsive documents as it relates to Concepts' request for "[a]ll versions of the TurboTides Software" and "[t]he copyright application and registration of the TurboTides Software in China." Hongbing Zhang attests that earlier versions of the TurboTides software were not archived. Concepts' competing Declaration from Ms. Liu casts doubt on Hefei's claimed lack of possession. While this Court must defer to the District Court on issues of fact and credibility, Hefei does not rebut Concepts' assertion that Hefei can obtain copies of its copyright applications from the Chinese Government. . . . As to all other categories of requests to which Hefei did not provide responses, Hefei does not offer an explanation for any claimed lack of possession.

(Doc. 245 at 12 (alterations except ellipsis in original; citations and footnotes omitted).)_

Hefei asserts that the evidence does not support a conclusion that Hefei failed to produce the software. (Doc. 248 at 2.) Hefei maintains that it has agreed to produce "all versions of the TurboTides software in its possession." (*Id.*) Defendants similarly assert that "[n]o evidence has been offered that the code was archived." (Doc. 249 at 2.) And Defendants state that they have produced "all documents in their possession and control." (*Id.* at 6.)

The court inquired at the April 2024 motion hearing as to whether any of the participants sought an evidentiary hearing. *Cf. Proctor v. State Gov't of N.C.*, 830 F.2d 514, 522 (4th Cir. 1987) (concluding that the "better practice" under 28 U.S.C. § 636(e) is "to allow any party the opportunity to introduce evidence upon request"). Having heard no such request, the district court has reviewed the record in the context of the Rule 72(a) standard articulated above.

<u>**Analysis**</u>

The federal rule governing subpoenas includes the following provision regarding contempt: "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). The "persons" who may be held in contempt under Rule 45(g) can include non-parties. *See, e.g.*, *Mizrahi v. Equifax Information Servs., LLC*, 345 F.R.D. 392, 395–96 (E.D.N.Y. 2024). To prevail on its motion for contempt, Concepts must show that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *In re Markus*, 78 F.4th 554, 566 (2d Cir. 2023) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

The R&R concludes that "Concepts has adduced sufficient evidence to establish a prima facie case of contempt." (Doc. 245 at 38.) The district court reviews the case for contempt and the recommended sanctions in turn below. The court also addresses Hefei's argument that granting Concepts' contempt motion would violate Hefei's due process rights by "foreclosing Hefei from having a clear avenue to litigate the alter-ego issue in a proceeding to which it is a party." (Doc. 248 at 4.)

I.    **The Case for Contempt**

A.    **"Clear and Unambiguous" Order**

Hefei and Defendants do not dispute that the court clearly and unambiguously ordered compliance with the subpoenas. (*See* Doc. 183 at 53 (ordering Hefei to comply with the subpoenas within 30 days); Doc. 197 (overruling objections); Doc. 200 ¶ 1 (requiring Hefei to comply with the document subpoena "with production on [a] rolling basis, but no later than

June 2, 2023").)  The challenges to the R&R relate to the remaining two requirements for a
contempt finding.

### B.    "Clear and Convincing" Proof of Noncompliance

The court reviews the proof of noncompliance with reference first to the computer code
for the TurboTides software, and then to the remaining categories of evidence.

#### 1.    The TurboTides Code

As noted above, the document subpoena requested all versions of the TurboTides
software and computer code.  It is undisputed that the TurboTides software has evolved through
multiple versions since the earliest version in 2016.  (*See* Hongbing Zhang Decl. Doc. 204-2,
¶¶ 3–5; Erica Lou Decl. Doc. 207-2, ¶ 8.)[1]  It is also undisputed that Hefei has offered—under
the process set forth in the protective order (Doc. 25)—to allow Plaintiff's expert to review the
code for the earliest version of the TurboTides software that was sold in the United States.
(Doc. 235 at 36; *see also* Doc. 201-1 at 9.)  That is version 4.7X, which was sold in the United
States in 2019.  (Doc. 204-2 ¶ 7.)  According to Hefei General Manager Hongbing Zhang, Hefei
also possesses version 3.3.22, which was released in March 2018.  (*Id.* ¶¶ 6, 8.)  But Ms. Zhang
states that version 3.3.22 is the earliest version of the code that Hefei possesses; "[a]ll earlier
versions of the TurboTides software were not archived."  (*Id.* ¶ 8.)

Concepts asserts that the earlier versions of the code are "critical."  (Doc. 253 at 7.)
According to Concepts, the first version of the code from 2016 was registered "only six months
after Defendant Qiu left the employment of Concepts."  (Doc. 201 at 6.)[2]  Concepts insists that

---

[1] The record contains various statements about the number of "versions," ranging from
eight to twenty-eight.  (*See generally* Doc. 230 at 1 n.2; Doc. 235 at 14–15.)  The precise number
of versions is not material to the issues here.

[2] In their objection to the R&R, Defendants assert that the code is not relevant based on
"Concepts' acknowledgement that its claim is not the incorporation of its copyrighted code into

the earlier versions "have been available to Hefei Taize all along since they reside in the files of the Chinese Government." (Doc. 253 at 7.) In support, Concepts cites the declaration of Erica Liu, a partner with the Chinese law firm Hylands. (Doc. 207-2.) Attorney Liu states that she reviewed 28 certificates issued by the Copyright Protection Center of China ("CPCC") to Hefei for the TurboTides software and that each application for the certificates would have included either the whole source code (if less than 60 pages) or the first and last consecutive 30 pages of the code. (Doc. 207-2 ¶¶ 8–9.) Attorney Liu further states that it would be unusual for a software company not to retain a copy of its entire application (including the code), and that even if Hefei did not do so, Hefei could request copies from the CPCC. (*Id.* ¶¶ 11–13.)

Considering the declarations of both Ms. Zhang and attorney Liu, the R&R states that Hefei "has not explained what it means for software not to be archived, why it retained no versions of its software prior to 2018, or any steps it took to retrieve the software, whether from its own systems or from other sources." (Doc. 245 at 21.) Hefei argues that the R&R improperly assesses credibility as between Ms. Zhang and attorney Liu and improperly speculates about archiving and whether Hefei could obtain earlier versions of the software from the CPCC. (Doc. 248 at 2.) Defendants similarly assert that "[n]o evidence has been offered that the code was archived." (Doc. 249 at 2.)

Hefei Taize's software." (Doc. 249 at 2, *see also id.* at 5–6.) Concepts insists that Defendants' "relevance" objection mischaracterizes Concepts' claims and "ignores the fact that the relevancy of the code is immaterial to whether Hefei Taize has complied with the Court's Order that it comply with the Subpoena." (Doc. 254 at 7.) The court agrees with the Magistrate Judge's comment at the August 2023 hearing that this litigation has proceeded well beyond any question regarding relevance of the code, especially in light of the court's order requiring compliance with the subpoena. (*See* Doc. 235 at 16.) Indeed, the court explicitly stated in a July 2021 Order that the code and all versions of the software are relevant to the claims in this case. (Doc. 51 at 2.)

8

The court finds no abuse of discretion in the R&R's review of the evidence on this issue. Defendants correctly note that, ordinarily, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (quoting *Menard v. Chrysler Grp., LLC*, No. 14 Civ. 6325, 2015 WL 5472724, at *1 (S.D.N.Y. July 2, 2015)). And "[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." *Id.* (quoting *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992)). But the court finds no clear error in the R&R's assessment of the evidence and the applicable burdens.

Hefei denied possession of code versions earlier than 3.3.22 on the grounds that all such earlier versions were not archived. The R&R fairly asks what it means for software not to be "archived" and why Hefei would not have retained versions of its software prior to 2018. (Doc. 245 at 21.) But those queries—and the lack of answers from Hefei—are not essential to resolve Concepts' motion. A Rule 45 subpoena is not limited to materials in the subpoenaed party's "possession," but also includes materials in the party's "custody" or "control." Fed. R. Civ. P. 45(a)(1)(A)(iii).

To the extent that Hefei has asserted that it does not have "possession, custody, or control" of any earlier versions of the code, Concepts has overcome that assertion with unrebutted evidence that at least 60 pages of each prior copyrighted version of the code would be on file with the CPCC and that Hefei could request copies from that agency. *See In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) ("The inquiry

into whether a document is in a party's 'control' under Rule 45 is whether the party 'has a legal right or the practical ability to obtain the documents.'" (quoting *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006))).  The R&R properly points out that Hefei has not described "any steps it took to retrieve the software, whether from its own systems *or from other sources*."  (Doc. 245 at 21 (emphasis added).)[3]

## 2.    Remaining Categories of Evidence

Apart from the question of the TurboTides code, the R&R states that "Hefei also has not addressed the other thirty-eight categories of requested production." (Doc. 245 at 21.)  Hefei has not responded to that point except to attack the R&R's statement that "Hefei has taken inconsistent positions with respect to whether its compliance with the Subpoena is ongoing." (*Id.* at 25; *see also id.* at 15 n.4.)  Hefei asserts that there is no inconsistency in its statements at the August 2023 hearing that Hefei would produce "a specific set of additional documents" and that Hefei's counsel "would continue to communicate with Hefei about the subpoena." (Doc. 248 at 3.)  Those statements are internally consistent, but difficult to square with Hefei's counsel's representation in June 2023 that the materials it had produced by that time "are the materials I've been told by my client are responsive so it is my understanding that this is the extent of the production."  (Doc. 204-3 at 5.)  In any case, even if Hefei has or intends to make additional productions, Hefei has given no assurances that any such productions will address all 38 categories of material identified in the R&R, and the time for compliance has long since passed.

---

[3] The court will not speculate as to the probative value of 60 pages of code for software than may occupy many more pages.  But Hefei's failure to produce even those pages supports the R&R's conclusion that Hefei failed to diligently attempt to comply with the Subpoena.

## C.  Failure to Diligently Attempt to Comply

Based on the certified facts, the R&R also concludes that "Concepts has demonstrated that Hefei has not diligently attempted to comply in a reasonable manner." (Doc. 245 at 22.) Hefei does not appear to challenge that conclusion except insofar as it challenges Concepts' proof of noncompliance.  Similarly, Defendants assert that "Hefei Taize has represented that it has produced all responsive documents in its possession and made the software code available to Concepts in accordance with the Protective Order." (Doc. 249 at 2.)  The court find those arguments unpersuasive for the reasons discussed above.  As described in the R&R, Hefei's failure to attempt to acquire prior versions of the code from the CPCC and failure to address the numerous other categories of requested material support the conclusion that "Hefei has not developed or executed reasonably effective methods for substantial compliance." (Doc. 245 at 21.)

## II.  The Recommended Sanctions

For the reasons stated above, the court concludes that the R&R's finding of a prima facie case of contempt is neither clearly erroneous nor contrary to law.  It remains to consider "what sanctions are appropriate." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs, Inc.*, No. 03 Civ. 5562, 2006 WL 1148110, at *1 (S.D.N.Y. Apr. 28, 2006) (citing 28 U.S.C. § 636(e)(6)(B)).  The R&R recommends two forms of sanctions: compensatory monetary sanctions in the form of attorneys' fees to be paid by Hefei, and evidence preclusion sanctions levied against Defendants.

### A.  Compensatory Monetary Sanctions Against Hefei

Apart from opposing liability for contempt, the objections to the R&R do not oppose the recommended compensatory monetary sanctions against Hefei.  The court approves and adopts

11

the recommendation to order Hefei to pay Concepts' reasonable attorneys' fees and costs
associated with Concepts' contempt motion. The court requests that Hefei and Concepts advise
the court within 30 days as to whether they can agree on a reasonable sum.

## B.    Evidence Preclusion Sanctions Against Defendants

The recommended evidence-preclusion component of the sanction is levied against
Defendants "for Hefei's longstanding failure to comply with the Subpoena and for Hefei's
violation of the Court's Order enforcing compliance with the Subpoena." (Doc. 245 at 29.) The
R&R recognizes that "the non-complaint entity is non-party Hefei, not Defendants TurboTides
and Qiu." (*Id.*) But the R&R reasons that "[t]he history of this discovery dispute demonstrates
that Defendants should be precluded from relying on evidence that Hefei has not produced." (*Id.*
at 30.) And, according to the R&R, assigning the consequences of Hefei's noncompliance to
Defendants is justified by the court's previous finding that Defendants and Hefei are alter egos
for purposes of enforcement of the Subpoenas. (*Id.* at 32.)

### 1.    Defendants' Objections

Defendants attack both rationales stated in the R&R for imposing evidence preclusion
sanctions against them for Hefei's noncompliance. First, as to the history of the discovery
dispute, the R&R agrees with Concepts' assertion that:

> Defendants Qiu and TurboTides, Inc. both engaged in significant motion practice
> to defend Hefei Taize's refusal to comply with the Subpoena and Defendant Qiu
> voluntarily served as the only live witness at the [July 2022] evidentiary hearing
> seeking sanctions against Hefei Taize, all in an effort to block Concepts' access to
> materials they claimed were only available from Hefei Taize.

(Doc. 201 at 2.) Defendants disagree, arguing that "[t]he docket does not bear out this
characterization." (Doc. 249 at 6.)

Defendants maintain that they have produced "all documents in their possession and
control" and that, while Hefei may have additional responsive materials, "Defendants cannot act

12

on behalf of Hefei Taize, even though Dr. Qiu is a founder and shareholder of the company."
(Doc. 249 at 6–7.)  Citing *Ghawanmeh v. Islamic Saudi Academy*, 274 F.R.D. 329, 332 (D.D.C.
2011), Defendants suggest that Dr. Qiu cannot be required to "abscond" with Hefei's records in
order to comply with a subpoena.  (Doc. 249 at 7.)  Concepts contends that the record shows that
Defendants "inserted themselves into the Subpoena battle" in an effort to obscure "the truth
about whether the TurboTides Software was developed during Qiu's employment at Concepts
and/or from Concepts' confidential information."  (Doc. 254 at 9.)  And Concepts asserts that
*Ghawanameh* is distinguishable because Dr. Qiu "[f]ounded and controls both companies . . .
[and] [s]et them up as alter egos" and thus has no need to "steal" documents from Hefei.  (*Id.*)

　　　The court finds no clear error in the R&R's characterization of Defendants' motion
practice.  Defendants correctly state that they have produced numerous materials.  But the record
also reveals significant motion practice by Defendants centered on a theory that Hefei alone has
access to certain materials and that Dr. Qiu cannot provide those materials despite his leadership
role as Hefei's founder and board chairman.  Defendants cannot be faulted for exercising their
right to make motions, but the court finds no abuse of discretion in the R&R's conclusion that
Defendants' motion practice aligns them with Hefei and constitutes a basis for imposing
evidence preclusion sanctions against them for Hefei's noncompliance.  *Ghawanameh* is
distinguishable because Defendants do not seek to use a subpoena to force Dr. Qiu to "engag[e]
in an act of theft," 274 F.R.D. at 332, but instead to acquire materials that—at least in Concepts'
view—Dr. Qiu can lawfully access based on his leadership role at Hefei.

　　　The second rationale stated in the R&R for imposing evidence preclusion sanctions
against Defendants for Hefei's noncompliance is based on this court's January 2023
determination—after an evidentiary hearing—that TurboTides, Inc. and Hefei are alter egos for

13

purposes of exercising specific personal jurisdiction over Hefei.  (Doc. 245 at 32–34; *see also* Doc. 183 at 11; Doc. 197 at 15.)  Defendants attack that rationale on multiple grounds.

Defendants note that "[t]here has been no trial and no substantive finding that there is an alter ego."  (Doc. 249 at 8.)  The court agrees that the alter ego determination is potentially subject to re-evaluation "if new evidence relevant to that issue becomes available."  (Doc. 197 at 5.)  But Defendants have presented no new evidence.  They assert that the factual basis for the alter ego determination is unsupported.  (Doc. 249 at 8–9.)  That contention is merely a restatement of evidence and arguments that the court has already considered and decided against.

Defendants also contend that the R&R incorrectly relies upon *Soros Fund Management LLC v. TradeWinds Holdings, Inc.*, No. 17 Civ. 3187, 2018 WL 1276879 (S.D.N.Y. Mar. 12, 2018), to conclude that Defendants should bear the consequences of Hefei's noncompliance. (*See* Doc. 249 at 7–8.)  The court is not persuaded.  Defendants correctly observe the rule that "one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110 (1969).  But *Zenith* also states that if a judgment against a party would be res judicata against a nonparty because of the nonparty's control, the res judicata claim could be adjudicated against the nonparty.  *Id.* at 111.

After discussing *Zenith*, the Second Circuit applied that reasoning in *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, stating: "[I]f the plaintiffs in this case can prove the defendants are in fact the *alter ego* of Developers, defendants' jurisdictional objection evaporates because the previous judgment is then being enforced against entities who were, in essence, parties to the underlying dispute; the *alter egos* are treated as one entity."  933 F.2d 131, 142–43 (2d Cir. 1991) (citing *Dudley v. Smith*, 504 F.2d 979, 982–83 (5th Cir. 1984)).  It follows

14

that "a judgment may be enforced against an alter ego, even if the alter ego was not a party to the underlying suit, so long as the alter ego is a party to the action determining the alter ego status." *Soros*, 2018 WL 1276879, at \*4.

The court therefore rejects Defendants' contention that the R&R improperly relied on *Soros* as contravening *Zenith*. The Second Circuit has articulated how *Zenith* allows the res judicata impact of a judgment against a party to be adjudicated against a nonparty. This case is a little different because the adjudged contemnor is not a party and the sanctions are applied to the non-party's alter ego, which is a party. But as *Soros* indicates, Hefei's participation in the action determining its alter ego status satisfies due process and allows enforcement of the contempt determination against TurboTides, Inc. The R&R's reliance on *Soros* is not contrary to *Zenith* or any other law.

### 2. Hefei's Due Process Argument

Hefei argues that it violates Hefei's due process rights to hold Defendants liable for Hefei's noncompliance because doing so "could have preclusive effect on Hefei, foreclosing Hefei from having a clear avenue to litigate the alter-ego issue in a proceeding to which it is a party." (Doc. 248 at 4.) But Hefei has been afforded ample process in these proceedings to challenge the alter-ego claim. The court cannot avoid its responsibility to rule on motions just because those rulings might have some consequences in some other future litigation.

### Conclusion

The Report and Recommendation dated March 22, 2024 (Doc. 245) is AFFIRMED, APPROVED, and ADOPTED. Concepts' motion to hold Hefei Taize Turbine Technology Co., Ltd. in contempt (Doc. 201) is GRANTED IN PART.

15

Hefei is ordered to pay Concepts' reasonable attorneys' fees and costs in bringing the contempt motion. Defendants are precluded from using evidence that neither Defendants nor Hefei produced in response to the Rule 45 Subpoena.

Dated at Burlington, in the District of Vermont, this $24$ day of May, 2024.

Geoffrey W. Crawford, Chief Judge
United States District Court