U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 OCT 28 AM 9: 55

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CONCEPTS NREC, LLC,              )
                                 )
        Plaintiff,               )
                                 )
        v.                       )          Case No. 5:20-cv-133
                                 )
XUWEN QIU, TURBOTIDES, INC., and )
HONG YING ZHANG,                 )
                                 )
        Defendants.              )

**OPINION AND ORDER**
**(Docs. 240, 241, 298)**

In September 2020, Plaintiff Concepts NREC, LLC—a Vermont-based company that owns and licenses turbomachinery engineering and design software—filed this lawsuit against its former employee Xuwen Qiu and against TurboTides, Inc. (Doc. 1.) Plaintiff's Second Amended Complaint, filed in July 2021, added Dr. Qiu's spouse Hong Ying Zhang as a defendant. (Doc. 52.) The Second Amended Complaint asserts 12 causes of action,[1] including breach of Dr. Qiu's employment agreement and appropriation of trade secrets, arising out of Dr. Qiu's alleged development of a competing software product, TurboTides, while he was employed at Concepts NREC, LLC or its predecessors.[2] (*See id.*)

After a significant period of litigation regarding the pleadings, discovery, sanctions, pretrial attachment, and other matters, Defendants filed motions for summary judgment in

---

[1] The Second Amended Complaint lists two claims as the "tenth" cause of action. (Doc. 52 at 37.) The court refers to the "constructive fraud" claim as Count X and the "civil conspiracy" claim as Count XI. The breach-of-duty-of-loyalty claim against Dr. Qiu (*id.* at 38) is therefore Count XII.

[2] Unless otherwise noted, the court refers to Concepts NREC, LLC and its predecessors collectively as "Concepts."

March 2024. (Docs. 240, 241.) On July 21, 2025, United States Magistrate Judge Kevin J. Doyle issued a 66-page Report and Recommendation ("R&R") as to the summary judgment motions, combined with an Opinion and Order denying Defendants' motions to strike Concepts' statements of dispute material facts and to strike the declarations of Concepts' in-house counsel Bradley Leiser. (*See* Doc. 298.) The R&R recommends granting Defendants' summary judgment motions as to Defendant Qiu on Count VI, granting the motions as to Counts VII–X, and otherwise denying the motions.

On August 18, 2025, Defendants filed objections to the R&R insofar as it recommends denying their motions. (Doc. 303.) Defendants assert that the R&R rests on five "fundamental findings that are flawed." (*Id.* at 1.) Defendants specifically object to the recommended denial of their motions for summary judgment as to Count I (breach of contract); Count II (breach of software terms); Count III (copyright infringement); Count IV (misappropriation of trade secrets); Count V (conversion); Count XI (civil conspiracy); and Count XII (breach of duty of loyalty). (*Id.* at 6–14.) Defendants further assert that Concepts has failed to identify any damages, and that the court should "revisit" the rulings on Defendants' motions to strike. (*Id.* at 14–15.) Plaintiff filed an opposition to Defendants' Objections on September 2, 2025. (Doc. 304.)

## Standard of Review

Defendants' Objections are addressed to the Magistrate Judge's analysis of the dispositive (summary judgment) motions and also the non-dispositive motions (the motions to strike). Different standards of review apply to each. Where a magistrate judge has issued a written order on a non-dispositive pretrial matter, "[t]he district judge in the case must consider

timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Where a magistrate judge enters a recommended disposition on a dispositive motion, a district judge must determine "de novo" any part of the recommendation to which a party properly objects. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). Rule 72 requires that objections to an R&R must be "specific." Fed. R. Civ. P. 72(b)(2). Where a party "makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 632 (S.D.N.Y. 2014) (quoting *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008)).

"The court may adopt those portions of the [R&R] to which no objection is made as long as no clear error is apparent from the face of the record." *United States v. Shores*, No. 17-cr-00083, 2024 WL 489313, at *10 (D. Vt. Feb. 8, 2024) (alteration in original; quoting *Green v. Dep't of Educ. of City of N.Y.*, No. 18 Civ. 10817, 2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020)). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Cullen*, 194 F.3d at 405.

## Analysis

## I.    Motions to Strike (Docs. 274, 277)

The Magistrate Judge's Opinion and Order (Doc. 298) denied two motions to strike that Defendants filed in September 2024 (Docs. 274, 277). Defendants request that the court "revisit

their motions to strike pursuant to their objections set forth herein." (Doc. 303 at 15.)[3]  Concepts

asserts that "[i]t is unclear where Defendants' objections set forth herein' are since there are no

citations to them." (Doc. 304 at 26.)  That is not quite accurate; Defendants' Objections do cite

Document 277.  (Doc. 303 at 5.)  More importantly, however, Concepts asserts that Defendants'

objections to the motions to strike are untimely, and that, even if the court entertained the

objections, Defendants' requests should be denied for absence of any "clear error."  (Doc. 304

at 26–27.)  The court considers those issues in turn.

### A.    Timeliness

As to timeliness, Fed. R. Civ. P. 72(a) states that a party may object to a magistrate

judge's order on a non-dispositive pretrial matter within 14 days of service.  And "[a] party may

not assign as error a defect in the order not timely objected to."  *Id.*  Here, Judge Doyle issued

the combined R&R and Opinion and Order on July 21, 2025.  (Doc. 298.)  On July 30, 2025,

Defendants filed an "Assented[-]To Motion for Extension of Time to Respond to Magistrate

[Judge] Doyle's Report and Recommendation [Docket 298]."  (Doc. 301 (final brackets in

original).)  The court granted that motion and extended the time to file a response to August 18,

2025.  (Doc. 302.)  Defendants filed their Objections on that date.  (Doc. 303.)

Concepts asserts that Defendants' request for an extension—and the court's grant of that

request—"specifically and only concerned an extension to appeal the R&R" but "said nothing

about the Opinion and Order on non-dispositive issues."  (Doc. 304 at 26.)  The court agrees that

the request sought an extension of time to respond to the "Report and Recommendation" without

---

[3] Defendants have not stated whether they seek review of the Magistrate Judge's separate Orders (Docs. 296, 297) denying two other motions to strike that Defendants filed in September 2024 (Docs. 275, 276).  Defendants' Objections do not cite Document 275 at all, and only cite Document 276 in passing in a footnote.  (*See* Doc. 303 at 6 n.5.)  It therefore appears that Defendants' request is focused on the Magistrate Judge's rulings as to Documents 274 and 277.

mentioning the "Opinion and Order" included in the same document. However, absent some express indication that Defendants' request for an extension sought to draw a distinction between the R&R portion of the document and the Opinion-and-Order portion, the court concludes that Defendants' reference to the "Report and Recommendation [Doc. 298]" was a shorthand reference to the entirety of Document 298. The court will not reject Defendants' request to "revisit" their motions to strike as untimely.

### B.     Review for Clear Error

As noted above, Rule 72 provides that, when a magistrate judge has issued a written order on a non-dispositive pretrial matter, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). For the reasons below, the court concludes that the Magistrate Judge's denials of the motions to strike was not clearly erroneous or contrary to law.

### 1.     Motion to Strike Concepts' Statements of Fact (Doc. 274)

In their Motion to Strike, Defendants argued that both of Concepts' Rule 56 statements of fact (Docs. 270-1 and 271-1) were "not material; not facts; composed of arguments and conjecture; and cite[] cases and argue[] law." (Doc. 274 at 2.) After noting that Defendants had failed to cite any specific paragraphs or page numbers in connection with that argument, the Magistrate Judge ruled that the court would "only consider on summary judgment 'facts that have been properly set-forth'" under the applicable rules. (Doc. 298 at 10 (quoting *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 569 (E.D.N.Y. 1999)).) The Magistrate Judge concluded that "'to the extent any paragraph' of the Statements contains legal argument or speculation, 'the offending portions should and will be disregarded by the court, and need not be

stricken from the record.'" (*Id.* (quoting *Schneidermesser v. NYU Grossman Sch. of Med.*, 21 Civ. 7179, 2024 WL 4054372, at *2 (S.D.N.Y. Sept. 5, 2024)).)

In their Objections, Defendants reiterate the arguments they presented to the Magistrate Judge. Defendants contend that Concepts "did not specifically deny Defendants' respective separate statements of fact" and that "[i]nstead, in most instances, Plaintiff presented argument or asserted a purported fact that was not directly related to Defendants' asserted fact." (Doc. 303 at 15.) Defendants note that Rule 56 permits the court to consider a fact undisputed when a party opposing summary judgment fails to properly address the moving party's assertion of fact. Fed. R. Civ. P. 56(e).

The Magistrate Judge did not reject Defendants' observation that Concepts' Rule 56 statements included legal argument or otherwise failed to comport with the requirements of Rule 56(c).[4] But the Magistrate Judge declined to simply strike Concepts' Rule 56 statements entirely. Indeed, wholesale adoption of all of Defendants' asserted facts would have been an exceedingly blunt instrument for addressing Concepts' departures from the Rule 56(c) requirements.[5] The court finds no error in the Magistrate Judge's resolution of Defendants'

---

[4] The Magistrate Judge noted, however, that Defendants had not identified any specific paragraph of the lengthy Rule 56 statements that allegedly violated the applicable rules. (Doc. 298 at 8.) The Magistrate Judge noted that "failure to do so plainly undermines Defendants' ability to meet their burden on a motion to strike." (*Id.*) The court agrees.

[5] This is especially true where, as the Magistrate Judge noted, Concepts' statements of fact *did* present facts to dispute Defendants' summary judgment motions. (*See* Doc. 298 at 8–9.) The Magistrate Judge wisely avoided Defendants' invitation to err in this respect. Instead, the Magistrate Judge very commendably performed an assiduous and independent review of the summary judgment record, notwithstanding the shortcomings of both parties' Rule 56 statements. (*See id.* at 11–12 (noting issues with Defendants' own Rule 56 statements that "unnecessarily increased the time required to review the summary judgment record").)

6

motion to strike Concepts' Rule 56 statements.  Insofar as Defendants seek relief based on five

allegedly flawed "fundamental findings," the court reviews those particular issues below.

###    2.    Motion to Strike Declaration of Bradley C. Leiser (Doc. 277)

Defendants moved to strike (Doc. 277) the Declaration of attorney Bradley C. Leiser

(Docs. 270-5, 271-5).[6]  One of Defendants' grounds for striking the Declaration was their

position (Doc. 277 at 3) that Mr. Leiser lacked knowledge or a basis for his testimony that

"Dr. Qiu wrote software code for Concepts based on the ideas and formulae" in a 2007 technical

memorandum that Dr. Qiu wrote while at Concepts.  (Doc. 271-5 ¶ 17.)[7]  On that issue, the

Magistrate Judge reasoned: "Even if Attorney Leiser lacks first-hand knowledge that Dr. Qiu

wrote a technical memorandum and wrote software code based on the memorandum—a

conclusion Defendants have not proven—Dr. Qiu himself testified to these points at a hearing

attended by Attorney Leiser." (Doc. 298 at 7.)  Having considered that argument and

Defendants' other challenges to Mr. Leiser's Declaration, the Magistrate Judge denied the

motion to strike the Declaration.  (*Id.*)

Defendants ask the court to "revisit" that ruling.  (Doc. 303 at 15.)  Defendants'

Objections mention Mr. Leiser at page 5 and at pages 11–12.  The only express reference to any

previous argument for striking Mr. Leiser's Declaration is Defendants' contention that Mr.

Leiser "did not have the knowledge or basis to testify as to whether the formulas were used or

not used in the TurboTides software." (Doc. 303 at 5.)  Concepts maintains that the Magistrate

---

[6] As the Magistrate Judge noted, Concepts filed identical copies of Mr. Leiser's
September 2024 Declaration in opposition to each of the defense summary judgment motions.
(*See* Doc. 298 at 3 n.2.)

[7] A copy of the 2007 memorandum (the "Internal Memo") is filed under seal at
Document 220-11.

Judge's ruling was not erroneous "for the reasons articulated by the Magistrate Judge."

(Doc. 304 at 13.)

Mr. Leiser's Declaration does not specifically include any assertions about formulas used in the TurboTides software. The nearest assertion on that point is Mr. Leiser's statement that "Dr. Qiu wrote software code for Concepts based on the ideas and formulae" in a 2007 technical memorandum that Dr. Qiu wrote while at Concepts. (Doc. 271-5 ¶ 17.) However, Concepts' position is that Dr. Qiu appropriated Concepts' formulas and models to produce the TurboTides software, so Mr. Leiser's statement about the use of formulas to produce the code for Concepts is consistent with the position that Dr. Qiu also used the formulas to produce TurboTides.

The court agrees with the Magistrate Judge that, even if Mr. Leiser lacks first-hand knowledge that Dr. Qiu used any particular formulas in the TurboTides software, "Dr. Qiu himself testified to these points." (Doc. 298 at 7.) Dr. Qiu testified that at least three formulas he used while at Concepts "and the derived code operating them are now integrated into the TurboTides code." (Doc. 171 at 36.) There is no basis to strike Mr. Leiser's testimony on this issue because Dr. Qiu's own testimony covers the same subject matter, and in more detail.

Defendants asserted that Concepts' own expert, Dr. Peter A. Seitz, contradicts Mr. Leiser's testimony "by stating in his declaration that Dr. Qiu could not have written any code based on any of the formulas in the papers." (Doc. 277 at 3.) It is true that Dr. Seitz stated, in part:

> [I]t would have been impossible for anyone who simply read Dr. Qiu's papers on Concepts' Slip Factor formula, and numerous other such modeling functions, to suddenly develop turbomachinery software from scratch that incorporated such formulae into operable code such that it would function in a working turbomachinery software within 33 days.

(Doc. 270-4 ¶ 94.)  That testimony about how long it might take to develop functioning software from the "slip factor" formula[8] does not contradict Mr. Leiser's testimony that Dr. Qiu developed code for Concepts based on ideas and formulas in the 2007 Internal Memo.  Indeed, Dr. Seitz based his opinions on the assumption of various facts, including that "[t]he precise slip factor model and the formula that expressed it that Dr. Qiu developed for Concepts while at Concepts is implemented in the TurboTides Software."  (*Id.* ¶ 65.)  For all of the above reasons, the court finds no error in the Magistrate Judge's refusal to strike the relevant portions of Mr. Leiser's Declaration.

In a footnote, Defendants raise a new argument against Mr. Leiser's testimony.  They contend that Concepts did not identify Mr. Leiser as a witness in its initial disclosures or in its supplemental initial disclosures.  (Doc. 303 at 5 n.4.)  The court considers multiple factors when determining whether to consider new legal arguments raised for the first time in an objection to an R&R.  *See United States v. Moses*, No. 05-cr-133, 2018 WL 2215511, at *1 (D. Vt. May 15, 2018) (listing factors).  Those factors weigh against consideration of Defendants' new argument, particularly because Defendants have identified no reason for their previous failure to raise the issue.  *See Sall v. Seven Days*, No. 20-cv-00214, 2022 WL 632931, at *3 (D. Vt. Mar. 4, 2022) (noting that "a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not" (quoting *Delap v. Mackey*, No. 21-CV-0847, 2021 WL 5354762, at *1 (N.D.N.Y. Nov. 17, 2021))).  The court therefore declines to address the new argument against Mr. Leiser's testimony.

---

[8] The court describes and discusses the "slip factor" formula below.

9

II.     **Motions for Summary Judgment (Docs. 240, 241)**

Defendants challenge five of the "findings" in the R&R. (Doc. 303 at 1–5.) Defendants also challenge the R&R's legal conclusions underlying the recommended denial of the defense motions for summary judgment as to Counts I–V and XI–XII. (*Id.* at 6–15.) The court begins with the former category.

A.     **Objections to Findings**

1.     **Slip Factor Formula or Model as a Trade Secret**

The R&R cites Dr. Qiu's testimony as supporting a conclusion that he "took the confidential slip factor model calculation and incorporated it in the TurboTides software." (Doc. 298 at 26.) Defendants argue that the R&R incorrectly found that the slip factor[9] "formula" or the slip factor "model" is a trade secret. (Doc. 303 at 1.) They assert that the formula could not have been a trade secret because the formula is publicly available. (*Id.*) Concepts agrees that the "slip factor model" is not a trade secret at issue in this case, but that "it is Dr. Qiu's *conversion* of that model and the formula that describes it *into working turbomachinery computer code* that is a trade secret stolen from Concepts." (Doc. 304 at 4.)

The slip factor formula in the August 2007 Internal Memo—itself not a public document—is based on a document that is public: a May 2007 paper entitled "A New Slip Factor Model for Axial and Radial Impellers," on which Dr. Qiu is an author. (Doc. 220-11 at 8 n.10.) Equation (15) in that public document is the following formula for the slip factor for an impeller with a finite rotation speed:

---

[9] According to Dr. Qiu's testimony, the "slip factor" is part of "mean line" modeling, which refers to the area of turbomachinery design that involves defining the "line by which a fluid or gas will flow." (Doc. 171 at 28, 30.)

$$\sigma = 1 - \frac{C_{slip}}{U_2} = 1 - \frac{F\pi \cos\beta_{2b} \sin\gamma_2}{Z_2} - \frac{Fs_2\phi_2}{4\cos\beta_{2b}}\left(\frac{d\beta}{dm}\right)_2 + \frac{F\phi_2 s_2 \sin\beta_{2b}}{4\rho_2 b_2}\left(\frac{d\rho b}{dm}\right)_2$$

Xuwen Qiu et al., *A New Slip Factor Model for Axial and Radial Impellers*, Proceedings of the

ASME Turbo Expo 2007: Power for Land, Sea, and Air (May 2007), *available at*

https://asmedigitalcollection.asme.org/GT/proceedings-abstract/GT2007/47950/957/363900 and

on file with the court. The Internal Memo's Equation (30) is identical. (Doc. 220-11 at 8.)

Thus, the slip factor formula that appeared in the Internal Memo was not itself

confidential. The court therefore agrees with Defendants that the "unified slip model" was not,

as the R&R suggests, a "confidential formula owned by Concepts." (Doc. 298 at 25.) For the

reasons discussed below, however, Concepts has still presented sufficient evidence to prove that

Dr. Qiu appropriated confidential information from Concepts.

## 2.    David Japikse's Deposition Testimony

Dr. David Japikse[10] founded Concepts and was the company's Chief Executive Officer at

all relevant times. (Doc. 220-8 at 14.) He testified at his deposition in this case that he was not

personally aware of Dr. Qiu taking any trade secrets from Concepts. (*See* Doc. 220-8 at 49.)

Relying on that testimony, Defendants argued in their summary judgment filings that "Concepts

has no specific knowledge of Dr. Qiu taking any code he developed while at Concepts."

(Doc. 240-1 at 12; Doc. 241-1 at 19.)

The Magistrate Judge declined to accept Dr. Japikse's testimony on this point as evidence

that Concepts, as an organization, was unaware of any wrongful conduct by Dr. Qiu.

---

[10] The R&R uses the "Mr." honorific; the court substitutes the "Dr." honorific.
*See* Purdue University, 2002 Distinguished Engineering Alumnus Award,
https://engineering.purdue.edu/Engr/People/Awards/Institutional/DEA/DEA_2002/japikse
[https://perma.cc/WKR7-ZK7Z] (noting conferral of doctorate degree).

(*See* Doc. 298 at 8 n.5 (noting that Dr. Japikse testified in his individual capacity, not as an organizational witness under Fed. R. Civ. P. 30(b)(6), and thus his testimony about his lack of knowledge was not "representative of Plaintiff as an organization"); *see also id.* at 34 ("[H]is personal lack of knowledge will not be imputed to the organization for summary judgment purposes."); *id.* at 42 ("[E]ven if [Dr.] Japikse himself did not personally know of Dr. Qiu taking any code, Defendants have not shown that Plaintiff as an organization also lacked that knowledge.").)

Defendants object to that conclusion, asserting that Dr. Japikse "is a managing agent of Concepts and therefore can speak for and bind Plaintiff." (Doc. 303 at 3.) Concepts concedes that "sometimes certain testimony of an individual can bind a corporation." (Doc. 304 at 7.) But Concepts argues that "the questions asked of Dr. Japikse here were what he *personally* knew." (*Id.*) Concepts maintains that under any standard of review, "Dr. Japikse's testimony on this topic does not bind Concepts." (*Id.* at 8.) Concepts further asserts that, even if Dr. Japikse's testimony did have some binding effect on the company, "not knowing that an employee was stealing trade secrets while employed by the company does not entitle Defendants to summary judgment on any claim" because "[t]hieves don't normally broadcast their actions and are not usually found out until they are caught." (*Id.*)

There appears to be little or no dispute as to the bases on which statements by organizational principals or designees can bind the entity. An organization's deposition testimony under Fed. R. Civ. P. 30(b)(6)—whether given by an officer, director, "managing agent[]" or other designee under the rule—"is 'binding' in the sense that whatever its deponent says can be used against the organization." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34

(2d Cir. 2015). As CEO, Dr. Japikse could have been designated to testify on behalf of Concepts under Rule 30(b)(6).

Here, Dr. Japikse was not designated as a deponent under Rule 30(b)(6). Concepts did not need to oppose Defendants' assertion that Dr. Japikse is a "managing agent." The court agrees that determination of whether an individual is a "managing agent" for purposes of Rule 30(b)(6) may depend on a variety of facts. *See, e.g., M.F. Bank Restoration Co. v. Elliott, Bray & Riley*, No. CIV. 92-0049, 1994 WL 8131, at *2 (E.D. Pa. Jan. 11, 1994) (articulating a three-part test for making the determination). But it is unnecessary to perform that analysis here because Concepts does not dispute that Dr. Japikse was *competent* to be designated under Rule 30(b)(6), as an "officer," "managing agent," or otherwise.[11] The fact that Dr. Japikse was not in fact *designated* as a Rule 30(b)(6) witness means that his testimony as a regular witness does not bind the corporate entity. *See Dominion Res. Servs., Inc. v. Alstom Power, Inc.*, No. 16CV00544, 2017 WL 3575892, at *7 n.6 (D. Conn. Aug. 18, 2017) (testimony of corporate employee as a fact witness "would not be binding on the corporation"). The court can discern no error in the R&R on this point.

### 3.    Reliance on Allegations in the Second Amended Complaint

Defendants' third objection to the "findings" in the R&R is their contention that the Magistrate Judge improperly relied on the allegations of the Second Amended Complaint "in lieu of actual, factual evidence." (Doc. 303 at 4.) Concepts urges the court to reject this argument for "failure to specifically identify any place in the 66 page R&R where the Magistrate Judge allegedly relied on the Complaint allegations in lieu of evidence to defeat summary judgment."

---

[11] Indeed, the designee need not even be an officer, director, or "managing agent"; the rule permits "other persons who consent" to be designated.

13

(Doc. 304 at 9.) Concepts further cites each instance where the R&R refers to the Second

Amended Complaint, categorizing each as either a reference to uncontested facts or as a

description of what Concepts alleged. (Doc. 304 at 9–10.)

Unless a pleading is verified, it would be error for a court to rely on the allegations in the

pleading as evidence on summary judgment. *See Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108,

132 (S.D.N.Y. 2023) ("[A]n unverified complaint is not evidence that can be relied upon at

summary judgment."). The Second Amended Complaint in this case is not a verified pleading.

However, as Concepts points out, courts ruling on summary judgment can properly refer to the

pleadings for certain other purposes, such as where the allegation is admitted, or to simply

describe what the pleader's contentions or allegations are. *See, e.g., Skelcher v. Dep't of Corr.*,

No. 21-cv-00018, 2023 WL 2265848, at *1 (D. Conn. Feb. 28, 2023) (drawing on "admitted

allegations in the complaint" for purposes of outlining the relevant facts on summary judgment).

For that reason, the lack of specificity in Defendants' challenge to the R&R's citation to

the pleadings makes it difficult to identify which reference to the Second Amended Complaint, if

any, might be problematic.[12] Moreover, the court's review of the R&R is in accord with

Concepts' analysis on this point. Each of the references to the pleadings in the R&R appears to

be for a purpose other than to cite the allegation as evidence. (*See* Doc. 304 at 9–10.)

Although the court agrees with Concepts that the R&R's citations to the pleadings are not

error, the court declines Concepts' invitation (Doc. 304 at 10–11) to order the defense to show

cause why its arguments on this issue do not violate Fed. R. Civ. P. 11. According to Concepts:

> Defendants' counsel should be sanctioned for *repeatedly and falsely* claiming that
> the Magistrate Judge's R & R is "flawed by relying on the allegations of Plaintiff's
> Complaint in lieu of actual, factual evidence in order to find that Plaintiff met its

---

[12] Defendants repeat this argument in their objections to the R&R's legal conclusions. (*See* Doc. 303 at 7–9, 11–12.) The argument is equally non-specific in those instances.

burden of demonstrating that there is a genuine dispute of material facts" and then trying to duck responsibility for doing so by failing to identify *anywhere* in the R & R where the Magistrate Judge purportedly relied on such allegations in lieu of evidence.

(Doc. 304 at 10.) Concepts asserts that Defendants' objections to the R&R on this point violate Rule 11(b)(3)'s prohibition against filing factual contentions that lack evidentiary support. (*Id.* at 11.) In the court's view, however, Defendants' criticism of the R&R would more properly be analyzed as a "legal contention" under Rule 11(b)(2). In any case, although the court rejects Defendants' position on this point, the court finds no basis to act under Rule 11(c)(3).

### 4. Weighing Credibility of Dr. Qiu's Testimony

Citing *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005),[13] Defendants assert that the R&R "incorrectly weighed and then ignored the undisputed testimony of Dr. Qiu." (Doc. 303 at 5.) Defendants further assert that "[t]he testimony of Dr. Qiu was primarily in the form of his deposition testimony and the affidavit presented did not change or contradict his deposition testimony or responses to interrogatories." There were no inconsistencies in his testimony." (*Id.*) Defendants offer no further authority, explanation, or argument on this contention.

Concepts faults Defendants for failing to identify where the R&R purportedly weighed or ignored Dr. Qiu's testimony, or otherwise found inconsistencies in the testimony. (Doc. 304 at 11.) Concepts then reviews several pages of the R&R that discuss "contradiction" or

---

[13] Defendants also cite "10 Wright & Miller, Federal Practice and Procedure § 2725." (Doc. 303 at 5.) Section 2725 appears in volume 10A of the fourth edition of that treatise is entitled "Grounds for Summary Judgment—In General." It is unclear if that section supports Defendants' argument, but the court acknowledges other sections of the treatise explaining that the court's function on summary judgment is not to weigh the evidence or judge credibility. *See* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (4th ed.) §§ 2725.2 & n.1 (weighing evidence) and 2726 (credibility).

"contradictory evidence" in Dr. Qiu's testimony, asserting that the Magistrate Judge could properly note the purported contradictions without actually crediting or discrediting the contested testimony. (*Id.* at 11–12.) Absent any further clarification from Defendants, the court discusses the portions of the R&R that Concepts has identified.

First, after an extended quotation from Dr. Qiu's July 2022 testimony (Doc. 171), the R&R states that "a rational juror could rely on the contradiction between Dr. Qiu's sworn testimony at [that] prior hearing and his affidavit at summary judgment [Doc. 220-1] to conclude that Dr. Qiu's representations here are not credible." (Doc. 298 at 27.) In his affidavit, Dr. Qiu offered a timeline of events that he asserted refuted Concepts' contention that he developed TurboTides while employed at Concepts "and must have stolen Concepts code in the process." (Doc. 220-1 at 13–17.) In his July 2022 testimony, Dr. Qiu conceded that the "slip factor formula" that appears in the Internal Memo also appears in the TurboTides user guide. (Doc. 171 at 32–33.) As discussed above, although the slip factor formula appeared in the confidential Internal Memo, the formula itself was not confidential. The court agrees with Defendants that Dr. Qiu's July 2022 testimony on this point does not contradict his affidavit.

Second, the R&R similarly states that Concepts "presented evidence that the TurboTides software uses at least one formula owned by Plaintiff—the slip factor model Dr. Qiu presented in Concepts' confidential Internal Memo" and that "[a] reasonable juror drawing all factual inferences in Plaintiff's favor could infer that Hefei Taize completed the TurboTides software so quickly because Dr. Qiu took code from the Concepts software and gave it to Hefei Taize to incorporate into the TurboTides software." (Doc. 298 at 37–38.) For the same reasons as described above, the court agrees with Defendants that Dr. Qiu's July 2022 testimony about the appearance of the slip factor formula in the TurboTides manual does not contradict the assertion

16

in his affidavit that that he stole no code from Concepts. The court discusses the implications of these conclusions below.

### 5.      Reference to and Reliance Upon Mr. Leiser's Declaration

Defendants' final objection to the findings is their assertion that the R&R incorrectly referred to and relied upon Mr. Leiser's affidavit. (Doc. 303 at 5.) The court has already discussed that affidavit and concluded that the Magistrate Judge properly declined to strike it.

Defendants' argument on this point prompted Concepts to again suggest that Defendants should be sanctioned for "attempting to first mislead the Magistrate Judge with specious claims and now this Court." (Doc. 304 at 13.) The court finds no misrepresentation and declines Concepts' suggestion to open an inquiry into sanctions.

### B.      Objections to Conclusions

Defendants have not objected to the R&R's conclusions as to Counts VI–X and the court discerns no clear error with those conclusions. The court considers below Defendants' objections to the recommend denial of summary judgment on remaining counts.

### 1.      Breach of Contract (Count I)

Asserting that Concepts "has produced evidence that Dr. Qiu took at least one confidential formula owned by Concepts and incorporated it into the TurboTides software," the R&R concludes that Defendants are not entitled to summary judgment on Count I because Concepts "presented sufficient evidence to dispute Defendants' contention that Dr. Qiu did not take any confidential information from Concepts." (Doc. 298 at 25.) For the reasons discussed above, the court agrees with Defendants that the evidence does not support a conclusion that the unified slip factor formula implemented in the TurboTides software was a "confidential" formula or that Concepts "owned" the formula.

Indeed, Concepts concedes that its case does not rest on proving that the slip factor formula is a trade secret or otherwise confidential Concepts technology or information that Dr. Qiu might have taken in violation of his Employment Agreement. (*See* Doc. 304 at 4; *see also id.* at 12 ("[I]t is not Concepts' claim that the 'Slip Factor Formula' is its trade secret.").) Instead, Concepts asserts that "[i]t is the knowledge of how to convert and the conversion of that formula into computer code in order to make it work in turbomachinery software that is a trade secret." (*Id.* at 6.)

On that point, the R&R recognizes two items as relevant nonpublic, confidential information: (1) the "Internal Memo" dated August 2007, and (2) "the software code that Dr. Qiu wrote based on the Internal Memo." (Doc. 298 at 16.) Apart from any question about whether the slip factor formula was confidential, the R&R expressly discusses an independent basis for a factfinder to find in Concepts' favor on the breach-of-contract claim: "Dr. Qiu developed the TurboTides software, in whole or in part, at Concepts' expense in violation of the Employment Agreement." (Doc. 298 at 27.) As the R&R explains:

> Plaintiff has presented evidence tending to show that it would have been impossible for Dr. Qiu and Hefei Taize to complete the first version of a turbomachinery software such as TurboTides with complete source code in the months after Dr. Qiu left Concepts—and therefore Dr. Qiu must have either taken software code from Concepts or written or directed others to write the TurboTides software while he was still at Concepts.

(*Id.* at 28.) There is contrary evidence—including Dr. Qiu's own affidavit (*see* Doc. 220-1 at 13 (discussing TurboTides development timeline))—but the R&R properly declines to weigh the evidence and instead concludes that "Defendants have not met their burden of showing no genuine dispute of material fact entitling them to summary judgment on the breach of contract claims." (Doc. 298 at 29.) The court finds no error with that conclusion.

18

## 2. Breach of Software Terms and Conditions (Count II)

Count II is Concepts' claim that Dr. Qiu and TurboTides breached the terms and conditions of Concepts' software product (*see* Doc. 52-20) "[b]y surreptitiously and wrongfully accessing and using the Concepts Software without paying the required licensing fee and for the purpose of obtaining information with which to compete with Concepts." (Doc. 52 ¶ 102.) Concepts has alleged that it inserted a "tracking device" in its software and that, using that tracking device, "Concepts located a computer using the pirated Concepts Software between April 5, 2020 and May 25, 2020 at a physical location in Hefei City, China, which on information and belief, is an office or facility used and operated by TurboTides." (*Id.* ¶ 79.) Defendants seek summary judgment on Count II, asserting that Concepts has provided "*no* evidence that Hefei Taize or the Defendants actually acquired copies of the software." (Doc. 241-1 at 16.)

> Summarizing Defendants' position, the R&R states:
>
> Defendants seem to contend that Plaintiff's witness [Dr. Japikse] admitted that Defendants did not breach the terms and conditions of the Concepts software because Defendants allegedly purchased a pirated copy of the software that was 'publicly available' online; did not steal the software; had already completed the TurboTides software at the time of purchase; and because Plaintiff was aware of no other perceived wrongdoing by Dr. Qiu.

(Doc. 298 at 33.) The R&R rejected those arguments, reasoning that "Defendants' evidence, even if it were undisputed, does not address the basis of Plaintiff's claim" and that Defendants' cited evidence also "does not substantiate their positions." (*Id.*) The court discusses Defendants' objections to the R&R's conclusions as to Count II in turn below.

Defendants argue that the R&R improperly relied upon the allegations in the Second Amended Complaint, rather than on evidence. (Doc. 303 at 7.) As discussed above, Defendants' challenge to the R&R's citation to the pleadings lacks specificity. Defendants may be

challenging any reliance on Concepts' allegation that it inserted a "tracking device" in its software and that, using that tracking device, "Concepts located a computer using the pirated Concepts Software between April 5, 2020 and May 25, 2020 at a physical location in Hefei City, China, which on information and belief, is an office or facility used and operated by TurboTides." (Doc. 52 ¶ 79.) If that is Defendants' argument, the court rejects it because the record evidence includes Dr. Japikse's testimony regarding that "tracking" feature in Concepts' software and what it showed:

> We have a reporting option in our software that, if somebody has a pirated copy of the software, it reports it back in. And we know that TurboTides bought a stolen copy of the software in China. And that computer reported back in, and it's my belief and understanding that it identified TurboTides specifically in the computer.

(Doc. 220-8 at 27.) The court can consider this evidence even if not cited by Concepts. Fed. R. Civ. P. 56(c)(3). Defendants' argument does not otherwise undermine the R&R's analysis of Count II and the court finds no error in the denial of the defense motion for summary judgment on that count.

### 3.     Copyright Infringement (Count III)

Count III is Concepts' copyright-infringement claim. Concepts claims that:

> Defendants Qiu and TurboTides copied and distributed copies of all or parts of the Concepts Software, prepared one or more derivative works based upon the Concepts Software, distributed copies of such derivative works, and/or otherwise used all or parts of the Concepts Software in violation of . . . the Copyright Act.

(Doc. 52 ¶ 109.) In their motion for summary judgment, Defendants characterize Concepts' claim as one "suggest[ing] that Dr. Qiu created a piece of [demonstrative] single-zone source code while employed at Concepts—that neither Concepts nor its customers were interested in— and shared it with Hefei Taize." (Doc. 241-1 at 16.) Defendants insist that "[t]he evidentiary record provides that Dr. Qiu did not take Concepts' software code and that Hefei Taize developed its own software." (*Id.* at 17.)

20

Analyzing Defendants' arguments, the R&R concludes that: (A) "Defendants misconstrue Plaintiff's copyright infringement claim" as limited to a "small piece" of demonstrative code; (B) there is a dispute of fact material to Count III because Concepts "has presented evidence that Hefei Taize could not have created the TurboTides software from scratch in the few months between Dr. Qiu leaving Concepts and Hefei Taize copyrighting the first version of the TurboTides software 'with complete source code'"; and (C) Defendants are not entitled to summary judgment on Count III based on the "fair use" doctrine. (Doc. 298 at 35–40.)

Defendants concede that the R&R correctly finds that the "demonstrative code" was "not part of Plaintiff's infringement claim." (Doc. 303 at 9.) But Defendants assert that Concepts adduced no "factual evidence in support of the elements of its copyright claim." (*Id.* at 7.) According to Defendants, the R&R "identifies no facts of infringement (incorporation of Concepts' Code into TurboTides Software)." (*Id.* at 8.)

There is no dispute as to what the elements of Concepts' copyright-infringement claim are; the R&R accurately notes that Concepts must show:

> (1) which specific original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright.

(Doc. 298 at 34.) Defendants do not appear to challenge the first three elements. They concede that the "original work" at issue is the turbomachinery design "Code" and "software" owned and "registered" by Concepts. (Doc. 303 at 8; *see also* Doc. 241-1 at 16 (recognizing "Concepts'

21

copyrighted source code" and Concepts' "suite of software programs").)[14]  Instead, Defendants

maintain that Concepts has "identified no code that was infringed."  (Doc. 303 at 8.)  The court

interprets that as a contention that Concepts has failed to adduce evidence on the fourth element:

a showing of acts by Defendants that infringed the copyright.

Concepts asserts that Defendants' contention on this point is improper because it was not

raised in the filings presented to the Magistrate Judge.  (Doc. 304 at 17.)  The court agrees that

"a district judge will not consider new arguments raised in objections to a magistrate judge's

report and recommendation that could have been raised before the magistrate [judge] but were

not."  *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (quoting *Hubbard v.*

*Kelley*, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).  And the court agrees that, as to Count III,

Defendants' opening brief focused on contentions about the "demonstrative single-zone code"

that Defendants now concede is *not* part of Count III.  (*See* Doc. 241-1 at 16.)  But Defendants

also argued that the record showed "that Dr. Qiu did not take Concepts' software code and that

Hefei Taize developed its own software."  (*Id.* at 17.)  Defendants elaborated and asserted in

their reply that "Concepts *does not* claim that Defendants took its code from its software" and

that instead "Concepts' claims concern Dr. Qiu using his general skills and knowledge, along

with the use of publicly available mathematical formulas, in designing the Hefei Taize software."

(Doc. 251 at 7.)

"Copyright infringement occurs when a person or entity 'violates any of the exclusive

rights of the copyright owner.'"  *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163,

178 (2d Cir. 2024) (quoting 17 U.S.C. § 501(a)).  Among those exclusive rights is the author's

---

[14] Mr. Leiser's declaration supports each of these elements.  (*See* Doc. 270-5 ¶ 4.)
Defendants have not challenged the R&R's decision not to strike ¶ 4 of Mr. Leiser's declaration.
(*See* Doc. 298 at 6.)

right "to prepare derivative works." *Id.* (quoting 17 U.S.C. § 106). Thus—even taking as true

Dr. Qiu's testimony that "there is no way to copy code" from Concepts' software and use it

directly to build the TurboTides software (Doc. 220-1 at 5)—Concepts has come forward with

evidence sufficient to support Count III insofar as Concepts claims that TurboTides is derivative

of Concepts' software. Although it is disputed, there is evidence "that it would have been

impossible for Dr. Qiu and Hefei Taize to complete the first version of a turbomachinery

software such as TurboTides with complete source code in the months after Dr. Qiu left

Concepts." (Doc. 298 at 28 (citing evidence).) From that evidence, a jury could conclude that

Dr. Qiu relied on more than just general skills and knowledge to build the TurboTides software,

but also used knowledge of how the Concepts' software operates to construct TurboTides as a

"derivative" work.

Finally, Defendants challenge the R&R's rejection of their assertion that any use of

Concepts' copyrighted code is protected as "fair use." (Doc. 303 at 9.) Defendants' entire

argument on this issue is as follows:

> The Recommendation does not specify what that infringement is and primarily
> relies on the allegations of the complaint to meet Plaintiff's summary judgment
> burden. The Recommendation again relies on Plaintiff's separate statement at
> Doc. 270-1, ¶¶ 8–9 which concerns the NDA, not fair use.

(Doc. 303 at 9–10.) The court rejects these arguments. To the extent that it is difficult to

identify a specific portion of TurboTides code that might be derived from Concepts' code, that is

because—as noted in the R&R—Defendants refused during discovery to provide information for

comparing the code. (Doc. 298 at 40.) The R&R's discussion of "fair use" cites the Second

Amended Complaint only once, and only to reject Defendants' suggestion (now disavowed) that

the only relevant code is the "demonstrative code." (Doc. 298 at 39.) The R&R's citation to

Doc. 270-1 is to *pages* 8–9, not *paragraphs* 8–9. (*See id.*) And the R&R cites that material to

note that Concepts' disagreement with Defendants' assertion that they created "an entirely new

software program." (*Id.*)  As discussed above, a jury could find that TurboTides is derivative of

Concepts' software, and not an "entirely new" program.  The court finds no error in the R&R's

recommendation to deny Defendants' motion as to Count III.

### 4.    Misappropriation of Trade Secrets (Count IV)

In Count IV, Concepts alleges that "[t]he Concepts Copyrighted Trade Secrets, Software

Trade Secrets and Non-Software Trade Secrets constitute trade secrets under 9 V.S.A. § 4601"

(Doc. 52 ¶ 116) and that Dr. Qiu and TurboTides misappropriated those trade secrets by:

> acquiring and using them through a pirated copy of the Software, violating the
> Terms and Conditions, extracting them from former CETI and Concepts employees
> and by obtaining and using the Trade Secrets through the means of information
> developed and collected by Qiu during his employment with CETI and while
> working at Concepts.

(*Id.* ¶ 120.)  The R&R notes that Defendants seek summary judgment on Count IV "for several

reasons" but concludes that none of those reasons is a basis for granting summary judgment.

(Doc. 298 at 41–44.)  Defendants object to those conclusions.  (Doc. 303 at 10.)

Defendants first assert that "the slip factor formula is not a trade secret" and that the R&R

"overlooks the controlling fact that the trade secret claimed by Plaintiff was contained in public

papers."  (Doc. 303 at 10.)  As discussed above, the court agrees that the slip factor formula was

not "confidential" and could not have been "owned" by Concepts; it could not be a "trade

secret."  But the court disagrees with Defendants' contention that this fact is "controlling" as to

Count IV.  The court agrees with the R&R that Defendants have "mischaracterize[d] Plaintiff's

claim."  (Doc. 298 at 42.)  Concepts' claim is that its trade secrets include "knowledge of how to

convert and the conversion of that formula into computer code in order to make it work in

turbomachinery software that is a trade secret."  (Doc. 304 at 6.)  And the R&R recognizes

both the "Internal Memo" dated August 2007, and "the software code that Dr. Qiu wrote based

on the Internal Memo" as nonpublic information contributing to that knowledge. (Doc. 298 at 16.)

Defendants next recycle their argument about Dr. Japikse's testimony that he was not personally aware of Dr. Qiu taking any trade secrets from Concepts. (*See* Doc. 303 at 10.) The court rejects that argument for the reasons stated above and because, as noted in the R&R, even if Dr. Japikse "did not personally know of Dr. Qiu taking any code,[15] Defendants have not shown that Plaintiff as an organization also lacked that knowledge." (Doc. 298 at 42.) Defendants also re-assert their argument that Concepts has failed to adduce evidence of any "purported pirating of Concepts' software from the internet." (Doc. 303 at 10.) The court rejects that argument for the reasons discussed above regarding Count II.

Insofar as Defendants again complain that there are no "computer records" or "computer logs" identifying precisely what trade secrets might have been appropriated (Doc. 303 at 11), the court agrees with the R&R that this "stems in large part from Defendants' refusal to provide that information in discovery." (Doc. 298 at 40.) Defendants' reiterated criticism of Mr. Leiser's affidavit is unavailing because, as discussed above, Dr. Qiu's own testimony covers the same subject matter. The court finds no error in the R&R's recommendation to deny Defendants' motion as to Count IV.

### 5.    Conversion (Count V)

In Count V, Concepts alleges that Dr. Qiu and TurboTides wrongfully obtained and retained the "Concepts Software, including the pirated copy on physical media." (Doc. 52

---

[15] As discussed above, even if Dr. Qiu did not "take" any of Concepts' code and import it verbatim into the TurboTides software, the claim can still proceed based on the evidence supporting a conclusion that Dr. Qiu used nonpublic knowledge and ideas belonging to Concepts.

¶ 128.)  Defendants seek summary judgment on the conversion count, arguing that "[t]here are *no* allegations or facts presented that Defendants appropriated and exercised domain over any trade secret in defiance of Plaintiff's rights."  (Doc. 241-1 at 21.)  The R&R notes that it is "not clear why Defendants argue the conversion issue in terms of a 'trade secret,' but concludes that "[i]n any event, Defendants are not entitled to summary judgment on the conversion claims." (Doc. 298 at 45.)

Defendants object to that conclusion, arguing that "[t]he undisputed evidence presented was that Defendants took nothing belonging to Plaintiff" and that Concepts "did not overcome the fact that it did not own the slip factor formula."  (Doc. 303 at 12.)  As discussed above, Concepts' claims do not turn on whether Concepts "owned" the slip factor formula (it did not). Defendants offer additional arguments, which Concepts correctly identifies as contentions that Defendants did not present to the Magistrate Judge.  (Doc. 304 at 20.)  As stated above, "a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate [judge] but were not." *Gladden*, 394 F. Supp. 3d at 480 (quoting *Hubbard*, 752 F. Supp. 2d at 313).

The court expressly declines to consider Defendants' argument, raised for the first time here, that electronic data cannot be the subject of a conversion claim in Vermont.  (*See* Doc. 303 at 12 (citing *Montgomery v. Devoid*, 2006 VT 127, 181 Vt. 154, 915 A.2d 270).)  The R&R specifically states that Defendants did not make this argument in their filings to the Magistrate Judge.  (Doc. 298 at 45 n.28.)  The court also declines to address Defendants' argument that Concepts has failed to show damages supporting Count V; that issue was also not raised before the Magistrate Judge.  The court finds no error in the R&R's recommendation to deny Defendants' motion as to Count V.

26

### 6.    Civil Conspiracy (Count XI)

The civil conspiracy claim in Count XI appears to be the only claim brought against defendant Zhang as well as defendants Dr. Qiu and TurboTides.  According to Concepts:

> Over a span of many years beginning in 2010 and continuing thereafter, Defendants Qiu, Zhang and TurboTides agreed and conspired together as part of a common design or plan to use unlawful means to set up the TurboTides business in the United States and China, develop the TurboTides software using Concept's trade secrets and Mr. Qiu's conceptions developed while an employee of CETI, and compete with Concepts in the turbomachinery software business.

(Doc. 52 ¶ 172.)  Ms. Zhang seeks summary judgment on Count XI, asserting that "[t]here are no facts supporting a claim for conspiracy." (Doc. 240-1 at 20.)  As stated in the R&R, "Defendants Qiu and TurboTides, Inc. do not appear to request summary judgment on this claim." (Doc. 298 at 60.)  The R&R recommends denying Ms. Zhang's request for summary judgment on Count XI, reasoning that each of her arguments has either been rejected in a prior court order or is otherwise without merit.  (*See* Doc. 298 at 61–62.)

Defendants object, arguing that the R&R "was wrong in not addressing whether Ms. Zhang was liable for each cause of action as a co-conspirator." (Doc. 303 at 14.)  Concepts maintains that the R&R did address that issue. (Doc. 304 at 22.)  The court agrees with Concepts on this point; the R&R addressed Ms. Zhang's contentions that there is no evidence that she committed any illegal act or wrongdoing.  The R&R reasoned that the court previously rejected those arguments.  (*See* Doc. 298 at 61 (quoting Doc. 90 at 14–15).)  The court concludes that the R&R *does* address this issue and finds no error in the R&R's resolution of this point.

Defendants further object that "Ms. Zhang presented evidence and explained why she is not liable for conspiring with Dr. Qiu as to each count" and that Concepts failed to refute her evidence with "actual, factual evidence" of its own.  (Doc. 303 at 14.)  But as stated in the R&R, Concepts "has presented evidence that connects Ms. Zhang to Defendants' alleged plan to take

and use Plaintiff's intellectual property." (Doc. 298 at 61.) That includes evidence that would allow a rational juror to find that, as proprietor of "TurboTides LLC" from 2012–2017, "Ms. Zhang collaborated with Defendants to develop and sell the TurboTides software using TurboTides LLC." (*Id.* at 62.) The court also finds no error with the R&R's citation to *Wei Wang v. Shen Jianming*, No. 17-CV-00153, 2019 WL 3254613 (D. Vt. July 19, 2019), for the proposition that a jury could find an "implied agreement" between Ms. Zhang and Dr. Qiu.

### 7. Breach of Duty of Loyalty (Count XII)

Count XII is Concepts' claim that Dr. Qiu breached his duty of loyalty by soliciting Concepts customers for his TurboTides business and by misappropriating Concepts' trade secrets and confidential information. (*See* Doc. 52 ¶¶ 176–186.) Defendants seek summary judgment on Count XII, arguing that "the content of the articles authored by Dr. Qiu were based on public information of a third person and were made public by Concepts" and that "[a]s such, there was no duty to keep the articles secret." (Doc. 240-1 at 22.) The R&R rejects that argument for two reasons: (1) "Plaintiff has identified confidential information taken by Dr. Qiu that was not published or otherwise disseminated to the public," and (2) "Plaintiff's claim for breach of loyalty alleges that Dr. Qiu breached the duty of loyalty by taking actions completely unrelated to published or unpublished papers, including by soliciting current and/or potential customers of Plaintiff for his competing business." (Doc. 298 at 63.)

Defendants' objections to the R&R's conclusions as to Count XII are, in their entirety, as follows:

> The only legally recognizable claim that could be made for breach of duty of loyalty is that Dr. Qiu took something while he was employed by Concepts. However, Plaintiff points to its allegations that the duty of loyalty was the taking of customers after Dr. Qiu's leaving the employ[] of Concepts. Those customers were not identified, and nor were they identified in the wrongful interference with business relations count, which was dismissed.

28

(Doc. 303 at 13.)  Concepts contends that this objection "bears zero relation to what Defendants presented in their Motion for Summary Judgment."  (Doc. 304 at 21.)

The court agrees that Defendants' objections to the R&R's conclusions on Count XII are unconnected to the argument they raised in their summary judgment motion.  (*Compare* Doc. 240-1 at 22 *with* Doc. 303 at 13.)  And even if Defendants had raised an argument about the alleged impact on Concepts' customers, Count XII does not rely solely on that theory, but also relies on a theory that Dr. Qiu misappropriated Concepts' trade secrets and confidential information more generally.  (*See* Doc. 52 ¶ 182.)  For the reasons discussed above regarding Counts I, III, IV, and V, the breach-of-loyalty claim can proceed on that basis.  And the court finds no clear error in the R&R's analysis of the Uniform Trade Secrets Act as adopted in Vermont or the conclusion that that UTSA does not (at least not wholly) "displace" Plaintiff's claim for breach of the common law duty of loyalty.  (Doc. 298 at 65.)

### C.    Objection Based on Rule 26's Duty to Disclose Damage Computations

Finally, Defendants refer to the duty to disclose and supplement damage computations or expert testimony regarding damages under Fed. R. Civ. P. 26(a) and (e), arguing that "Concepts concedes it lacks damages by its representation to the Court that it is pondering the idea of retaining an expert to figure out its damage claim."  (Doc. 303 at 15.)  Concepts maintains that the Magistrate Judge properly concluded that "Rule 26 'does not provide for a remedy in the form of summary judgment'" and that "to the extent that Defendants move for an order compelling discovery, Defendants have not demonstrated compliance with Rule 37."  (Doc. 298 at 10-11 (quoting *Jones v. United States*, Civ. No. 14-139, 2016 WL 5403086, at *2 (D.N.J. Sept. 27, 2016)).)  Concepts further asserts that it "has suffered damages, and will provide its

expert's calculations in accordance with the deadline for expert disclosures to be set by this Court." (Doc. 304 at 25–26.)

Procedurally, violations of Rule 26 would be addressed under the provisions of Fed. R. Civ. P. 37. As the R&R recognizes, Defendants have not complied with the procedural requirements for obtaining relief under Rule 37. *See* Local Rule 26(c)(1). The sanction under Rule 37(c)(1) is self-executing without the need to file a motion, but that sanction is limited: it prohibits the party that failed to provide the required information from using the information "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, the court finds that Concepts has not violated the requirement to disclose or supplement its damage computation or any expert testimony on damages. In its April 2021 response to Defendants' interrogatory regarding damages, Concepts stated:

> [Concepts'] response to the damages portion of its Initial Disclosures provides the requested information known to date and Concepts therefore incorporates that information by reference in response to this Interrogatory. The amount of damages will be calculated by a damages expert and disclosed with that expert's report.

(Doc. 55-4 at 30.) In August 2023, the court stayed expert discovery deadlines until the resolution of Concepts' June 2023 motion for sanctions (Doc. 201). (*See* Doc. 211.) The court issued an Opinion and Order resolving the motion for sanctions on May 24, 2024. (Doc. 258.) However, before that Opinion and Order was issued, Concepts filed a Motion to Stay the Trial-Ready Date, with the new trial-ready date dependent on completion of the "stayed discovery." (Doc. 244.) The court has not yet ruled on that Motion to Stay, and the court's intention is that the previously stayed expert discovery deadlines remain stayed until further order of the court. For that reason, even assuming that any sanction is procedurally available, there is no basis to

order a sanction amounting to or equivalent to summary judgment because Concepts has not failed to timely disclose its damages expert or that expert's opinions.

## Conclusion

The Report and Recommendation dated July 21, 2025 (Doc. 298) is MODIFIED to clarify that the slip factor formula itself was not "confidential" or "owned" by Concepts, but the R&R is otherwise AFFIRMED, APPROVED, and ADOPTED. The R&R's denial of Defendants' Motions to Strike (Docs. 274 and 277) stands as neither clearly erroneous nor contrary to law. Defendants' objections to the factual findings and the legal conclusions in the R&R are OVERRULED. Defendants' Motions for Summary Judgment (Docs. 240 and 241) are GRANTED on Counts VII, VIII, IX, and X; GRANTED as to Defendant Qiu and DENIED as to Defendant TurboTides, Inc. on Count VI; and DENIED on Counts I, II, III, IV, V, XI, and XII.

Dated at Burlington, in the District of Vermont, this 28th day of October, 2025.

Geoffrey W. Crawford, Judge
United States District Court