U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 OCT -8 P 12:32

CLERK

BY ________
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| CONCEPTS NREC, LLC,<br><br>Plaintiff,<br><br>v.<br><br>XUWEN QIU, TURBOTIDES, INC., and HONG YING ZHANG,<br><br>Defendants. | ) | Case No. 5:20-cv-133 |

**ORDER ON CONCEPTS' SIX MOTIONS IN LIMINE**
**(Doc. 340)**

With jury trial scheduled to commence November 2, 2026, both parties have filed motions in limine. In this Order the court addresses Plaintiff's six motions in limine. (Doc. 340.)

## FACTS

This case concerns claims that Defendant Xuwen Qiu and his wife Hong Ying Zhang and their New Hampshire corporation TurboTides, Inc. violated Plaintiff's rights under copyright and trade secret laws when Dr. Qiu used information he learned as Plaintiff's employee to open a competing software business in China. Defendant also alleges that Dr. Qiu violated his employment contract. (*See* Second Am. Compl., Doc. 52.)

Dr. Qiu was employed by Concepts ETI, Inc.[1] from 2001 until December 2015 as a software engineer. Concepts owns and markets a suite of software programs entitled the Agile Engineering Design System. These programs assist engineers designing turbomachinery to

[1] The Concepts ETI, Inc. entity was merged into another corporation that owns plaintiff Concepts NREC, LLC. (Doc. 52 ¶ 26.) For present purposes, the court refers to both Concepts entities simply as "Concepts."

model the flow of fluids through products such as pumps or jet engines. The programs are based on Microsoft tools and systems.

While at Concepts, Dr. Qiu developed an idea for a software program that would integrate turbomachinery design software into a single product. He and others from the company published their idea. The court anticipates testimony that he sought without success to interest Concepts in his idea.

In 2011, Dr. Qiu formed a New Hampshire company that he entitled TurboTides, LLC (later TurboTides, Inc.). The word "Tides" is an acronym that refers to his idea of a fully integrated software program.

Dr. Qiu resigned from Concepts in December 2015. He returned to China in January 2016 where he joined friends and business associates in the city of Hefei. Within a few months, he sought Chinese copyright protection for a software program he entitled TurboTides. The TurboTides program makes use of more modern architecture than the Concepts program. It does not use the Microsoft components. It features the integrated design that Dr. Qiu had championed while employed at Concepts.

The essential factual dispute in the case is whether Dr. Qiu created the TurboTides program through the improper use of information he acquired as a Concepts employee or independently following his return to China. Dr. Qiu has identified an expert who will testify that TurboTides is fundamentally different from the Concepts program in its architecture and components. (*See* Doc. 338-1.) Concepts has identified an expert who will testify that the time between Dr. Qiu's return to China and the first Chinese copyright filing for TurboTides is too short to allow for the development of such a complex software program without borrowing from the Concepts program. (*See* Doc. 345-1.)

This case has been complicated by a long-running discovery dispute. Following his return to China, Dr. Qiu and business associates formed a second company known as Hefei Taize. Defendants served Rule 45 subpoenas on Hefei. Hefei declined to comply with the subpoenas. The court refused to quash the subpoenas, which had been served on Dr. Qiu as an officer of the corporation. Following a referral to U.S. Magistrate Judge Doyle, the court adopted the recommendation that discovery sanctions against Defendants were appropriate because Hefei was the alter ego of TurboTides. The sanctions imposed included an award of attorney fees and a ruling that "Defendants are precluded from using evidence that neither Defendants nor Hefei produced in response to the Rule 45 Subpoena." (Doc. 258 at 16.)

Plaintiff returns to court seeking to expand the sanction. In the second of its six motions in limine, Plaintiff seeks an instruction that:

1. [The jury] should draw the adverse inference that Defendants did take trade secrets from Concepts and used them in the infringing TurboTides' Software; and
2. The Defendants bear the burden of proving that they did not take trade secrets from Concepts and use them in the infringing TurboTide's Software.

(Doc. 340 at 4.) The court addresses that motion and Plaintiff's other five motions in turn below.

## ANALYSIS

### 1. TurboTides, Inc. and Hefei Taize as Alter Egos

In this motion, Plaintiff seeks a ruling precluding Defendants from arguing that TurboTides and Hefei are not alter egos. (Doc. 340 at 1.) The court DENIES this motion. The alter ego issue was raised in the context of a discovery dispute. It was relevant for the limited purpose of enforcing the third-party subpoena against a foreign corporation. In the absence of the alter ego finding, the subpoena would likely have been unenforceable. By demonstrating that

Dr. Qiu was instrumental in owning and controlling both companies, Concepts was able to obtain a court order requiring compliance with the subpoena by Defendants, who in the court's judgment were in a position to order Hefei to produce the requested documents.

The alter ego determination was relevant to the enforcement of the subpoena and remains relevant to issues such as the admission of a document as a business record. The court does not anticipate excluding a Chinese copyright application or an invoice for the sale of a software program because it was located in the files of Hefei and not TurboTides. The court will address these issues with the parties out of the presence of the jury as it would any dispute over admissibility. There is no basis for informing the jury about the court's alter ego decision because it relates only to discovery and the admissibility of evidence—matters that are not the business of jurors.

**2. Adverse Inferences Against Defendants**

The court has already ruled on the issue of sanctions when it granted Plaintiff's request for fees and precluded the use of evidence withheld from discovery by Hefei. The question posed by the motion is what exactly does preclusion mean at a trial. After all, information improperly withheld from discovery is generally not admissible—with or without a sanctions order. Because Plaintiff has the burden of proving copying in the case of the copyright claim and wrongful use in the case of the trade-secrets claim, Plaintiff has the right to explain why its expert never examined the original source code or other formation documents that would contain evidence about the origin of the TurboTides program.

The court also has in mind the undue weight the jury may place on the disclosure that one side was sanctioned—that is, found at fault and punished—for violating a court order. Shifting the burden of proof or ordering an inference against the Defendants unduly favors one side over

the other. The unfairness is sharpened by the near-total absence of other evidence of copying by TurboTides. The two programs are built on different platforms using different architecture and different components. They seem to belong to different generations of software development. Concepts sells a Microsoft-based product that connects a suite of different modules. TurboTides sells an integrated product that uses a more modern framework. Telling the jury that the court has decided that one side misbehaved during discovery threatens to overshadow the real uncertainty in the case about whether TurboTides copied the Concepts program.

The court turns to Fed. R. Civ. P. 37(e) for guidance. This rule, added by amendment in 2015, governs the loss of electronically stored information. The court is satisfied that the source code and other records of the development of the TurboTides program are electronically stored. They could be printed, but there is no evidence that this occurred, and it would seem to be a quaint and awkward way to store a large, sophisticated computer program. By Defendants' account, the original versions of the code prior to 2018 were lost in the sense that they were not archived except in the very limited form of filings of some materials at the Chinese copyright office.

Rule 37(e) establishes two tracks for addressing the loss of electronically stored information. In the case of parties who "failed to take reasonable steps to preserve the information" but were not "act[ing] with intent to deprive another party of the information's use in the litigation," the court is granted discretion "upon finding prejudice to another party from loss of the information . . . [to] order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Proof of intent is required before more stringent measures are authorized, including an instruction to the jury that it may or must presume that the information was unfavorable. Fed. R. Civ. P. 37(e)(2).

The information available to the court is that Hefei did not archive versions of its software prior to 2018. (Hongbing Zhang Decl., Doc. 204-2, at 2–3 ¶ 8.) This action was filed in September 2020. Not keeping copies of the software as it evolved is fairly described as a "failure to take reasonable steps to preserve the information" but it falls short of an intent to deprive a party of information for use in a litigation that was still two years in the future. Prejudice is present because it is hard to prove copying without the original program. The court is satisfied that the remedy provided by Rule 37(e)(1) is a "measure[] no greater than necessary to cure the prejudice."

In this case, that measure is best found through affording both sides a chance to explain through testimony why the material is not available and how it affects their case. The court will provide a preliminary instruction stating that it required Defendants to produce the information. There will be no reference by either side to "sanctions" or "punishment" or "contempt." Plaintiff may present testimony about the information it sought, what it received, and why the gaps matter. Defendant may explain why the information was missing or why they believed they were not permitted by Chinese law to provide it. At the end of the case, the court will instruct the jury that it is free to consider the testimony of both sides about the missing information along with all of the other information in the case. The court DENIES Plaintiff's request for any expanded sanction such as an instruction to draw an adverse inference or a shift in the applicable burdens.

### 3. Alleged Hacking of the Concepts Software or Illegal Activities in China

Plaintiff seeks a ruling precluding Dr. Qiu from testifying about: (A) whether Concepts' software license has been hacked by third parties and whether its software could potentially be used by anyone; and (B) whether Concepts engaged in illegal activities in their sales operation in

China. (Doc. 340 at 5.) Defendants advise that they do not intend to offer testimony on either of these topics unless Plaintiff puts either topic at issue. (Doc. 354 at 6.) This motion is GRANTED as unopposed.

**4. Specific Portion of Code**

Concepts requests a ruling precluding Dr. Qiu and TurboTides from presenting evidence or arguing that Concepts failed to identify a specific portion of TurboTides code that might be derived from Concepts' code. (Doc. 340 at 6.) This request is DENIED. The issue of missing information is covered above. The evidence that the programs are different—or that there are similarities beyond the common subject matter of turbomachinery design—is central to each parties' case. Defendants have provided a detailed expert report explaining why their program is different from Plaintiffs' program. Plaintiff's expert does not examine or rebut this opinion. Instead, the expert addresses a different issue—the time required to develop such a sophisticated program. Both sides are free to introduce evidence and argue their positions.

**5. Precise Identification of Trade Secrets**

Plaintiff seeks a ruling precluding Dr. Qiu and TurboTides from arguing that Concepts failed to identify precisely what trade secrets might have been appropriated. (Doc. 340 at 7.) This request is DENIED; the court's ruling is the same as above.

**6. "Linguistic Issues" with Former Counsel**

Finally, Plaintiff seeks a ruling precluding Dr. Qiu and TurboTides from presenting evidence or arguing that their filing of Amended Answer to the First Amended Complaint was due to "linguistic issues" with former counsel. (Doc. 340 at 7.) The court DENIES this request. Plaintiff is free to introduce prior answers to the First Amended Complaint as an admission.

Defendants are free to explain their original response on the basis of linguistic error or misunderstanding. The jury will assess the credibility of this testimony.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of October, 2026.

Geoffrey W. Crawford, Judge
United States District Court