U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 OCT 27 P 3:45

CLERK
BY [signature]
DEPUTY CLERK

**FIRST DRAFT**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| CONCEPTS NREC, LLC,<br><br>Plaintiff,<br><br>v.<br><br>XUWEN QIU, TURBOTIDES, INC., and HONG YING ZHANG,<br><br>Defendants. | ) | Case No. 5:20-cv-133 |

**NOTE FOR COUNSEL:**

In preparing this first draft, I thought about several issues that will structure and simplify the presentation of evidence.

- Money damages only.

As framed for the jury, this is an intellectual property dispute over lost profits and royalties. The loss claimed by plaintiff is financial and is expressed as a claim for money damages. I do not anticipate instructing the jury, even on an advisory basis, about potential equitable relief. It would simply confuse their issues of liability and damages. If claims for injunctive relief remain after the jury verdict, the court will resolve these separately on the basis of the trial record plus any additional evidence specifically relevant to injunctive relief. The court does not anticipate issuing an injunction against absent parties such as Hefei Taize who are not subject to personal jurisdiction here.

- Hefei Taize is not a party.

I do not anticipate instructing the jury that Hefei Taize is the alter ego of TurboTides LLC or that Dr. Qiu and his wife are liable themselves for Hefei

Taize's conduct. The court held that Hefei Taize was sufficiently within the control of Dr. Qiu that as a witness, he could not refuse to produce evidence lodged with the company. The court will instruct the jury that Dr. Qiu has not produced the evidence as required. But that discovery ruling does not lead to a broader ruling that Dr. Qiu, TurboTides and Hefei Taize are all jointly liable for one another's conduct.

There are several specific reasons why I think the alter ego theory of liability does not apply.

One is that the alter ego doctrine generally governs shareholder or principal liability for the acts of the corporation. Hefei Taize and TurboTides are not shareholders of one another. The evidence appears to be that they are governed by the same individuals, operate from the same address and perform different functions. I'll listen to the evidence, of course, but neither corporation appears to be a sham or front for the other. Dr. Qiu is already subject to potential personal liability for his conduct on every cause of action so the alter ego theory adds little to the case against him.

The second is the steep requirement for setting aside the legal identity of Hefei Taize. These include gross undercapitalization; failure to observe corporate formalities; nonpayment of dividends; insolvency of the parent; siphoning of funds of the corporation by the dominant stockholder; nonfunctioning of other offices or directors; absence of corporate records; and the fact that the corporation is merely a façade for the operations of the dominant stockholder. *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988). Little of this nature appears to be occurring. As I understand the case, Hefei Taize has taken over the development of the software while TurboTides sells the product. Both have their role; neither appears to be a shell.

- There is no US copyright for the TurboTides product

The work-for-hire doctrine provides a statutory basis for resolving for disputes over authorship of an *American* copyright when one of the potential authors is employed by the other. There is no claim by either side of a copyright under US law for the TurboTides program. There is a claim for infringement on the Concepts copyrights, but "work for hire" does not apply to this claim because no

one challenges ownership of these copyrights. Concepts probably does not believe that Hefei Taize is entitled to its Chinese copyrights, but this court has no jurisdiction to review that issue. In the absence of a dispute over an American copyright, there is no need to apply the statutory work-for-hire test.

- Election of statutory damages for the copyright count

I need some clarity from plaintiff as to when it intends to elect between statutory and actual damages. Statutory damages are for decision by the court and do not appear in these draft instructions.

- Mitigation of damages

It is not clear to me what measures Concepts could have taken to mitigate its damages. Dr. Qiu left his employment voluntarily, moved to China, and opened a competing software business, allegedly stealing Concepts' intellectual property when he did so. Before including a mitigation instruction, I would need to hear evidence from the plaintiff about what steps Concepts failed to take to reduce its losses.

## JURY CHARGE

Members of the Jury:

Now that you have heard the evidence and the arguments, it is my duty to instruct you on the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them. I will provide the jury with copies of these instructions to consult during your deliberations.

# I. GENERAL INSTRUCTIONS

## ROLE OF THE COURT

You must accept the law as I explain it to you. You should not single out any one instruction as alone stating the law. Instead, you should consider my instructions as a whole.

If any attorney has stated a legal principle which differs from my instructions, you must follow my instructions.

You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law should be, it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you in these instructions.

## ROLE OF THE JURY

As members of the jury, you are the sole and exclusive judges of the facts. You should make decisions about the facts based only on the testimony you have heard in court and the exhibits which were admitted by the judge. You will receive copies of these exhibits in the jury room. If you find it to be necessary, you may return to the courtroom to have the testimony of any witness read back to you by the court reporter.

As jurors and judges of the facts in the case, you determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony and draw whatever reasonable inferences you believe are supported by the facts as you have determined them. You determine the weight of the evidence. You are to perform this duty of finding the facts without bias towards any party.

You should reach your judgment impartially and fairly, without prejudice or sympathy, solely upon the evidence in the case and without regard to the consequences of your decision. [1]

## STIPULATED FACTS

Note: I do not intend to read a list of stipulated facts. The parties are free, of course, to argue these as they wish.

## JURORS' EXPERIENCE OR SPECIALIZED KNOWLEDGE

Anything you have seen or heard outside the courtroom is not evidence and must be disregarded entirely. It would be a violation of your oath as jurors to consider anything outside the courtroom in your

[1] I will speak with the jury at the conclusion of voir dire and at the outset of the trial about the need to refrain from outside research and discussions of the case with fellow jurors and friends and family. I generally remind them of this obligation at the end of each trial day.

deliberations. But in your consideration of the evidence, you do not leave behind your common sense and life experiences. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts which you find have been proven, such reasonable inferences as you feel are justified in light of the evidence. "Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in this case. However, if any juror has specialized knowledge, expertise, or information with regard to the facts and circumstances of this case, he or she may not rely upon it in deliberations or communicate it to other jurors.

## EVIDENCE

The evidence in this case consists of the sworn testimony of the witnesses, the exhibits admitted into evidence, and any facts on which the parties agree. When the parties agree that a particular fact exists, that is referred to as a "stipulation," and the jury must accept that stipulation as true.

There are two types of evidence that you may properly use in reaching your verdict. One type of evidence is direct evidence. Direct evidence is when a witness testifies about something she or he knows by virtue of her or his own senses – something she or he has seen, felt, touched or heard. Direct evidence may also be in the form of an exhibit such as a document or photograph.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. You may infer on the basis of reason, experience, and common sense from one established fact, the existence or non-existence of some other fact. For example, if your friend enters your home with a wet umbrella, that would be circumstantial evidence that the weather was rainy.

Circumstantial evidence is of no less value than direct evidence; generally, the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict be based on a preponderance of all the evidence presented.

## EXCLUDED OR STRICKEN EVIDENCE

Testimony or other evidence that the court has excluded or stricken, or that you have been instructed to disregard, is not evidence, and you must not consider it. In addition, some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it. Questions relating to the admissibility of evidence are solely questions of law for the court. You should not draw any inferences from my rulings.

## CREDIBILITY OF WITNESSES

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1) The opportunity and ability of the witness to see or hear or know the things he or she testifies about;

2) The witness's memory;

3) His or her manner while testifying;

4) His or her interest in the outcome of the case, if there is any;

5) The witness's bias or prejudice, if any;

6) Whether other evidence contradicts the witness's testimony;

7) The reasonableness of the witness's testimony in light of all the evidence;

8) Any other factors that bear on believability.

## IMPEACHMENT OF A WITNESS

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony. It is your exclusive province to give the testimony of each witness such credibility or weight that you think it deserves.

## EXPERT TESTIMONY

Some witnesses, because of their education or experience, are permitted to state opinions and the reasons for those opinions. We call

these witnesses "experts." The testimony of an expert witness should be judged just like other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and the other evidence in the case.

## DEPOSITION TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

The witness's testimony has been read by a court employee. You should not place any significance on the behavior or tone of voice of any person reading the questions of answers.

## Dr. Qiu's Participation by Zoom

With the court's permission, Dr. Qiu has testified in this case remotely by from China via Zoom. You should treat his testimony in the same manner as any other witness.

## OBJECTIONS

During the trial, I have ruled on objections made by the attorneys. These are legal issues for the court to resolve and are not for your concern or consideration. It is the duty and job of the attorneys to make objections and you should not hold that against either side.

## ARGUMENTS

The opening statements and closing arguments of the attorneys and other statements which they made during the course of the trial are not evidence. You should consider the evidence from the witnesses and the exhibits in making your decisions about the facts in this case. The statements and arguments are the attorneys' efforts to organize and describe the evidence for you. Both of the attorneys have given the case a good deal of thought and attention. I ask that you consider their arguments carefully. In the end, however, it is the evidence admitted at

the trial which must govern your decision-making. If the way the lawyers have stated the facts differs from the way you remember them, your memory of the facts controls.

## CORPORATION AS A PARTY

Plaintiff Concepts NREC, LLC and Defendant Turbotides, Inc. are corporations. Their status as corporations should not affect how you view the case. You should consider the case to be an action between persons of equal standing. A corporation is entitled to the same fair treatment and consideration that you would give a private individual. All persons, including corporations, are equal before the law.

## II. INSTRUCTIONS CONCERNING EACH CLAIM

Concepts asserts five separate claims against Dr. Qiu, Ms. Zhang, and Turbotides, Inc. Each claim has specific elements that Concepts must prove in order to meet its burden of proof on a particular claim. I will discuss these claims one at a time with you.

**FIRST CLAIM: BREACH OF EMPLOYMENT AGREEMENT AGAINST DR. QIU**

Concepts claims that Dr. Qiu breached his employment agreement with Concepts. There is no dispute that during his employment at Concepts, Dr. Qiu signed an employment agreement and that employment agreement is a valid and enforceable contract. To prevail on its claim of breach of contract, Concepts must prove by a preponderance of the evidence that Dr. Qiu breached the employment agreement and that it suffered damages due to the breach. I will discuss each of these two elements in greater detail.

A. Breach

There are two distinct breach-of-contract claims based on the employment agreement between Dr. Qiu and Concepts. First, Concepts claims that Dr. Qiu breached the agreement because he started to develop the TurboTides software while working for Concepts and failed to disclose this work to his employer. Second, Concepts claims that Dr. Qiu breached the employment agreement because he wrote the TurboTides software using confidential information belonging to

Concepts. You must consider each theory of breach separately. I will describe the elements of each theory in more detail.

1. Nature of the Duty to Disclose the Idea for the TurboTides Software to Concepts

To prevail on its claim that Dr. Qiu breached the employment agreement by failing to disclose the idea, invention, discovery, or development concerning the TurboTides software during his employment, Concepts must prove the following by a preponderance of the evidence:

First, Concepts must prove that Dr. Qiu "made or discovered" the idea, invention, discovery or development of the TurboTides software while he worked at Concepts. "Making or discovering" in this context occurs when an employee forms a complete and operative idea, invention, discovery or development as it is to be applied in practice. The contract does not require Dr. Qiu to disclose a general goal or research plan. But he was obligated by contract to disclose ideas or

related concepts that were sufficiently formed to serve as a concrete plan for the TurboTides software.

NOTES: *Jamesbury Corp. v. Worcester Valve Co.*, 443 F.2d 205, 213 (1st Cir. 1971)("Our interpretation is that [the former employee] had not made an invention, within the meaning of the employment contract when he left [his employment], because he had not put any of his ideas down in any tangible form.")(patent case).

Second, Concepts must prove that Dr. Qiu's idea related to Concepts' business or activities. In determining whether Dr. Qiu's idea related to Concepts' business or activities, you should consider the nature of Concepts' business, the nature of Dr. Qiu's work for Concepts, and any other evidence bearing on whether the parties regarded "the invention as falling within the agreement."

2. Use of Confidential Information

To prevail on its second claim based on the employment agreement, Concepts must prove by a preponderance of the evidence that Dr. Qiu wrote the TurboTides software using Concepts' confidential

information. The employment agreement defines Concepts' confidential information as "computer programs (source code, object code, and code portions), computer program and system documentation, program capabilities, algorithms, methods, engineering drawings, project notebooks, plans, specifications, inventions, patent disclosure and patent applications, trade secrets and practices, and valuable and marketable products and knowledge from the conduct of [Concepts'] business." Confidential information does not include information that is or becomes known to the public or information that Concepts has approved for release. In addition, after leaving employment at Concepts, an "employee may utilize the general skills, knowledge, training and experience acquired during his employment."

B. Damages

If you find that Dr. Qiu breached the employment agreement, then you must consider whether those breaches caused Concepts damages and in what amount. Damages for breach of contract should "put the non-breaching party in the same position it would have been in had the

contract been fully performed. Damages may include the "loss in value" to Concepts caused by the breach, "plus any other loss, including incidental or consequential loss, caused by the breach."

Consequential damages include lost profits, such as lost software sales. To recover lost profits, Concepts must prove three additional elements:

1. First, Concepts must prove lost profits with reasonable certainty. Reasonable certainty means there must be a reasonable basis for estimating the loss, including the expected terms and profit margin of any claimed lost sales.
2. Second, Concepts must prove that any lost profits were foreseeable to Dr. Qiu. Damages are foreseeable where they were in the reasonable "contemplation of the parties at the time they made the contract." In this case, that time was the beginning of Dr. Qiu's employment.
3. Finally, Concepts must prove that Dr. Qiu's breach of the employment agreement was the proximate cause of its damages.

Proximate cause means the "causal connection between the breach and damage is clear and unbroken by other intervening causes or events.

## SECOND CLAIM: BREACH OF SOFTWARE TERMS AND CONDITIONS

Concepts claims that Dr. Qiu and TurboTides, Inc. breached the terms and conditions of Concepts' own software program by using the software without paying the required licensing fee. This program is entitled "Agile Engineering Design System." Concepts developed the program and markets it to its customers. To prevail on this claim, Concepts must prove the following elements by a preponderance of the evidence:

First, Concepts must prove that Dr. Qiu and/or TurboTides, Inc. used Concepts' software.

Second, Concepts must prove that Dr. Qiu and/or TurboTides, Inc agreed to the terms and conditions of its software. A software user agrees to the terms and conditions if before using the software, the user

clicks or checks a box stating that the user agrees to the terms and conditions or equivalent language. You may also infer agreement based on the totality of the circumstances. The software must reasonably notify the user that there are terms to which the user will be bound and give the user the opportunity to review those terms.

Third, Concepts must prove that Dr. Qiu and/or TurboTides, Inc breached those terms and conditions by failing to pay the required licensing fee or violating the terms in some other manner.

Finally, Concepts must prove damages due to the breach. Damages means the amount of money that will reasonably and fairly compensate Concepts for any loss caused by the alleged breach of the software terms and conditions. Damages may include lost royalties or other payments required for use of the software. Damages must be proved with reasonable certainty based upon the evidence admitted at trial.

## THIRD CLAIM: BREACH OF COPYRIGHT

Concepts claims that Dr. Qiu and TurboTides, Inc. violated its rights in software that was protected by copyright. Concepts alleges that defendants copied its software while and after Dr. Qiu was employed by Concepts, that Dr. Qiu wrote the TurboTides program during his employment, and that defendants copied a "pirated" version of Concepts' software.

Copyright Defined

The term "copyright" is the name for the protection that the law extends to an author of an original work against unauthorized appropriation of that work by others. The term is derived from the fact that an author has the exclusive right to copy the work, and therefore may exclude others from copying it.

The term "author" generally is used to refer to a writer. It may also refer to a software developer who has written a computer program and complied with the requirements for legal protection of its copyright. There is no dispute in this case that Concepts holds the copyright to

multiple computer programs which have been described in testimony in this case.

Elements of the claim of copyright infringement

In order to prove its claim that defendants violated its copyrights for its software programs, Concepts must prove by a preponderance of the evidence the following elements:

First, that Concepts is the owner of valid copyrights in the computer programs it has developed. This element is not in dispute.

Second, that defendants copied original elements of one or more of Concepts programs in violation of the copyright protection. Concepts can prove that defendants have actually copied its computer programs and that the copying is illegal because a substantial similarity exists between the Concepts and TurboTides programs.

In determining whether Concepts' work and the TurboTides programs are substantially similar, you may consider differences and similarities in the structure of the two programs, including their design

and the specific components each uses to accomplish its tasks. You should also compare the purposes of the programs.

Both programs make use of elements provided by third-parties or elements that are publicly available to all. In considering differences and similarities, you should not consider these materials since they were not the original work of Concepts or TurboTides. These should be filtered out from your comparison.

In comparing the programs, you must also consider another principle of copyright law which is that it protects a specific expression such as a book or a picture but not ideas. In this case, for example, the general idea of developing a software program that accomplishes multiple tasks in a single package cannot be copyrighted. But a particular software design to achieve this purpose may be subject to protection by copyright. In evaluating the software programs owned by Concepts and by TurboTides for evidence of copying, you should consider whether Concepts has proved that Dr. Qiu and TurboTides copied its particular features and elements (a potential violation) or

whether the two programs share only a general idea of providing a means to solve multiple engineering problems through a single product (a potential non-violation.)

If Dr. Qiu and/or TurboTides had access to Concepts' software code, Concepts can create a rebuttable presumption of copying by showing that the material defendant copied is substantially similar to Concepts' copyrighted software. Then the burden of proof shifts to Dr. Qiu and/or TurboTides to prove by a preponderance of the evidence that their work is an independent creation wholly created after Dr. Qiu left his employment at Concepts – not a copy. Proof that a work is an independent creation overcomes a presumption of copying.

Concepts must also prove that any material copied was material of substance and value. Even if the degree of similarity is small in quantity, you can still find that there is substantial similarity if the copied portions of Concepts' copyrighted work are important in quality. But if any copying is minimal or trivial, you should not find infringement.

Statute of Limitations

Defendants have raised the defense of statute of limitations. This defense concerns the timeliness of the copyright claim.

A copyright claim must be brought within three years of the date when the copyright owner discovers, or with due diligence should have discovered, the infringement. In this case, the lawsuit was filed on September 8, 2020. In order to prove that the lawsuit was filed too late, defendants must prove that Concepts knew or should have discovered the alleged infringement before September 8, 2017. If you find that defendants have shown, by a preponderance of the evidence, that the facts or circumstances of the case led or should have led Concepts to discover the alleged infringement before that date (September 8, 2017), you must find for Defendants on Concepts' copyright claim.

Damages for Copyright Infringement

If you find that defendants infringed on Concepts' copyright, then you must determine the amount of damages, if any, Concepts is entitled to recover. The potential damages are of two kinds: an award of money

to compensate Concepts for the reduction of the fair market value of its copyrighted work caused by the infringement (called "actual damages") and any profits received by defendants as a result of the infringement.

In determining actual damages, you may consider:

(1) The amount a willing buyer would have reasonably paid a willing seller at the time of the infringement for the actual use made by defendants of Concepts' infringed works;

(2) The profits Concepts would have received for sales lost because of the infringement. Profits are gross revenue on sales of Concepts' program reduced by additional expenses Concepts would have incurred in making those sales.

In determining profits received by defendants, you should determine whether Concepts has proved by a preponderance of the evidence that the alleged infringement increased revenues received by defendants. You should reduce that figure by any expenses incurred by defendants in generating this revenue. The remaining amount (if any) represents the profits received by defendants as a result of the infringement.

American copyright only

Concepts claims infringement by Dr. Qiu and TurboTides on its American copyrights only. While you may consider acts committed in other countries such as China, you should limit your consideration of damages to lost sales or other damages occurring within the United States.

**FOURTH CLAIM: MISAPPROPRIATION OF TRADE SECRETS**

Concepts claims that defendants are liable because they violated Vermont's Uniform Trade Secrets Act. This statute provides a remedy for persons who can prove that someone misappropriated one or more of their trade secrets through improper means.

A 'trade secret' is information, including a formula, pattern, compilation program, device, method, technique or process, that:

- Derives economic value from not being generally known or readily ascertainable by others who can obtain economic value from its disclosure or use; and
- Is the subject of reasonable efforts to maintain its secrecy.

Trade secrets can include confidential business information such as pricing, customers, business plans and strategies.

Misappropriation concerns the manner in which the defendant acquired the trade secret. It means without consent, either express of implied, by someone who knows or has reason to know that the trade secret was obtained by improper means. Improper means can include theft, misrepresentation or breach of a duty to maintain secrecy. Employees, current and former, have a duty not to disclose their employer's trade secrets.

If you find that one or more defendants misappropriated trade secrets of plaintiff, then you should award damages. These damages may be either the actual loss of profits of plaintiff caused by the misappropriation or, in the alternative, a reasonable royalty for the

unauthorized disclosure or use of a trade secret. You should not award damages under both theories because that would "double count" any damage figure.

There is a third alternative measure of damages which is "unjust enrichment." Concepts may seek to prove by a preponderance of the evidence that defendants profited at its expense through the misappropriation of trade secrets. You may consider any profits, increased productivity, increased market share, and development costs saved by the use of Concepts' trade secrets. Any "unjust enrichment" award should not duplicate damages awarded as loss of profits or royalties not paid to Concepts.

If Concepts proves that the misappropriation of trade secrets was willful and malicious, you may award punitive damages. Punitive damages are intended to punish a party over and above the amount of any compensation awarded in order to deter bad conduct. These damages are reserved for instances of willful and malicious conduct only.

**FIFTH CLAIM: CONVERSION**

[ALMOST CERTAINLY NOT NEEDED SINCE IT APPEARS THAT THE ONLY PROPERTY AT ISSUE IS INTANGIBLE INTELLECTUAL PROPERTY TO WHICH TORT OF CONVERSION OF CHATTEL DOES NOT APPLY].

**SIXTH CLAIM: CIVIL CONSPIRACY**

This is the only claim in which Ms. Zhang is named as a defendant as is her husband Dr. Qiu.

Concepts claims that defendants Dr. Qiu and his spouse Ms. Zhang agreed and conspired together as part of a common design or plan to use unlawful means to set up the TurboTides business in the United States and China, develop the TurboTides software using Concepts' trade secrets and non-public information obtained by Dr. Qiu while an employee of concepts, and to compete with Concepts in the turbomachinery software business.

Concepts claims that the unlawful means used by the two alleged conspirators includes violating Dr. Qiu's employment agreement, engaging in copyright infringement, and misappropriating trade secrets.

If you find that Concepts has proved that Dr. Qiu engaged in one or more of the unlawful means claimed by Concepts and that Ms. Zhang's conduct rises to the level of an agreement to cooperate with Dr. Qiu to accomplish unlawful acts, you may find her and Dr. Qiu both liable for civil conspiracy. Such an agreement may be either expressed in words or implied and understood between the parties on the basis of their conduct.

While a civil conspiracy requires an unlawful act, it is not necessary that each conspirator engage in an unlawful act. A legal act by one conspirator can further an illegal conspiracy based on the unlawful conduct of the other. Thus, if you find that Dr. Qiu engaged in an unlawful act and that Ms. Zhang did not, you could still find them both liable for civil conspiracy as long as Ms. Zhang (1) gave substantial

assistance to Dr. Qiu in carrying out an illegal conspiracy and (2) knew that Dr. Qiu's conduct was unlawful.

Concepts is entitled to recover the actual damages suffered as a result of a civil conspiracy. These may include lost profits as previously defined or a loss in Concept's valuation. If the civil conspiracy is found to be willful and malicious, you may award punitive damages.

**SEVENTH CLAIM: UNJUST ENRICHMENT**

Restitutionary remedy that duplicates trade secret claim. See 9 V.S.A. § 4607.

**EIGHTH CLAIM: DUTY OF LOYALTY TO AN EMPLOYER**

Also barred by 9 V.S.A. § 4607. Dicks v. Jensen, 172 Vt. 43, 52 (2001)("statute plainly bars a common law remedy on this theory.")

Dated: November , 2026

______________________________